UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Priorities USA,<br><br>    Plaintiff,<br><br>v.<br><br>DANA NESSEL, in her official capacity as ATTORNEY GENERAL OF THE STATE OF MICHIGAN,<br><br>    Defendant. | NO.<br><br>JUDGE<br><br>MAGISTRATE<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (42 U.S.C. § 1983)** |

Plaintiff, complaining of Defendant Dana Nessel, in her official capacity as Michigan Attorney General (the "Attorney General"), says and alleges:

## INTRODUCTION

1. "[E]ach and every citizen has an inalienable right to full and effective participation in the political process," *Reynolds v. Sims*, 377 U.S. 533, 565 (1964), and the choice whether to exercise the right to vote is central to the vindication of that right. *See League of Women Voters v. Hargett*, No. 3:19-CV-00385, 2019 WL 4342972, at *12 (M.D. Tenn. Sept. 12, 2019) ("Registering to vote is not a politically neutral act, and neither is declining to."). As Justice Powell eloquently noted, "the citizen who distributes his party's literature, who helps to register voters, or who

transports voters to the polls on Election Day performs a valuable public service" that supports our democratic process. *Branti v. Finkel*, 445 U.S. 507, 529 n. 10 (1980) (Powell, J., dissenting). These acts not only support the democratic process, but they also represent an outward manifestation of political expression and association, which are protected by the First and Fourteenth Amendments to the United States Constitution. *See N.A.A.C.P. v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 700 (N.D. Ohio 2006).

2. A supermajority of Michigan voters expressed an unequivocal desire to expand access to voting for all Michigan citizens with passage of Proposition 3 in 2018. Proposition 3 enshrined in the Michigan Constitution eight enumerated voting rights all aimed at expanding access to the ballot and making it easier to vote. Included in these new rights are expanded no-excuse absentee and early voting and the right to register to vote any day, inclusive of Election Day. But these rights can be fully effectuated only if Michigan citizens have the ability to freely associate and organize throughout all phases of the voting lifecycle—that is, communicating about candidates and issues, conducting voter registration drives, and ensuring that all eligible voters have an opportunity to make it to the polls.

3. Some Michigan citizens are left out of this new, expanded access to the franchise because of criminal penalties on efforts to assist voters. Michigan law

makes it a misdemeanor to "hire a motor vehicle" to transport voters to the polls unless those voters are "physically unable to walk." Mich. Comp. Law. § 168.931(1)(f) (the "Voter Transportation Ban"). Michigan law also criminalizes organizing efforts to assist voters in submitting applications for absentee ballots. Mich. Comp. Law § 168.759(4), (5), (8) (the "Absentee Ballot Organizing Ban").

4. Together, the Voter Transportation Ban and the Absentee Ballot Organizing Ban make it even more difficult for voters for whom voting is already difficult—in particular, voters without access to private transportation—to vote. These voters include senior voters, minority voters, voters who are disabled, and low-income voters, who traditionally use absentee voting and lack access to private transportation at greater rates. The Voter Transportation Ban and the Absentee Ballot Organizing Ban each represent unreasonable and unnecessary obstacles to voting that violate the First and Fourteenth Amendments and the clearly expressed wishes of a supermajority of the state.

5. The Voter Transportation Ban directly contradicts federal law that permits hired voter transportation to the polls. The Voter Transportation Ban and the Absentee Ballot Organizing Ban, together and individually, create obstacles to voting that constitute an undue burden on the right of Michigan citizens to vote. In addition, the Voter Transportation Ban and the Absentee Ballot Organizing Ban each criminalize constitutionally protected political activity of individuals and

organizations who desire to increase voter participation by transporting voters to the polls or by assisting voters in applying for absentee ballots. Finally, the Voter Transportation Ban discriminates against Michigan citizens who are physically able to walk but nonetheless have an impairment that prevents or substantially limits their ability to transport themselves to a polling station. Accordingly, the Voter Transportation Ban and Absentee Ballot Organizing Ban violate the First and Fourteenth Amendments to the U.S. Constitution.

## PARTIES

6. Plaintiff Priorities USA ("Priorities") is a 501(c)(4) nonprofit, voter-centric progressive advocacy and service organization. Priorities' mission is to build a permanent infrastructure to engage Americans by persuading and mobilizing citizens around issues and elections that affect their lives. In furtherance of this purpose, Priorities works to help educate, mobilize, and turn out voters across the country, including in Michigan. In 2019 and 2020, Priorities expects to make contributions and expenditures in the millions of dollars to educate, mobilize, and turn out voters in state and federal elections around the country, including millions of dollars to educate, mobilize, and turn out voters in Michigan state and federal elections. Specifically, Priorities, but for the Voter Transportation Ban, would expend resources to fund rides to the polls for Michigan voters. Priorities would also expend resources to fund absentee ballot get-out-the-vote ("GOTV") activities

which, but for the Absentee Ballot Organizing Ban, would include the collection of absentee ballot applications in Michigan. Priorities has funded similar GOTV programs in other states in the past.

7. The Voter Transportation Ban and the Absentee Ballot Organizing Ban directly harm Priorities by frustrating its mission of, and efforts in, educating, mobilizing, and turning out voters in Michigan by necessarily reducing the transportation options of Michigan citizens to get to polling places and by criminalizing the acts of individuals and organizations that want to (1) transport individuals to vote and (2) assist voters with registering for or returning absentee ballot applications. Priorities is aware of the Voter Transportation Ban and the Absentee Ballot Organizing Ban and will have to expend and divert additional funds and resources in GOTV efforts—that is, voter education, mobilization, and turnout efforts—in Michigan, at the expense of its efforts in other states and its other efforts in Michigan, to combat the Bans' effects on Michigan citizens. Priorities will also be prevented from fully exercising its associational rights to engage in these GOTV effort because of the Bans.

8. Defendant Dana Nessel is the Attorney General of the State of Michigan. As the Attorney General, Defendant Nessel is Michigan's top law enforcement official and responsible for prosecuting the laws of the State of

Michigan, including the Voter Transportation Ban and the Absentee Ballot Organizing Ban. Defendant Nessel is sued in her official capacity only.

## JURISDICTION AND VENUE

9. This action arises under the U.S. Constitution and laws of the United States. Priorities brings this action under the First and Fourteenth Amendments of the U.S. Constitution, which is actionable under 42 U.S.C. § 1983.

10. This Court has original subject-matter jurisdiction of the federal questions presented in this case pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Attorney General Nessel resides and/or conducts business in the Eastern District of Michigan.

12. Declaratory and injunctive relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## GENERAL ALLEGATIONS

### The Voter Transportation Ban

13. The Voter Transportation Ban provides, in its entirety, that "[a] person shall not hire a motor vehicle or other conveyance or cause the same to be done, for conveying voters, other than voters physically unable to walk, to an election." Mich. Comp. Laws § 168.931(1)(f).

14. Anyone found guilty of violating the Voter Transportation Ban commits a misdemeanor, *id.*, and faces the prospect of ninety days of imprisonment and a $500 fine, Mich. Comp. Laws § 750.504.

15. The Voter Transportation Ban is in direct conflict with federal regulations that address election-related spending by corporations and labor organizations. These regulations expressly allow organizations to arrange for vehicles to transport voters to the polls or place of registration, which are now one-and-the-same in Michigan. *E.g.*, 11 C.F.R. § 114.4(d)(1) ("A corporation or labor organization may support or conduct voter registration and get-out-the-vote drives that are aimed at . . . the general public. Voter registration and get-out-the-vote drives include providing transportation to the polls or to the place of registration."). To "provid[e] transportation" to voters and prospective voters, corporations and labor organizations will, in most instances, hire individuals to drive, a violation of the Voter Transportation Ban. Accordingly, the Voter Transportation Ban criminalizes federally sanctioned activities.

16. By eliminating the use of paid drivers, the Voter Transportation Ban necessarily reduces the number of drivers able to transport Michigan citizens to the polls during early voting and on Election Day. *See Meyer v. Grant*, 486 U.S. 414, 419 (1988) (acknowledging "the available pool of [petition] circulators is necessarily smaller if only volunteers can be used" and paid circulators are banned). The impact

of the Voter Transportation Ban falls directly on those individuals who lack reliable transportation or suffer physical or mental impairments that make travel to the polls difficult or impossible.

17. The Voter Transportation Ban arbitrarily distinguishes between voters who are disabled. Although the Voter Transportation Ban makes an exception for voters who are disabled such that they cannot walk, it leaves out voters who are able to walk but cannot drive for other reasons. To illustrate, the Voter Transportation Ban makes it a misdemeanor to hire a taxi to take a neighbor to the polls if they suffer from blindness, epilepsy, or other motor control impairments that limit the ability to walk unaided, but it is not a misdemeanor to hire a taxi to take a wheelchair-bound neighbor to the polls.

18. Because the Voter Transportation Ban criminalizes transportation "to an election" and registration and voting now take place at the same location and on the same date, organizations like Plaintiff Priorities now face criminal charges for spending money to register voters. The law cannot distinguish between transporting voters to register to vote and transporting voters to vote. Thus, the Voter Transportation Ban burdens Plaintiff Priorities' core political speech.

19. The Voter Transportation Ban also chills organizational civic engagement. In 2018, the rideshare company Uber, working in conjunction with national organizations #VoteTogether and Democracy Works, provided free and

discounted rides to polling places for individuals on Election Day. According to an October 24, 2018 press release, Michigan was the only state for which Uber did not offer this promotion. Danielle Burr, *Update on Uber Drives the Vote* (Oct. 24, 2018), https://www.uber.com/newsroom/update-uber-drives-vote/. Upon information and belief, Uber did not provide Michigan citizens with discounted rides to polling places because of the Voter Transportation Ban.

20. The Voter Transportation Ban criminalizes the actions of citizens who contribute or spend funds to enable their fellow citizens to participate in the civic process. For example, The Detroit Bus Company, a Low Profit Limited Liability company, provided Michigan voters with free rides to the polls during the 2018 election. This project cost about $4,000, and The Detroit Bus Company solicited donations from individuals to finance this project. Under the Voter Transportation Ban, the individuals who made non-tax-deductible donations to The Detroit Bus Company for this project face imprisonment and fines for paying for voters to be transported to the polls. Similarly, other organizations, such as senior centers, nursing homes, churches, labor unions, party organizations, political campaigns, and student groups risk misdemeanor charges for arranging to bring voters to the polls. Even a neighbor who shares a taxi to the polls risks criminal liability for doing so under the Voter Transportation Ban.

21. There is no compelling justification for the Voter Transportation Ban. To the extent that the Voter Transportation Ban is meant to discourage or criminalize vote buying, that is accomplished through Michigan Compiled Laws § 168.931(b)(i), which makes it a misdemeanor to "receive, agree, or contract for valuable consideration" for "[v]oting or agreeing to vote, or inducing or attempting to induce another to vote, at an election." To that end, there is no rational basis for the Voter Transportation Ban.

### The Absentee Ballot Organizing Ban

22. The Absentee Ballot Organizing Ban is found in Section 168.759, which criminalizes efforts to assist voters with delivering absentee ballot applications in three subsections. Subsection 4 states, "A person shall not be in possession of a signed absent voter ballot application except for the applicant; a member of the applicant's immediate family; a person residing in the applicant's household; a person whose job normally includes the handling of mail, but only during the course of his or her employment; a registered elector requested by the applicant to return the application; or a clerk, assistant of the clerk, or other authorized election official." Subsections 4 and 5 require a "registered elector requested by the applicant" to certify that they "did not solicit or request to return the application." And subsection 8 makes it a misdemeanor to make "a false

statement in an absent voter ballot application" or to return an absentee ballot application without authorization.

23. Together, these provisions prohibit third parties such as neighbors, political campaigns, and voter mobilization organizations from assisting a voter with delivering an absentee ballot application unless (1) the third party is a registered voter and (2) the voter affirmatively requests their assistance. Individuals are banned, under threat of criminal prosecution, from offering assistance. The Absentee Ballot Organizing Ban thus limits the persons who can assist voters in applying for absentee ballots to registered voters and proactively proscribes certain speech.

24. The Absentee Ballot Organizing Ban is particularly troublesome given the recent changes to absentee voting laws in 2018. As a result of Proposition 3, all Michigan citizens are entitled to vote early or by absentee ballot without excuse. Mich. Comp. Laws § 168.759(1), (2). Prior to Proposition 3, Michigan Compiled Laws § 168.758 limited the availability of absentee voting to certain subsets of voters. The Absentee Ballot Organizing Ban, which directly regulates speech by criminalizing offers to assist a voter in returning an absentee ballot application, will have a chilling effect on efforts to educate voters about those benefits.

25. The Absentee Ballot Organizing Ban is not justified by any state interest in preventing voter fraud. As noted above, Section 168.931(b)(i) criminalizes vote buying. Section 168.759(8) makes it a felony to forge a signature

on an absentee ballot application. And Section 168.932 criminalizes interference with an absentee ballot itself.

## CAUSES OF ACTION

### COUNT I
**Declaratory Judgment**
**Declaratory Judgment Act 28 U.S.C. § 2201, 28 U.S.C. § 2202**
**(Federal Law Supersedes and Preempts the Voter Transportation Ban)**

26. Plaintiff hereby incorporates all other paragraphs as if fully set forth herein.

27. Pursuant to 52 U.S.C. § 30143, rules prescribed under to the Federal Election Campaign Act of 1971, as amended, "supersede and preempt any provision of State law with respect to election to Federal office."

28. Federal Regulation 11 C.F.R. § 114.4 was promulgated pursuant to the Federal Election Campaign Act of 1971, which regulates political campaign spending and fundraising. In relevant part, the regulation permits corporations and labor organizations to spend money to transport members of the general public to the polls through voter registration and get-out-the-vote drives.

29. To the extent the Voter Transportation Ban conflicts with 11 C.F.R. § 114.4, the Attorney General should be enjoined from enforcing it during elections when candidates for federal office are on the ballot. *E.g.*, *Republican Party of New Mexico v. King*, 850 F. Supp. 2d 1206, 1216 (D.N.M. 2012), aff'd, 741 F.3d 1089

(10th Cir. 2013) (enjoining enforcement of state campaign spending law with respect to federal office holders).

## COUNT II
### First and Fourteenth Amendment
### U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202
### (Undue Burden)

30. Plaintiff hereby incorporates all other paragraphs as if fully set forth herein.

31. The Voter Transportation Ban and the Absentee Ballot Organizing Ban, independently and together, constitute an undue burden on voters in violation of the Fourteenth Amendment. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). The Voter Transportation Ban and the Absentee Ballot Organizing Ban each represent a severe burden on Michigan citizens' ability to vote, especially minority voters, voters who are disabled, seniors, and low-income voters. The Voter Transportation Ban increases the costs of voting by requiring voters to pay the full cost of finding private transportation to the polls. *See Veasy v. Abbott*, 830 F.3d 216, 263 (5th Cir. 2016) (Higginson, J., joined by Costa, J., concurring). The Absentee Ballot Organizing Ban criminalizes a means through which voters access absentee ballots. It follows, therefore, that the restrictions on rides to the polls and absentee ballot application collection will prevent voters from casting ballots. Accordingly, Michigan is required to justify

these restrictions with reasons that are "sufficiently weighty to justify the limitation." *Obama for Am. v. Husted*, 697 F.3d 423, 433 (6th Cir. 2012) (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)). No such justifications exist.

### COUNT III
### First and Fourteenth Amendments
### U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202
### (Associational and Speech Rights)

32. Plaintiff hereby incorporates all other paragraphs in this Complaint as if fully set forth herein.

33. The Voter Transportation Ban and the Absentee Ballot Organizing Ban, together and individually, also constitute an impermissible infringement on the associational and speech rights of Michigan voters, Plaintiff Priorities, and other organizations and citizens engaged in mobilizing voters. "Political speech is at the core of First Amendment protections." *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016). Priorities engages in core political speech when it interacts with Michigan voters to educate them on the issues, persuades them to register to vote, and encourages them to vote. *See League of Women Voters v. Hargett*, No. 3:19-CV-00385, 2019 WL 4342972, at *8 (M.D. Tenn. Sept. 12, 2019) ("Encouraging others to register to vote is pure speech, and, because that speech is political in nature, it is a core First Amendment activity.") (internal quotation marks and alterations omitted); *see also Meyer v. Grant*, 486 U.S. 414, 422 (1988) (noting

that "interactive communication concerning political change" is core political speech).

34. The Voter Transportation Ban and the Absentee Ballot Organizing Ban, together and individually, represent an overbroad restriction on political speech and political organizing that infringes Plaintiff Priorities' First and Fourteenth Amendment rights and the First and Fourteenth Amendment rights of Michigan voters and other persons and organizations who would otherwise provide free rides to voters or assist voters in delivering absentee ballot applications.

**Count IV**
**Fourteenth Amendments**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983,**
**28 U.S.C. § 2201, 28 U.S.C. § 2202**
**(Equal Protection Clause)**

35. Plaintiff hereby incorporates all other paragraphs in this Complaint as if fully set forth herein.

36. The Fourteenth Amendment provides, in applicable part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

37. As applied to voters who are disabled, the Voter Transportation Ban burdens their fundamental right to political speech with respect to registration and voting by reducing their ability to register to vote and to vote, both of which are protected activities.

38. Facially, the Voter Transportation Ban discriminates against voters who are disabled by being underinclusive. If the purpose of the carveout was to make transportation easier for those who are unable to transport themselves to the polls, it should have included individuals with sight impairments as well as other physical impairments. *See Obama for Am. v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012).

39. Because the Voter Transportation Ban burdens fundamental voting rights, strict scrutiny applies. *Doe v. Rowe*, 156 F. Supp. 2d 35, 52 (D. Me. 2001) (applying strict scrutiny because of the fundamental nature of voting rights involved, even though the equal protection challenge involved a disability classification, which is not a suspect classification).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in their favor and against Defendant, and:

a. Declare, under the authority granted to this Court by 28 U.S.C. § 2201, that (1) Michigan Compiled Laws § 168.931(1)(f) is preempted by federal law; and (2) Michigan Compiled Laws § 168.759(4), (5), and (8) and Michigan Compiled Laws § 168.931(1)(f) violate the First and Fourteenth Amendments to the U.S. Constitution;

b. Preliminarily and permanently enjoining the Attorney General and her agents, officers, employees, successors, and all persons acting in

   concert with each or any of them from enforcing Michigan Compiled Laws § 168.759(4), (5), and (8) and Michigan Compiled Laws § 168.931(1)(f);

c. Awarding Plaintiff their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d. Grant Plaintiff such other and further relief as the Court deems necessary and proper.

Respectfully submitted,

Dated: November 12, 2019

By: /s/Sarah S. Prescott

Marc E. Elias* DC Bar No. 442007
Christopher J. Bryant* SC Bar No. 101681
Courtney A. Elgart* MA Bar No. 697106
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
cbryant@perkinscoie.com
celgart@perkinscoie.com

Kevin J. Hamilton* WA Bar No. 15648
PERKINS COIE LLP
1201 3rd Ave.
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9741
khamilton@perkinscoie.com

*Attorneys for Plaintiff*
*Seeking Admission to E.D. Mich.

Sarah S. Prescott, Bar No. 70510
SALVATORE PRESCOTT &
PORTER, PLLC
105 E. Main Street
Northville, MI
48168

*Attorneys for Plaintiff*