UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA, RISE, INC.,
DETROIT/DOWNRIVER CHAPTER OF
THE A. PHILIP RANDOLPH
INSTITUTE,                                             No. 19-13341

      Plaintiffs,                                HON. STEPHANIE DAWKINS
                                                       DAVIS

v                                                      MAG. R. STEVEN WHALEN

DANA NESSEL, in her official capacity                  **DEFENDANT'S MOTION TO**
as the ATTORNEY GENERAL OF THE                         **DISMISS AMENDED**
STATE OF MICHIGAN,                                     **COMPLAINT**

      Defendant.

_____/

| | |
|---|---|
| Sarah S. Prescott (P70510) | Kevin J. Hamilton |
| Attorney for Plaintiffs | Attorney for Plaintiffs |
| 105 East Main Street | 1201 Third Ave, Suite 4900 |
| Northville, Michigan  48168 | Seattle, Washington 98101 |
| 248.679.8711 | 206.359.9741 |
| | |
| Heather S. Meingast (P55439) | Marc E. Elias |
| Erik A. Grill (P64713) | Attorney for Plaintiffs |
| Assistant Attorneys General | 607 Fourteenth St, NW |
| Attorneys for Defendant | Washington, DC 20005 |
| P.O. Box 30736 | 202.628.6600 |
| Lansing, Michigan  48909 | |
| 517.335.7659 | |

_____/

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

    Defendant Michigan Attorney General Dana Nessel moves for dismissal of

Plaintiffs Priorities USA, Rise Inc., and Detroit/Downriver Chapter of the A. Philip

1

Randolph Institute's (DAPRI) amended complaint pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6), for the following reasons:

1. This complaint is a challenge to the constitutionality of several sections of the Michigan Election Law that concern the paid transportation of voters to elections and who may deliver a signed application for an absent voter ballot.

2. Plaintiffs Priorities USA and Rise Inc. are organizations and do not allege that they have members who vote in Michigan.

3. Plaintiff DAPRI is a membership organization but does not allege that the rights of any of its members are affected by the challenged statutes.

4. The amended complaint does not identify any voters who have experienced any difficulties in transporting themselves to their polling locations or in obtaining and returning an absent voter ballot application due to the existence or operation of the statutes, and does not demonstrate any special relationship between Plaintiffs and such unidentified voters that would support third-party standing.

5. None of the Plaintiffs have alleged that they will incur any particularized injury as a result of the challenged statutes.

6. Plaintiffs' claims are instead predicated upon abstract and generalized grievances that are indistinguishable from the interests of any citizen of the State.

2

7.  Plaintiffs lacks standing to bring claims challenging the statutes identified in the complaint.

8.  Alternatively, Plaintiffs' complaint should be dismissed because Plaintiffs fail to state a claim upon which relief may be granted.

9.  Regarding Mich. Comp. Laws § 168.931(1)(f), which prohibits hiring vehicles or other conveyances to transport voters to an election, the statute only minimally burdens a voter's right to vote or Plaintiffs' right to speech and association.  And the burden is outweighed by the State's interest in preserving the integrity of the conduct of elections.  The statute is not unconstitutional.

10. Similarly, in regard to the statutes governing the absent voter ballot application process, *see* Mich. Comp. Laws § 168.759, the statutes only minimally burden a voter's right to vote or Plaintiff's right to speech and association.  And the burden is outweighed by the State's interest in preserving the integrity of the absent voter ballot application process.  The statutes are not unconstitutional.

11. Concurrence in the relief sought in this motion was denied.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendant Attorney General Nessel respectfully requests that this Honorable Court enter an order dismissing Plaintiff's complaint against her in its entirety and with prejudice, pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6).

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

Dated:  February 10, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA,                                        No. 19-13341

    Plaintiff,                                    HON. MARK A. GOLDSMITH

v                                                      MAG. R. STEVEN WHALEN

DANA NESSEL, in her official capacity          **BRIEF IN SUPPORT OF**
as the Michigan Attorney General,                   **DEFENDANT'S**
                                                    **MOTION TO DISMISS**
    Defendant.
_____/

Sarah S. Prescott (P70510)
Attorney for Plaintiff
105 E. Main St.
Northville, Michigan  48168
248.679.8711

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659

_____/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

                                          Heather S. Meingast (P55439)
                                          Erik A. Grill (P64713)
                                          Assistant Attorneys General
                                          Attorneys for Defendant
                                          P.O. Box 30736
                                          Lansing, Michigan  48909
Dated: February 10, 2020                      517.335.7659

# TABLE OF CONTENTS

Page

Table of Contents ........................................................................ i

Index of Authorities .................................................................. iii

Concise Statement of Issue Presented ..................................... vi

Controlling or Most Appropriate Authority.............................. vii

Statement of Facts ......................................................................1

    A.    Mich. Comp. Laws § 168.759 – Absent voter ballot
           applications..........................................................................3

    B.    Mich. Comp. Laws § 168.931 – Transporting voters to elections........7

Procedural History .....................................................................8

Argument...................................................................................10

I.    Plaintiffs' complaint should be dismissed where they lack standing to
    sue and the complaint otherwise fails to state a claim upon which
    relief may be granted. ..........................................................10

    A.    Plaintiffs lacks standing to sue because they have not plead a
           sufficient injury-in-fact and cannot sue in a representational
           capacity...........................................................................10

           1.    Plaintiffs have not sufficiently alleged an injury-in-fact. .........11

           2.    Plaintiffs lack standing to sue in a representational
                 capacity. ....................................................................16

    B.    Plaintiff's complaint fails to state a claim upon which relief
           may be granted regarding the "Absentee Ballot Organizing
           Plan."...............................................................................19

           1.    The statutes are not vague.......................................22

           2.    The statutes only minimally burden the right to speech
                 and association. ..........................................................24

i

3.   The statutes only minimally burden the right to vote and are supported by important regulatory interests. .....................26

4.   The statutes are not preempted. ................................30

C.   Plaintiff's complaint fails to state a claim upon which relief may be granted regarding the "Voter Transportation Ban."..............32

1.   The statutes are not vague.......................................34

2.   The statute only minimally burdens the right to speech and association. .........................................................35

3.   The statute only minimally burdens the right to vote and is supported by important regulatory interests.........................36

4.   The statute is not preempted. ...................................38

Conclusion and Relief Requested ..........................................................42

Certificate of Service .................................................................42

# INDEX OF AUTHORITIES

Page

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ........................................... 20, 29, 37

*Anthony v. Michigan*, 35 F. Supp. 2d 989 (E.D. Mich. 1999) ............. vii, 11, 13, 16

*Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150 (1970) ................... 17

*Barrows v. Jackson*, 346 U.S. 249 (1953) ............................................... 17

*Burdick v. Takushi*, 504 U.S. 428 (1992) ......................................... 19, 20

*Burson v Freeman*, 504 U.S. 191 (1992) ................................................ 37

*City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007) ......................... 17

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013) ................................ 11

*Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008) .................... 20

*Eu v. San Francisco County Democratic Cen Committee*, 489 U.S. at 228
    (1989) ................................................................................. 37

*Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014) ......... vii, 11

*Feldman v. Arizona Sec of State's Office*, 840 F.3d 1057 (9th Cir. 2016) ....... 25, 35

*Gade v Nat'l Solid Wastes Mgmt Ass'n*, 505 U.S. 88 (1992) .................. 31

*Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d
    710 (6th Cir. 1995) ............................................................ 14

*Green Party of Tenn. v. Hargett (Hargett I)*, 767 F.3d 533 (6th Cir. 2014) ......... 21

*Green Party of Tenn. v. Hargett (Hargett II)*, 791 F.3d 684 (6th Cir. 2015) ........ 20

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ............................................. 18

*Lance v. Coffman*, 549 U.S. 437 (2007) ............................................... 16

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ................... 10, 11, 15

*Munro v. Socialist Workers Party*, 479 U.S. 189 (1986)........................................29

*National Rifle Assoc. of America v. Magaw,* 132 F.3d 272 (6th Cir.1997).............40

*Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016)........................................................................................ 15, 27, 36

*Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329 (6th Cir. 2016) .........21

*Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir. 2016) ..........................21

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ...................................................29

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006)25, 35

*Sheldon v. Grimes¸*18 F. Supp. 3d 854 (ED Ky., 2014) ..........................................38

*Singleton v. Wulff*, 428 U.S. 106 (1976) ............................................ vii, 18

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197 (6th Cir. 2011).. vii, 16

*Storer v. Brown*, 415 U.S. 724 (1974) ......................................................20

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)................................ 11, 13

*Tech & Crystal, Inc v. Volkswagen of Am, Inc.*, 2008 WL 2357643, at *3 (Mich. Ct. App., June 10, 2008)..........................................................33

*U.S. v Swisher*, 811 F.3d 299 (9th Cir., 2016) ..........................................25

*United States v. O'Brien*, 391 U.S. 367 (1968) .......................................25

*United Steelworkers of America, Local 2116 v. Cyclops Corp.,* 860 F.2d 189 (6th Cir.1988) ....................................................................41

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State* (*Valley Forge*), 454 U.S. 464 (1982) .........................................17

*Voting for Am v. Steen*, 732 F.3d 382 (5th Cir., 2013) ..........................................25

*Winter v. Wolnitzek*, 834 F.3d 681 (6th Cir. 2016)....................................13

**Statutes**

Mich. Comp. Laws § 168.2(g) ...................................................................33

Mich. Comp. Laws § 168.759 .......................................................... *passim*

Mich. Comp. Laws § 168.931 .......................................................... *passim*

Mich. Comp. Laws § 169.201 ...................................................................34

Mich. Comp. Laws § 169.206(1)(c) ...........................................................34

Mich. Comp. Laws § 169.206(2)(f) ............................................................34

Mich. Comp. Laws § 8.3a ..........................................................................33

Mich. Comp. Laws § 8.3l ...........................................................................33

**Constitutional Provisions**

Mich. Const. 1963, art 2, § 4(2) ................................................................29

Mich. Const. 1963, art. 2, § 4(1)(g) ............................................................3

Mich. Const. 1963, art. 2, §4(2) ................................................................37

U.S. Const., Art. III, § 2 ...........................................................................10

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.   Whether Plaintiffs' complaint should be dismissed because they lack standing to challenge Michigan's Election Laws that have not been applied to them, their members, or people with whom they have any special relationship?

2.   Whether Plaintiffs' complaint should be dismissed because the complaint fails to state a claim as to the unconstitutionality of these statutes?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:

Mich. Comp. Laws § 168.931(1)(f)

Mich. Comp. Laws § 168.759(4), (5), (6), (7), and (8)

Mich. Const. 1963, art. 2, § 4

*Anderson v. Celebrezze*, 460 U.S. 780 (1983).

*Burdick v. Takushi*, 504 U.S. 428 (1992).

*City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007).

*Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014).

*Green Party v. Hargett*, 700 F.3d 816 (6th Cir. 2012).

*Grayned v. City of Rockford*, 408 U.S. 104 (1972).

*Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016).

*Singleton v. Wulff*, 428 U.S. 106, 114 (1976).

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197 (6th Cir. 2011).

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014).

*United States v. Lanier*, 520 U.S. 259 (1997).

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State* (*Valley Forge*), 454 U.S. 464 (1982).

## STATEMENT OF FACTS

Priorities USA (Priorities) is a 501(c)(4) nonprofit corporation and a "voter-centric progressive advocacy and service organization."  (R. 17, Am. Compl., PgID 92, ¶ 7.)  Its "mission is to build a permanent infrastructure to engage Americans by persuading and mobilizing citizens around issues and elections that affect their lives."  (*Id.*)  It alleges that it engages in activity to "educate, mobilize, and turn out voters" in Michigan, and states that it "expects to" make expenditures and contributions towards those objectives in upcoming Michigan state and federal elections.  (*Id.*)  Priorities has not alleged that it is incorporated in Michigan, or that it has any members, much less members that reside or vote in Michigan.

Plaintiff Rise Inc. (Rise) is also a 501(c)(4) nonprofit organization that "runs statewide advocacy and voter mobilization programs in Michigan and California, as well on a number of campuses nationwide."  (R. 17, PgID 93, ¶8).  Rise alleges that "efforts to empower and mobilize students as participants in the political process…are critical to Rise's mission because building political power within the student population is a necessary condition to achieving its policy goals."  (*Id.)* Rise alleges that it launched its second state-specific campaign in Michigan in 2019, that it has eleven student organizers who are paid to organize their campuses including voter education and turnout activities, and that it plans to continue this program through the 2020 elections.  (*Id.* at ¶9*)*. Nonetheless, Rise has also not

1

alleged that it is incorporated in Michigan, or that it has any members or members that reside or vote in Michigan.

Plaintiff Downriver/Detroit Chapter of the A. Philip Randolph Institute (DAPRI) is a local chapter of a national 501(c)(3) nonprofit organization. It alleges that it is a membership organization "with a mission to continue to fight for Human Equality and Economic Justice and to seek structural changes through the American democratic process." (R. 17, PgID 95, ¶14). It alleges that it has members who are "involved in voter registration, get-out-the-vote activities, political and community education, lobbying, legislative action, and labor support activities in Michigan. (*Id.*) DAPRI does not identify any particular members who are affected by the challenged statutes. It does allege that its members have "provided rides" to and from the polls for the community on election day. (*Id.* at ¶16). However, there is no allegation that such rides are provided for a fee, or that the drivers are compensated in any way. DAPRI acknowledges that Proposal 3 makes absentee voting available to all, and that it would like to educate voters about the opportunity to vote absentee. (R. 17, PgID 96, ¶17).

Plaintiffs challenge several parts of Michigan's Election Law that limit who may deliver a signed application for an absent voter ballot to a local clerk, in addition to a prohibition on paying for the transportation of voters to elections.

## A.    Mich. Comp. Laws § 168.759 – Absent voter ballot applications

As amended by Proposal 3 in 2018, article 2, § 4 of the Michigan Constitution now provides that qualified electors shall have "[t]he right, once registered, to vote an absent voter ballot without giving a reason, during the forty (40) days before an election, and the right to choose whether the absent voter ballot is applied for, received and submitted in person or by mail." Mich. Const. 1963, art. 2, § 4(1)(g). Section 4 continues to provide, as it has since 1963, that:

> [T]he legislature shall enact laws to regulate the time, place and manner of all . . . elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and *to provide for a system of voter registration and absentee voting.* [*Id.*, art. 2, § 4(2)(emphasis added).]

Section 759 of the Michigan Election Law prescribes the process for applying for an absent voter (AV) ballot. In order to receive an AV ballot, a voter must request an application for an AV ballot and submit that application to his or her local clerk. With respect to both primaries and regular elections, an elector may apply for an AV ballot at any time during the 75 days before the primary or election. Mich. Comp. Laws § 168.759(1)-(2). In both cases, "the elector shall apply in person or by mail with the clerk" of the township or city in which the elector is registered. *Id.* Subsection 759(3) provides that:

> (3) An application for an absent voter ballot under this section may be made in any of the following ways:
>
> (a) By a written request signed by the voter.

3

(b) On an absent voter ballot application form provided for that purpose by the clerk of the city or township.[1]

(c) On a federal postcard application.

(4) An applicant for an absent voter ballot shall sign the application. A clerk or assistant clerk shall not deliver an absent voter ballot to an applicant who does not sign the application. *A person shall not be in possession of a signed absent voter ballot application except for the applicant; a member of the applicant's immediate family; a person residing in the applicant's household; a person whose job normally includes the handling of mail, but only during the course of his or her employment; a registered elector requested by the applicant to return the application; or a clerk, assistant of the clerk, or other authorized election official.* A registered elector who is requested by the applicant to return his or her absent voter ballot application shall sign the certificate on the absent voter ballot application.

(5) The clerk of a city or township shall have absent voter ballot application forms available in the clerk's office at all times and shall furnish an absent voter ballot application form to anyone upon a verbal or written request. [M.C.L. §§ 168.759(3)-(5) (emphasis added).]

Where a form application is used, under § 759(5), the "application shall be in substantially the following form," which then provides the body of the form and includes a general "warning" and a "certificate" portion for "a registered elector" delivering a completed application for a voter. Mich. Comp. Laws § 168.759(5). The warning must state that:

It is a violation of Michigan election law for a person other than those listed in the instructions to return, offer to return, agree to return, or solicit to return your absent voter ballot application to the clerk. An assistant authorized by the clerk who receives absent voter ballot

---

[1] AV ballot applications are available online at https://www.michigan.gov/documents/sos/ AVApp_535884_7.pdf.

4

applications at a location other than the clerk's office must have
credentials signed by the clerk. Ask to see his or her credentials before
entrusting your application with a person claiming to have the clerk's
authorization to return your application.  [*Id*.]

Similarly, the certificate for a registered elector returning an AV ballot

application must state that:

I am delivering the absent voter ballot application of [the named
voter] at his or her request; that I did not solicit or request to return the
application; that I have not made any markings on the application; that
I have not altered the application in any way; that I have not
influenced the applicant; and that I am aware that a false statement in
this certificate is a violation of Michigan election law.  [*Id*.]

Under § 759(6), the application form must include the following instructions

for an applicant:

Step 1. After completely filling out the application, sign and date the
application in the place designated. Your signature must appear on the
application or you will not receive an absent voter ballot.

Step 2. Deliver the application by 1 of the following methods:

(a) Place the application in an envelope addressed to the appropriate
clerk and place the necessary postage upon the return envelope and
deposit it in the United States mail or with another public postal
service, express mail service, parcel post service, or common carrier.

(b) Deliver the application personally to the clerk's office, to the
clerk, or to an authorized assistant of the clerk.

(c) In either (a) or (b), a member of the immediate family of the voter
including a father-in-law, mother-in-law, brother-in-law, sister-in-law,
son-in-law, daughter-in-law, grandparent, or grandchild or a person
residing in the voter's household may mail or deliver the application
to the clerk for the applicant.

(d) If an applicant cannot return the application in any of the above
methods, the applicant may select any registered elector to return the

5

application. The person returning the application must sign and return the certificate at the bottom of the application.  [M.C.L. § 168.759(6).]

Consistent with these statutes, § 759(8) provides that "[a] person who is not authorized in this act and who *both distributes* absent voter ballot applications to absent voters and *returns* those absent voter ballot applications to a clerk or assistant of the clerk is guilty of a misdemeanor."  Mich. Comp Laws § 168.759(8) (emphasis added).  Section 931 also provides for penalties associated with distributing and returning AV ballot applications.  *See* Mich. Comp. Laws §§ 168.931(1)(b)(iv) and (1)(n).

Based on these provisions, there are two ways to apply for an AV ballot; (1) a written request signed by the voter, and (2) on an AV ballot application form provided for that purpose.  In both cases, the voter applies by returning their written request or form application to their local clerk in person or by mail.  Mich. Comp. Laws §§ 168.759(1), (2), (6).  Clerks have also been instructed by the Department of State for a number of years to accept applications sent by facsimile and email.[2]  If a voter cannot appear in person to deliver their application or cannot mail their application or return it by email or facsimile, they may have an immediate family member deliver his or her application, or the person may request

---

[2] See, e.g., Chapter 6, Michigan's Absentee Voting Process, February 2019, p 2, available at https://www.michigan.gov/documents/sos/VI_Michigans_Absentee_Voting_Process_265992_7.pdf.

another registered voter to return the application.  Mich. Comp. Laws §§ 168.759(4), (5), (6).

Thus, only persons authorized by law, i.e. those described in § 759(4), may return a signed application for an AV ballot to a local clerk.  Mich. Comp. Laws §§ 168.759(4)-(5).  Defendant is not aware of any recent prosecutions under these provisions for the return of AV ballot applications.

Plaintiffs refer to these statutes as an "Absentee Ballot Organizing Ban," and allege that they are "expending and diverting additional funds and resources" in get-out-the-vote ('GOTV'), voter education efforts, mobilization, and turn out activities "at the expense of" other efforts in Michigan and in other states.  (R. 17, Am. Compl., PgID 98, ¶ 25).  Plaintiffs further allege that they are required to expend "additional resources" to educate their employees, volunteers, and partners about the statutes on how to comport their activities with the law.  (*Id.*)

### B.    Mich. Comp. Laws § 168.931 – Transporting voters to elections

Mich. Comp. Laws § 168.931 provides, in part:

(1) A person who violates 1 or more of the following subdivisions is guilty of a misdemeanor:

* * *

(f) A person shall not hire a motor vehicle or other conveyance or cause the same to be done, for conveying voters, other than voters physically unable to walk, to an election. [Mich. Comp. Laws § 168.931(1)(f).]

7

Under this provision, a person cannot pay for the transportation of a voter to the polls unless the voter is physically unable to walk to the election.  This language has existed in some form since 1895, *see* 1895 P.A. 35, and has been a part of Michigan's modern election law since it was reenacted in 1954 P.A. 116.  It was amended by 1982 P.A. 201 to replace the term "carriage" with the current term "motor vehicle."  Given its age, it is possible that people have been prosecuted under this statute, but Defendant has been unsuccessful in finding any cases involving a prosecution under § 931(1)(f).

Plaintiffs refers to § 931(1)(f) as a "Voter Transportation Ban," and allege that they are "expending and diverting additional funds and resources" in get-out-the-vote ('GOTV'), voter education efforts, mobilization, and turn out activities "at the expense of" other efforts in Michigan and in other states.  (R. 17, Am. Compl., PgID 98, ¶ 25).  Plaintiffs further allege that they are required to expend "additional resources" to educate their employees, volunteers, and partners about the statutes on how to comport their activities with the law.  (*Id.*)

## PROCEDURAL HISTORY

This case was originally filed by Plaintiff Priorities USA on November 12, 2019.  (R. 1, Cmplt, PageID #1-18.)  On December 4, 2019, the Court entered a stipulated order granting a two-week extension for Attorney General Nessel to respond to the complaint.  (R. 6, Stip. Dec. 5 Order, PageID #25-26.)  On

8

December 20, the Attorney General filed a motion to dismiss on grounds that Priorities USA lacked standing and the complaint failed to demonstrate that the challenged statutes violated any constitutional rights.

On December 23, 2019, the Court entered an order *sua sponte* in which the Court essentially invited Priorities USA to amend its complaint within 21 days if doing so would address the issues raised in the motion to dismiss. (R. 13, Dec. 23 Order, PageID #81-82.) On January 9, 2020, the Court entered a stipulated order granting Priorities USA a two-week extension, making their response or amended complaint due on January 24, 2020. (R. 15, Jan. 9 Order, PageID #84-85.)

On January 23, 2020, the parties stipulated to another extension for Priorities USA to respond to the motion to dismiss or file an amended complaint. (R. 16, Jan. 27 Order, PageID #86-87.) The order granted two additional business days, making the deadline January 28, 2020. Priorities USA filed an amended complaint on January 27, 2020 which added two new plaintiffs—Rise, Inc. and the Detroit/Downriver Chapter of the A. Philip Randolph Institute (DAPRI)—new allegations (increasing from 39 to 97 paragraphs) and four new legal claims. (R. 17, Am. Cmplt, PageID #88-128.)

On the same day, the identical plaintiffs filed another complaint against the Attorney General raising identical allegations and identical legal claims. (E.D. Mich Case No. 2:20-cv-10211, *Priorities USA v. Nessel*.) Plaintiffs immediately

9

moved to consolidate the new lawsuit with this case.  (R. 20, Motion to

Consolidate, PageID #131-134.)

Also on January 28, 2020, Plaintiffs filed a motion for preliminary and

permanent injunction and a motion for expedited consideration of the injunction,

expedited discovery, and to consolidate the hearing of their motion for preliminary

injunction with a trial on the merits.  (R. 22, Mot. for PI; R. 23, Mot. to Expedite.)

Defendant Nessel has responded to the motion to expedite (*see* R. 24), and to the

motion to consolidate, (*see* R. 26).

Attorney General Nessel now moves to dismiss Plaintiffs' Amended

Complaint for the reasons set forth below.

## ARGUMENT

**I.**   **Plaintiffs' complaint should be dismissed where they lack standing to sue and the complaint otherwise fails to state a claim upon which relief may be granted.**

**A.**   **Plaintiffs lacks standing to sue because they have not plead a sufficient injury-in-fact and cannot sue in a representational capacity.**

Article III of the Constitution limits the jurisdiction of federal courts to

"Cases" and "Controversies."  U.S. Const., Art. III, § 2. The doctrine of standing

implements these constitutional limits by "identify[ing] those disputes which are

appropriately resolved through the judicial process."  *Lujan v. Defenders of*

*Wildlife,* 504 U.S. 555, 560 (1992).  To establish standing, a plaintiff must show

(1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560–561 (internal quotation marks omitted). " 'The party invoking federal jurisdiction bears the burden of establishing' standing." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 411-412 (2013) (internal citation omitted).

In order to establish organizational standing, a plaintiff organization, like the three plaintiffs here, must establish the three traditional elements of standing. *See Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014). Here, none of the Plaintiffs have sufficiently pleaded an injury-in-fact to support standing.

### 1.   **Plaintiffs have not sufficiently alleged an injury-in-fact.**

An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.' " *Lujan*, 504 U.S. at 560 (some internal question marks omitted). "An allegation of *future* injury may suffice if the threatened injury is 'certainly impending,' or there is a ' "substantial risk" that the harm will occur.' " *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409, 414, n. 5) (emphasis deleted and internal quotation marks omitted) (emphasis added).

Overlaying this analysis is the question of "when the threatened enforcement of a law creates an Article III injury." *Susan B. Anthony*, 573 U.S. at 158. On this

point, the U.S. Supreme Court observed that an actual arrest or prosecution is not

required, but enforcement must be imminent and the threat credible:

> When an individual is subject to such a threat, an actual arrest,
> prosecution, or other enforcement action is not a prerequisite to
> challenging the law. Instead, we have permitted pre-enforcement
> review under circumstances that render the threatened enforcement
> *sufficiently imminent*. Specifically, we have held that a plaintiff
> satisfies the injury-in-fact requirement where he alleges "an intention
> to engage in a course of conduct arguably affected with a
> constitutional interest, but proscribed by a statute, *and there exists a*
> *credible threat of prosecution thereunder*." [*Id*. at 158-59 (internal
> citations omitted) (emphasis added).]

Thus, to establish injury-in-fact in a pre-enforcement case, as here, Plaintiffs

must demonstrate that they intend to engage in conduct that is constitutionally

protected, that their intended conduct is arguably proscribed by the statutes they

challenge, and last, that the threat of future enforcement of the challenged statutes

is "sufficiently imminent" or "substantial," which they can do by demonstrating

that there is a "credible threat of prosecution" under the statutes, rather than an

"imaginary or speculative" threat.  *Id*. at 158-59, 161-65.

Assuming, but not conceding, that Plaintiffs have alleged an intent to engage

in protected conduct, and that at least some of their intended conduct is caught by

the challenged statutes, Plaintiffs fail to sufficiently allege a credible threat of

prosecution.  Instead, Plaintiffs allege only that the Voter Transportation Ban and

the Absentee Ballot Organizing Ban will harm them by having to expend and

divert additional funds to voter education and mobilization efforts and having to

train their employees and volunteers on how to comply with the laws.  (R. 17, Am. Compl., PgID 98-99, ¶ 24-25).  Plaintiffs allege that because of these so-called Bans, they "will have to expend and divert additional funds and resources in GOTV efforts" in Michigan, and they "will also be prevented from fully exercising [their] associational rights to engage in these GOTV effort because of the Bans." (R. 17, Am. Compl., PgID 98, ¶ 25).

But these alleged future injuries are not "certainly impending" nor does there appear to be a "substantial risk" that any actual harm will occur.  *Susan B. Anthony List*, 573 U.S. at 158.  The complaint is devoid of any reference to recent prosecutions or threatened prosecutions under § 931(1)(f) or under §§ 759(8), 931(1)(b)(iv), (n).  The only specific instance Plaintiffs point to is a press release from Uber stating that it was not offering discounted rides to the polls in Michigan for the November 2018 general election.  (R. 17, Am. Compl., PgID 105, ¶ 41). Plaintiffs alleges that "[u]pon information and belief, Uber did not provide Michigan citizens with discounted rides to polling places because of the Voter Transportation Ban."  (*Id*.)  However, there is no allegation that Uber was threatened with prosecution under § 931(1)(f) in 2018.

Plaintiffs have not alleged facts sufficient to support a "credible threat of prosecution" under any of the statutes discussed above.  *See*, *e.g*., *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016) (finding credible threat of

13

enforcement where agency letter contained valid threat of enforcement).  As a result, Plaintiffs have not sufficiently pled an injury-in-fact and thus lack standing to bring these claims.

Further, to the extent Plaintiffs allege they will have to "divert" resources to combat the effects of these statutes, (R. 17, Am. Compl., PgID 98, ¶ 25), this allegation also fails to show an injury-in-fact.  The Sixth Circuit has previously rejected the "diversion of resources" theory in similar cases.  In *Fair Elections Ohio*, 770 F.3d at 458, an organization conducting voter outreach sought to challenge a deadline for requesting an absent voter ballot on the theory that it prevented people jailed after the deadline and held through election day from exercising their right to vote.  The Sixth Circuit held that the organization did not have standing because the organization had not shown an injury in fact.  *Id.* at 459.  The Court held that the organization had only an, "abstract social interest in maximizing voter turnout," and that such abstract interests cannot confer Article III standing.  *Id.* at 461 (citing *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d 710, 716-17 (6th Cir. 1995)).  Moreover, Plaintiffs' First Amendment and equal protection claims are primarily based on alleged injuries to individual voters and are untethered to its alleged injury of having to divert its resources.

14

On the other hand, the Sixth Circuit also addressed the "diversion of resources" theory in *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016), where it found that the organization plaintiff had standing, but only because it had immediate plans to revise its voter education program to adapt to a *recent* change in law, and that a favorable decision enjoining the new laws would redress that injury.  But that case is distinguishable from the situation Plaintiffs faces here, because there have been no recent changes in the law.  Rather, these are long-existing laws. Just as in *Fair Elections Ohio*, Plaintiffs' injuries are premised upon the rejected argument that they have standing "merely by virtue of its efforts and expense to advise others how to comport with the law, or by virtue of its efforts and expense to change the law."  770 F.3d at 460.

Further, Plaintiffs Priorities USA and Rise Inc. also do not allege that they are comprised of members that include any Michigan voters, and they also do not sufficiently allege how they, as institutions, have been injured by the challenged provisions.  *Lujan*, 504 U.S. at 560-61.  In short, Plaintiffs do not allege how the Bans have injured it in a manner that could be distinguishable from an alleged hypothetical harm incurred by any actual voter within the State.

To the contrary, Plaintiffs raise only general grievances regarding what *may* occur to unidentified voters at some future time.  Plaintiffs' claims are similar to those considered and easily rejected by the Supreme Court, the Sixth Circuit, and

this Court.  *See, e.g.*, *Lance v. Coffman*, 549 U.S. 437, 441 (2007) ("[S]tanding to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." (quotation omitted)); *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 126-28 (6th Cir. 1995) (no standing for resident challenging city charter amendment when she had "suffered no harm, nor will she suffer any greater harm than that of any other voter in the City of Cincinnati"); *Anthony v. Michigan*, 35 F. Supp. 2d 989, 1003 (E.D. Mich. 1999) (no standing for Detroit citizens challenging consolidation of Detroit Recorder's Court because plaintiffs did not "articulate how they [were] *particularly* harmed as a result of the merger") (emphasis in original).

Plaintiffs simply have no standing to raise any claims challenging the statutes at issue, and so the Complaint must be dismissed.

### 2. Plaintiffs lack standing to sue in a representational capacity.

Each of the three Plaintiffs appear to be attempting to invoke the rights of unidentified third-party individuals who are not a party to this suit.  But, even in a representational capacity, Plaintiffs must still meet the prudential requirements for standing developed by the Supreme Court.  *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State* (*Valley Forge*), 454 U.S. 464, 474

(1982)). First, a "plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge*, 454 U.S. at 474 (internal quotation marks and citation omitted). Second, a plaintiff must present a claim that is "more than a generalized grievance." *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007) (internal quotation marks omitted). Finally, the complaint must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge*, 454 U.S. at 475 (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)). "[E]ven when litigants have established a substantial injury from a government action, they 'cannot challenge its constitutionality unless [they] can show that [they are] within the class whose constitutional rights are allegedly infringed.'" *Smith*, 641 F.3d at 207 (quoting *Barrows v. Jackson*, 346 U.S. 249, 256 (1953)).

Here, Plaintiffs are attempting to advance the legal rights of others, i.e. voters and other organizations who purportedly may be affected by the so-called Voter Transportation Ban and the Absentee Ballot Organizing Ban. In this respect, Plaintiffs have no particularized injury, and their constitutional rights are not affected by the challenged statutes.

It is true, however, that the Supreme Court has observed that its salutary rule against third-party standing is not absolute. *Kowalski v. Tesmer*, 543 U.S. 125, 129

17

(2004).  The rule "should not be applied where its underlying justifications are absent."  *Singleton v. Wulff*, 428 U.S. 106, 114 (1976).  In deciding when not to apply this rule, the Supreme Court has considered "two factual elements":

> The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Furthermore, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.

*Singleton*, 428 U.S. at 114-15.  "Elsewhere, the [Supreme] Court has described this test as requiring that 'the party asserting the right has a 'close' relationship with the person who possesses the right,' and that there is a 'hindrance' to the possessor's ability to protect his own interests.'"  *Smith*, 641 F.3d at 208 (citing *Kowalski*, 543 U.S. at 130).

But in this case, Plaintiffs have neither alleged any "special relationship" to any person who might raise a claim that his or her rights have been violated by the Voter Transportation Ban or the Absentee Ballot Organizing Plan, nor identified any person by name.  Moreover, there is no indication that such individuals are incapable of asserting their own rights.  The underlying justifications against third-party standing thus apply, and Plaintiffs lacks the requisite standing to bring claims based on injuries to third-parties.

Just as the Sixth Circuit observed in *Fair Elections Ohio,* 770 F.3d at 461, "[t]he plaintiffs are organizations and cannot vote; instead they assert the right to vote of individuals not even presently identifiable."   The Sixth Circuit rejected the exceptions to the rule against third party standing, finding that none applied. *Id.* There, just as here, the relationship between the plaintiff organization and the persons whom it seeks to help—unidentified, future voters—does not resemble the close relationship of the lawyer-client or doctor-patient relationships recognized by the Supreme Court. (*Id.*)

### B.   Plaintiff's complaint fails to state a claim upon which relief may be granted regarding the "Absentee Ballot Organizing Plan."

Plaintiffs allege that the "Absentee Ballot Organizing Plan" statutes violate the First and Fourteenth Amendments because (1) the statutes are unconstitutionally vague and overbroad, (R. 17, Am. Compl., Count I, PgID 112-114), (2) because they impermissibly infringe on Plaintiff's speech and associational rights (*Id.*, Count II, PgID 114-116), and (3), the statutes severely burden the right to vote, (*Id.*, Count III, PgID 116-118).  But Plaintiff's allegations are without merit since they statutes are not vague and the statutes, at best, only minimally burden the right to vote or to speak and associate and are supported by important regulatory interests.

The "right to vote in any manner . . . [is not] absolute," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (citation omitted); the Constitution recognizes the states'

19

clear prerogative to prescribe time, place, and manner restrictions for holding

elections.  U.S. Const. art. I, § 4, cl. 1.  Indeed, there "must be a substantial

regulation of elections if they are to be fair and honest and if some sort of order,

rather than chaos, is to accompany the democratic processes."  *Burdick*, 504 U.S.

at 433 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).  Federal law thus

generally defers to the states' authority to regulate the right to vote.  *See Crawford*

*v. Marion Cty. Election Bd.*, 553 U.S. 181, 203-04 (2008) (Stevens, J., op.)

(recognizing that neutral, nondiscriminatory regulation will not be lightly struck

down, despite partisan motivations in some lawmakers, so as to avoid frustrating

the intent of the people's elected representatives).

When a constitutional challenge to an election regulation requires courts to

resolve a dispute concerning these competing interests, courts apply the *Anderson-*

*Burdick* analysis from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick*

*v. Takushi*, *supra*, which requires the following considerations:

> [T]he court must first consider the character and magnitude of the
> asserted injury to the rights protected by the [Constitution] that the
> plaintiff seeks to vindicate. Second, it must identify and evaluate the
> precise interests put forward by the State as justifications for the
> burden imposed by its rule. Finally, it must determine the legitimacy
> and strength of each of those interests and consider the extent to
> which those interests make it necessary to burden the plaintiff's rights.

*Green Party of Tenn. v. Hargett (Hargett II)*, 791 F.3d 684, 693 (6th Cir.

2015)(internal quotation marks and citations omitted).  "Though the touchstone of

*Anderson-Burdick* is its flexibility in weighing competing interests, the
'rigorousness of [the court's] inquiry into the propriety of a state election law
depends upon the extent to which a challenged regulation burdens First and
Fourteenth Amendment rights.' " *Ohio Democratic Party v. Husted*, 834 F.3d 620,
627 (6th Cir. 2016) (quoting *Burdick*, 504 U.S. at 434).

> If a state imposes "severe restrictions" on a plaintiff's constitutional right to
vote, its regulations survive only if "narrowly drawn to advance a state interest of
compelling importance." *Burdick*, 504 U.S. at 434.  But "minimally burdensome
and nondiscriminatory" regulations are subject to a "less-searching examination
closer to rational basis" and "'the State's important regulatory interests are
generally sufficient to justify the restrictions.'" *Ohio Council 8 Am. Fed'n of State
v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016) (citing *Green Party of Tenn. v.
Hargett (Hargett I)*, 767 F.3d 533, 546 (6th Cir. 2014), and quoting *Burdick*, 504
U.S. at 434).  Regulations falling somewhere in between—"i.e., regulations that
impose a more-than-minimal but less-than-severe burden—require a 'flexible'
analysis, 'weighing the burden on the plaintiffs against the state's asserted interest
and chosen means of pursuing it.' " *Ohio Democratic Party*, 834 F.3d at 627
(quoting *Hargett I*, 767 F.3d at 546).

### 1.    The statutes are not vague.

The Sixth Circuit has held that a statute should not be struck as facially vague only if the plaintiff has 'demonstrated that the law is impermissibly vague in all of its applications." *Green Party v. Hargett*, 700 F.3d 816, 825 (6th Cir. 2012)(quoting *Vill. Of Hoffman Estates v. Flipside, Hoffman Estates Inc.,*455 U.S. 489, 497 (1982).  The purpose of this doctrine is, "to ensure that both those who enforce a statute and those who must comply with it know what is prohibited," and not "to convert into a constitutional dilemma the practical difficulties of crafting a law that is general enough to take into account a variety of human conduct yet specific enough to provide fair warning." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) and *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)(internal quotation marks omitted)).  Federal courts must construe challenged state statutes, whenever possible, so as "to avoid constitutional difficulty." *Id.,* (quoting *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006)).  Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality. *Id.* (quoting *Chapman v. United States*, 500 U.S. 453, 464 (1991)).

Courts apply a two-part test to determine whether a law is unconstitutionally vague:  first, the law must give a person of "ordinary intelligence a reasonable opportunity to know what is prohibited, so that [they] may act accordingly[;]" and

second, the standards of enforcement must be precise enough to avoid "involving

so many factors of varying effect that neither the person to decide in advance nor

the jury after the fact can safely and certainly judge the result." *Grayned*, 408 U.S.

at 108 (internal citation omitted); *Cline v. Frink Dairy Co*., 274 U.S. 445, 465

(1927), *Columbia Natural Resources v. Tatum*, 58 F.3d 1101, 1105 (6th Cir.

1995)(quoting *Cline v. Frink Dairy Co*., 274 U.S. 445, 465 (1927)).  In *United*

*States v. Lanier*, the Supreme Court also observed that, "the canon of strict

construction of criminal statutes, or rule of lenity, ensures fair warning by so

resolving ambiguity in a criminal statute as to apply it only to conduct clearly

covered[.]" *United States v. Lanier*, 520 U.S. 259, 266 (1997). Also, any words

not expressly defined in the statute will be interpreted according to their ordinary,

contemporary, and common meaning.  *Deutsche Bank National Trust Co. v.*

*Tucker*, 621 F.3d 460, 463 (6th Cir. 2010).

Plaintiffs allege that the prohibition against "soliciting or requesting" to

return an absent ballot application is so vague as to be incapable of giving ordinary

people fair notice of what conduct is being proscribed.  (R. 17, Am. Compl., PgID

112-113, ¶57-58).  Plaintiffs contend that it is somehow unclear if this includes a

factual recitation of a voters right to *request* assistance with delivering an

application.  Plaintiffs' vagueness argument in this regard borders on being

frivolous.

23

First, the conduct being prohibited is plain and clear—that is, it is prohibited to "solicit or request" to return an absent ballot application.  Mich. Comp. Laws §168.759(4), (5).  The words "solicit" and "request" are not ambiguous or vague, and are readily understood using their ordinary, contemporary, and common meaning.  The statutes prohibit simply prohibit a person from asking to return an absent ballot application.

Second, even if the statutes could be applied to more conduct or speech than what they plainly state, they would still be constitutional because the Court could readily provide a limiting construction of the statute to include only the conduct that is encompassed within a common understanding of the words of the statute.  Plaintiffs have failed to state a claim in Count I as to the unconstitutionality of these statutes.

### 2.     The statutes only minimally burden the right to speech and association.

Plaintiffs argue that the AV ballot application statutes burden its speech and associational rights.  Plaintiffs argues that it engages in political expression when it interacts with Michigan voters to encourage them to participate in the political process. (R. 17, Am. Compl., PgID 114, ¶ 62).  That may be true, but that is not what is at issue here.  Plaintiffs seek to assist voters by delivering their AV ballot applications to their local clerk.  This act, however, is not speech.

24

The U.S. Supreme Court has held that conduct is not "speech" whenever the person engaging in the conduct intends thereby to express an idea. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968).  Courts have held, for example, that ballot collecting is not presumptively expressive, *Feldman v. Arizona Sec of State's Office*, 840 F.3d 1057 (9th Cir. 2016), en banc decision on other grounds, 843 F3d 366 (2016), because unlike burning an American flag or wearing a military medial, which "would reasonably be understood by the viewer to be communicative," *U.S. v Swisher*, 811 F.3d 299, 311 (9th Cir. 2016) (internal citation omitted), ballot collection does not convey that type of expressive message.  Indeed, ballot collecting does not acquire First Amendment protection just because it is carried out along with protected activities and speech.  *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) (concluding that "combining speech and conduct" is not enough to create expressive conduct); *Voting for Am v. Steen*, 732 F.3d 382, 389 (5th Cir., 2013) ("The Court also has repeatedly explained that non-expressive conduct does not acquire First Amendment protection whenever it is combined with another activity that involves protected speech.").  Delivering AV ballot applications arguably falls into this category and is therefore not speech protected by the First Amendment.

But even if it was, as discussed above, any burden imposed by the AV ballot application statutes on Plaintiffs is minimal and outweighed by the State's interest

in preserving the integrity of the AV ballot application process. Moreover,

Plaintiffs may assist voters by delivering their AV ballot applications, as long as

the voters request Plaintiff's assistance. Plaintiffs have thus failed to state a claim

in Count II as to unconstitutionality of these statutes.

### 3. The statutes only minimally burden the right to vote and are supported by important regulatory interests.

Plaintiffs ground the burden to voters in the fact that third parties cannot

assist a voter by delivering a voter's AV ballot application to the local clerk unless

the third party is a registered voter and the voter affirmatively requests the third

party's assistance. (R. 17, Am. Compl., PgID 109, ¶51). This is a correct

statement of the law. But let's recount the numerous ways voters can return their

written requests or form applications to the local clerk; (1) in person, (2) by US

mail or some other mail service, (3) by email, (4) by facsimile, (5) through in-

person, mail, or other delivery by an immediate family member, which includes

in-laws and grandchildren, (6) through in-person, mail, or other delivery by a

person residing in the household with the voter, and (7) if none of those methods

are available, through in-person, mail, or other delivery "by any registered elector."

Mich. Comp. Laws §§ 168.759(4)-(6).

There are six methods of delivery a voter may utilize before even getting to

the "registered elector" option. And even then, the "registered elector" option does

not burden voters. A voter can ask any registered elector in Michigan to deliver or

26

return his or her application.  If there is any burden it inures to the registered elector who may wish to assist a voter by delivering his or her application.  This is because, as Plaintiffs note, the registered elector cannot solicit or request to deliver the application.  Mich. Comp. Laws § 168.759(5).  Rather, the voter must ask or request the registered elector to do so.  But the law does not prohibit a registered elector from simply reading to, or giving a basic explanation of, the statutorily required instructions as to methods of delivery to a voter.  If after doing so the voter requests that the registered elector return his or her form, and the registered elector completes the certificate, there is no violation of the law.

Thus, if Plaintiffs want to engage in GOTV activities in Michigan that include handing out blank AV ballot applications, Plaintiffs can staff the event with Michigan registered electors who can read the instructions regarding delivery to the voters, and staff can deliver forms for the voters *if the voters thereafter ask staff to do so*, and staff completes the certificate.

The burden on the right to vote itself here is non-existent, or at most, minimal.  Indeed, Plaintiffs have not identified or alleged one single instance where any voter – elderly, a minority, economically disadvantaged or otherwise – was disenfranchised because he or she was unable to deliver his or her AV ballot application.  *See e.g., Northeast Ohio Coal for the Homeless*, 837 F.3d at 631 (6th Cir. 2016) (determining it is error for a court to weigh "the burden that the

27

challenged provisions uniquely place" on a subgroup of voters in the absence of

"quantifiable evidence from which an arbiter could gauge the frequency with

which this narrow class of voters has been or will become disenfranchised as a

result of [those provisions]."  While the "registered elector" option for delivery is

slightly more involved than the other third-party options, e.g., delivery by family

or a person residing in the household, there is a rational reason for this difference.

With family members or persons in the household, the State assumes a relationship

of trust or accountability between the voter and these third parties where the voter

can be assured that his or her application has been properly delivered and can

readily inquire as to that fact.  And the State will assume, based on these

relationships, that the application delivered to the local clerk was properly

completed and delivered.  In other words, that the identified voter does, in fact,

wish to receive and vote an AV ballot.

Outside these relationships, the elements of trust and accountability are or

may be reduced.  For instance, if a voter attends a GOTV event sponsored by

Plaintiff, the "registered elector" with whom a voter interacts may be a complete

stranger.  In that instance, the State requires more caution. It should be the voter

who decides to entrust a stranger with delivering his or her application.  And the

State is less trusting as well, requiring that stranger to complete the certificate on

the application form identifying himself or herself.  That way if there are questions about the application, the local clerk can contact the voter or the registered elector.

Balanced against these minimally burdensome steps is the State's important regulatory interest in protecting the integrity and security of the AV ballot process. Michigan's Constitution expressly provides that the Legislature "shall enact laws . . . to preserve the purity of elections," and to "guard against abuses of the elective franchise[.]" Mich. Const. 1963, art 2, § 4(2).  The U.S. Supreme Court has "upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Anderson* 460 U.S. at 788, n. 9 (1983).  In other words, it has recognized that a State has a compelling interest in ensuring that an individual's right to vote is not undermined by fraud in the election process.  *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy.").  And the Supreme Court has held that legislatures are permitted to respond to potential deficiencies in the electoral process with "foresight" rather than "reactively." *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986).

Here, the requirements with respect to delivery by a "registered elector" protect both the voter and the process by helping to ensure that the voter's application is properly delivered, and that the voter identified on an application for

29

an AV ballot does in fact wish to obtain and vote by AV ballot.  The very minimal

burden created by the requirements, even for elderly or economically

disadvantaged voters, is outweighed by the State's important interest in protecting

the integrity of the AV ballot process.  Plaintiffs have thus failed to state a claim in

Counts III as to unconstitutionality of these statutes.

### 4.     The statutes are not preempted.

Plaintiffs allege that the AV ballot application statutes conflict with § 208 of

the Voting Rights Act (VRA), 52 U.S.C. § 10508, and are thus preempted.  (R. 17,

Am. Compl., PageID.118-121, ¶¶ 72-78).  But there is no conflict between these

statutes and § 208 of the VRA and therefore, no preemption.

Section 208 provides:

> Any voter who requires *assistance to vote* by reason of blindness,
> disability, or inability to read or write may be given assistance *by a*
> *person of the voter's choice*, other than the voter's employer or agent
> of that employer or officer or agent of the voter's union.

52 U.S.C. § 10508 (emphasis added).  The VRA defines the terms "vote" and

"voting" to include:

> [A]ll action necessary to make a vote effective in any primary,
> special, or general election, including, but not limited to, registration,
> listing pursuant to this chapter, or other action required by law
> prerequisite to voting, casting a ballot, and having such ballot counted
> properly and included in the appropriate totals of votes cast with
> respect to candidates for public or party office and propositions for
> which votes are received in an election.

30

52 U.S.C. § 10310.  Plaintiffs argue that Mich. Comp. Laws, §§ 168.759(3) and (8) conflict with § 208 to the extent that the statutes prohibit a blind, disabled, or illiterate voter from requesting third parties, like Plaintiffs' volunteers, from asking such voters if the volunteers may return their AV ballot applications. (R. 17, Am. Compl., PageID.118-121, ¶¶ 72-78).

Conflict preemption occurs where compliance with both a federal and state regulation is physically impossible, or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v Nat'l Solid Wastes Mgmt Ass'n*, 505 U.S. 88, 98 (1992).  Here, the statutes do neither.  They do not prohibit a blind, disabled, or illiterate voter from being given assistance by a person of the voter's choice.  Section 208 clearly contemplates that it is the voter who is seeking the assistance.  Section 759 likewise contemplates that it is the voter who will request someone else to return their AV ballot application.  The prohibition against a person actively soliciting to return a voter's application without a preceding request by the voter to do so does not conflict with the voter's rights under § 208 to affirmatively seek assistance. Plaintiffs fail to state a claim as to Count IV.

31

### C.    Plaintiff's complaint fails to state a claim upon which relief may be granted regarding the "Voter Transportation Ban."

Plaintiffs argue that Mich. Comp. Laws § 168.931(1)(f) is unconstitutional under the First and Fourteenth Amendments, or is otherwise preempted, as to federal elections, by 11 C.F.R. § 114.4.

This statute was originally enacted by 1895 P.A. 135, which provided:

> Any person who shall hire any carriage or other conveyance, or cause the same to be done, for conveying voters, other than voters physically unable to walk thereto, to any primary conducted hereunder, or who shall solicit any person to cast an unlawful vote at any primary, or who shall offer to any voter any money or reward of any kind, or shall treat any voter or furnish any entertainment for the purpose of securing such voter's vote, support, or attendance at such primary or convention, or shall cause the same to be done, shall be deemed guilty of a misdemeanor.

By 1929, the additional language in the provision had been placed elsewhere, and it simply provided:

> Any person who shall hire any carriage or other conveyance, or cause the same to be done, for conveying voters, other than voters physically unable to walk thereto, to any election or primary election conducted hereunder shall be deemed guilty of a misdemeanor. [M.C.L. 1929, § 3298.]

And finally, it was amended[3] to its current version:

> A *person* shall not *hire* a motor vehicle or other conveyance or cause the same to be done, for conveying voters, other than voters physically unable to walk, to an *election*.  [Mich. Comp. Laws § 168.931(1)(f) (emphasis added)].

---

[3] *See* 1982 P.A. 201 and 1995 P.A. 261.

The Michigan Election Law does not define "person."  But Mich. Comp. Laws § 8.3l provides that "[t]he word 'person' may extend and be applied to bodies politic and corporate, as well as to individuals."  *See also*, Mich. Comp. Laws § 8.3a ("All words and phrases shall be construed and understood according to the common and approved usage of the language[.]").  Similarly, the act does not define the term "hire."  But the Michigan Court of Appeals has interpreted the term in another context to mean " 'to engage the services of for wages or other payment,' or 'to engage the temporary use of at a set price.' "  *Tech & Crystal, Inc v. Volkswagen of Am, Inc.*, 2008 WL 2357643, at *3 (Mich. Ct. App., June 10, 2008), quoting *Random House Webster's College Dictionary* (1997).  However, it does define "[e]lection" to mean "an election or primary election at which the electors of this state or of a subdivision of this state choose or nominate by ballot an individual for public office or decide a ballot question lawfully submitted to them."  Mich. Comp. Laws § 168.2(g).

Under this provision, a person cannot engage the service of a vehicle for a fee to transport a voter to an election unless the voter is physically unable to walk to the election.  The statute does not otherwise prohibit a person from paying for expenses incurred in transporting a voter by vehicle so long as it does not amount

to hiring for the service.[4]  And it does not prohibit a person from providing a voter with free transportation to an election.

### 1.    The statute is not vague.

As argued above, courts avoid striking statutes as facially vague as long as they are capable of being interpreted in a manner that is constitutional.  *Hargett*, *supra,* 700 F.3d at 825.  Just as with their arguments concerning the return of AV ballot applications, Plaintiffs' arguments regarding the "Voter Transportation Ban" are similarly flawed.  Here, Plaintiffs contend that the statute is vague because it is not clear what it means to "hire a motor vehicle."  (R. 17, Am. Compl., PgID 121-122, ¶80-81.

Again, the words of the statute are understandable by a person of ordinary intelligence according to the common meaning of the words.  As noted above, "hire" is defined in the dictionary as meaning "to engage the services of for wages or other payment," or alternatively, "to engage the temporary use of at a set price."

---

[4] Such expenses, however, may have to be reported.  Michigan's Campaign Finance Act, Mich. Comp. Laws § 169.201 *et seq*., includes within the definition of a reportable "expenditure" an "expenditure made for . . . transporting voters to the polls," Mich. Comp. Laws § 169.206(1)(c), unless it is "[a]n expenditure for . . . nonpartisan get-out-the-vote activities made by an organization that is exempt from federal income tax under section 501(c)(3) of the internal revenue code, 26 USC 501[.]" Mich. Comp. Laws § 169.206(2)(f).  Plaintiffs Priorities USA and Rise Inc. are not entitled to the reporting exemption because they are 501(c)(4) corporations.  But DAPRI is a 501(c)(3) corporation and would be entitled to the exemption.

*Tech & Crystal, Inc.*, 2008 WL 2357643, at *3 (quoting *Random House Webster's College Dictionary* (1997)).  In either sense, the critical factor is the provision of services or use for a fee.  Also, the statute prohibits hiring conveyances "for voters," which necessarily contemplates acting on behalf of others, not oneself. Plaintiffs' alleged concerns—i.e. volunteers, gas money, or a voter paying for a taxi for themselves—are unfounded and not rooted in a reasonable reading of the statute.  Notably, there is no allegation that such an enforcement has been threatened, and the Attorney General can find no record of such a prosecution ever having occurred.  And, as discussed above, even if such an application could be construed from the language of the statute, the statute would still be constitutional so long as the Court could limit the construction of the statute to only the conduct that is clearly included.

> ### 2. The statute only minimally burdens the right to speech and association.

Plaintiffs argue that § 931(1)(f) impermissibly infringes on its speech and associational rights.  (R. 17, Am. Compl., PgID 122-124, ¶84-88).  But driving a voter to an election or arranging for the voter to be driven to an election, like the delivery of AV ballot applications, is not speech.  *See, e.g., O'Brien*, 391 U.S. at 376; *Feldman*, 840 F.3d 1057; *Rumsfeld*, 547 U.S. at 66; *Voting for Am*, 732 F.3d at 389.  But even if it was, as explained above, any burden imposed by § 931(1)(f) on Plaintiffs is minimal and outweighed by the State's important interest in

protecting voters from undue influence, which helps preserve the integrity of Michigan's elections.  Plaintiffs thus fail to state a claim in Count VI as to the unconstitutionality of § 931(1(f).

### 3. The statute only minimally burdens the right to vote and is supported by important regulatory interests.

Plaintiffs argue that § 931(1)(f) severely burdens the right to vote because by prohibiting paid drivers the statute reduces the number of drivers able to transport voters, particularly elderly and minority voters, to the polls for an election.

But § 931(1)(f) does not severely burden the right to vote.  Surely if this was true Plaintiffs could identify at least one instance in which a voter was disenfranchised because he or she was unable to obtain transportation to the polls. *See e.g., Northeast Ohio Coal for the Homeless*, 837 F.3d at 631 (6th Cir. 2016). Notably, as a result of the passage of Proposal 3 in 2018, all qualified electors have "[t]he right, once registered, to vote an absent voter ballot without giving a reason[.]"  Mich. Const. 1963, art. 4, § 1(g).  Once registered, all voters can vote an AV ballot at all future elections.  And the process for obtaining an AV ballot is simple, as discussed above.  Voters who do not have or cannot obtain transportation to an election can avail themselves of the AV ballot process.

And if a voter cannot vote an AV ballot for some reason, he or she can still receive free transportation from family, friends, or volunteers of organizations such as churches, labor organizations, and party organizations, or numerous other

36

organizations or entities, including Plaintiffs.  Indeed, this case is principally about

transporting physically *able* voters to the polls.  Under the plain language of §

931(1)(f), Plaintiffs may provide these voters with free rides to an election or it

may assist voters in obtaining free rides to an election.  Moreover, Plaintiffs can

incentivize volunteer drivers by offering to cover their expenses, such as the cost

of gas.  Ultimately, any secondary burden on voters, who are not the target of §

931(1)(f), is minimal.

Balanced against these minimal burdens is the State's interest in preserving

the integrity of its elections.  *See* Mich. Const. 1963, art. 2, §4(2); *Anderson,* 460

U.S. at 788, n. 9.  As is plain from the original language of § 931(1)(f), and is true

today, the purpose of the prohibition is to protect voters against undue influence.

Or more specifically, it is to prevent "quid pro quo" arrangements that may occur

when money is exchanged and voters might perceive that they are being offered

something of value in exchange for a vote in favor of the candidates or proposals

supported by the individual or organization who hired the transportation.  This is

an important, if not compelling, State interest and Plaintiffs have not sufficiently

alleged that the State's interest does not outweigh the minimal burden on voting

rights. *See Burson v Freeman*, 504 U.S. 191, 199 (1992) (citing *Eu v. San*

*Francisco County Democratic Cen Committee*, 489 U.S. at 228, 229 (1989)

(explaining that a State has a compelling interest in protecting voters from undue

influence); *Sheldon v. Grimes*¸18 F. Supp. 3d 854 (ED Ky., 2014) (state's interest in protecting absentee voters from undue influence weighed against granting injunction).  Plaintiffs thus fails to state a claim in Count VII as to the unconstitutionality of § 931(1(f).

### 4.    The statute is not preempted.

Plaintiffs alleges that the statute is preempted by 11 C.F.R. § 114.4 and that Attorney General Nessel should be enjoined from enforcing it with respect to federal elections. (R. 17, Am. Compl., PgID 126, ¶¶ 94-97).  Plaintiffs allege the statute is expressly preempted or preempted because it conflicts with federal law. *Id*., PgID 126, ¶ 97.

Federal law may preempt state law either expressly or impliedly. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–53 (1982). Express preemption exists where a federal statute or regulation contains explicit language indicating that a specific type of state law is preempted. *Id.* at 153.  *See also State Farm Bank v. Reardon*, 539 F.3d 336, 341–42 (6th Cir. 2008).  And as noted above, conflicts preemption exists "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade*, 505 U.S. at 98.

But here the federal regulation does not expressly prohibit § 931(1)(f), and

there is no conflict between 11 C.F.R. § 114.4 and § 931(1)(f), and therefore, no

preemption.

> 11 C.F.R. § 114.4(d)(1) provides:
>
> Voter registration and get-out-the-vote drives permitted.  A
> corporation or labor organization may support or conduct voter
> registration and get-out-the-vote drives that are aimed at employees
> outside its restricted class and the general public.  Voter registration
> and get-out-the-vote drives *include providing transportation* to the
> polls or to the place of registration.  [Emphasis added.]

The federal statute does not define the word provid[ing], but the American

Heritage Dictionary defines it as 1. To furnish; supply.  2. To make ready; prepare.

3. To make available; afford.  *American Heritage Dictionary* (2nd Ed, 1982).

Even as to state elections where there is a federal candidate on the ballot, §

931(1)(f) does not conflict with 11 C.F.R. § 114.4.  The federal provision allows

Plaintiffs to provide transportation to the polls.  Consonant with that, the state

provision allows Plaintiffs to themselves provide transportation to the polls.  They

can utilize its employees or rally volunteers.  They simply cannot "hire" or pay a

person or entity to transport voters to the polls, unless the voters are physically

unable to walk to the polls.  Plaintiffs argue that in most instances, organizations

will "hire individuals to drive."  (R. 17, Am. Compl, PgID 107, ¶ 47.)  But the

federal statute does not guarantee Plaintiffs the right to "hire" or pay a person or

entity to transport voters, only the opportunity to "provide" transportation.  And

because the challenged state statute allows Plaintiffs to "provide" transportation to the polls, there is no conflict preemption. Plaintiffs have failed to state a claim as to Count VIII.

> **D.  The Court lacks jurisdiction to issue a declaratory judgment.**

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'  U.S. Const. art. III, § 2. The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *National Rifle Assoc. of America v. Magaw,* 132 F.3d 272, 279 (6th Cir.1997).  "In an attempt to give meaning to Article III's 'case or controversy' requirement, the courts have developed a series of principles termed 'justiciability doctrines.' "  *Id.* Those doctrines include both standing and ripeness. 5 "Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief." *Id.*

 Plaintiffs bring this suit under the Declaratory Judgment Act, "which provides the mechanism for seeking pre-enforcement review of a statute." *Id.* Declaratory judgments are typically sought before a completed "injury-in-fact" has occurred but must still be limited to the resolution of an "actual controversy."  *Id.* When requesting declaratory relief, a plaintiff "must show actual present harm or a significant probability of future harm in order to demonstrate the need for pre-

40

enforcement review." *Id.* "To determine whether a plaintiff has standing to adjudicate an 'actual controversy,' requisite for relief under the Declaratory Judgment Act, one must ask whether the parties have 'adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' even though the injury-in-fact has not yet been completed." *Id.* at 280. "A case is ripe for pre-enforcement review under the Declaratory Judgment Act only if the probability of the future event occurring is substantial and of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Id.* at 284.

Here, as discussed above in the context of standing, Plaintiffs have not sufficiently alleged that a prosecution by the Attorney General, or any local prosecutor for that matter, is imminent or likely to come to pass under § 931(1)(f) or § 759(3)(8). *See United Steelworkers of America, Local 2116 v. Cyclops Corp.,* 860 F.2d 189, 194 (6th Cir.1988) (articulating factors to consider regarding ripeness). Nor is the factual record in this case sufficiently developed to permit a fair and complete hearing as to Plaintiffs' prospective claims as to these statutes. *Id.* And finally, no significant hardship will occur to Plaintiffs should this Court refuse to consider these prospective claims. *Id.*

For these reasons, Plaintiffs claims are not ripe for review and this Court should dismiss the amended complaint.

41

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, Plaintiffs each lack standing to raise the claims alleged in the amended complaint.  Alternatively, the amended complaint fails to state a claim upon which relief may be granted.  For either reason, the amended complaint should be dismissed in its entirety.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439

Dated:  February 10, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2020, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  meingasth@michigan.gov
P55439