UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA, RISE INC., and
THE DETROIT/DOWNRIVER
CHAPTER OF THE A. PHILIP
RANDOLPH INSTITUTE,

           Plaintiffs,                Case No. 19-13341

v.                              HONORABLE STEPHANIE D. DAVIS
                              MAGISTRATE R. STEVEN WALEN

DANA NESSEL, in her
official capacity as Attorney General
of the State of Michigan,

           Defendants

and

THE MICHIGAN SENATE, THE
MICHIGAN HOUSE OF REPRESENTATIVES,
THE MICHIGAN REPUBLICAN PARTY and THE
REPUBLICAN NATIONAL COMMITTEE,

           Intervening-Defendants.

_____/

## THE MICHIGAN SENATE AND THE MICHIGAN HOUSE OF REPRESENTATIVES' EMERGENCY MOTION FOR A STAY PENDING APPEAL

### DECISION REQUESTED BY OCTOBER 2, 2020

On September 17, 2020, the Court granted in part Plaintiffs' motion for

preliminary injunction and enjoined the State of Michigan from enforcing Mich.

Comp. Laws § 168.931(1)(f)—the Paid Transportation Ban—which protects the

integrity of Michigan's elections by prohibiting anyone from paying for another person's transportation to the polls. ECF No. 79, PageID. 1624. On September 24, 2020, the Michigan Senate and Michigan House of Representatives (the "Legislature") filed a notice of appeal of this order. ECF No. 80.

For the reasons explained in the accompanying brief, the Court should stay its injunction order pending appeal. Counsel for the Legislature contacted counsel for Plaintiffs to explain the nature of this motion and its legal basis, and to request concurrence. E.D. Mich. LR 7.1(a).1. Plaintiffs' counsel did not concur. In light of the impending election, emergency relief on an expedited basis is appropriate.

Respectfully submitted,

BUSH SEYFERTH PLLC
*Attorneys for the Michigan Senate and the Michigan House of Representatives*

By: /s/ Patrick G. Seyferth
Patrick G. Seyferth (P47475)
Michael K. Steinberger (P76702)
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
Dated:  September 25, 2020          steinberger@bsplaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA, RISE INC., and
THE DETROIT/DOWNRIVER
CHAPTER OF THE A. PHILIP
RANDOLPH INSTITUTE,

        Plaintiffs,                Case No. 19-13341

v.                          HONORABLE STEPHANIE D. DAVIS
                          MAGISTRATE R. STEVEN WALEN

DANA NESSEL, in her
official capacity as Attorney General
of the State of Michigan,

        Defendants

and

THE MICHIGAN SENATE, THE
MICHIGAN HOUSE OF REPRESENTATIVES,
THE MICHIGAN REPUBLICAN PARTY and THE
REPUBLICAN NATIONAL COMMITTEE,

        Intervening-Defendants.

                              /

**BRIEF IN SUPPORT OF
THE MICHIGAN SENATE AND THE MICHIGAN HOUSE OF
REPRESENTATIVES' EMERGENCY MOTION FOR A
STAY PENDING APPEAL**

**DECISION REQUESTED BY OCTOBER 2, 2020**

# TABLE OF CONTENTS

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ii

CONCISE STATEMENT OF ISSUES PRESENTED ........................... iii

TABLE OF AUTHORITIES ................................................. iv

I.  INTRODUCTION ...............................................................1

II.  STATEMENT OF FACTS ...................................................2

    A.  Relevant Michigan Election Law ......................................2

    1.  Michigan's Constitution compels the Legislature "to preserve the purity of elections," "to guard against abuses of the elective franchise." ...........................................................................2

    2.  Mich. Comp. Laws § 168.931 – Michigan's Prohibition of Payment for Transportation to Elections. ..........................................3

    B.  Procedural Background ...................................................4

    C.  The September 17 ruling ..................................................6

III.  ARGUMENT ....................................................................9

    A.  Legal Standard for a Stay Pending Appeal ...........................9

    B.  Plaintiffs failed to show a strong likelihood of success on the merits. ...............................................................................11

        1.  Preemption is a heavy burden. .................................11

        2.  Section 931(1)(f) is harmonious with FECA's regulations because the paid transportation ban is neither an "expenditure" or a "contribution." ...............................................12

        3.  Section 931(1)(f) is covered by FECA's carve-outs for laws intended to protect election integrity. ......................14

        4.  FECA has never been interpreted as broadly as Plaintiffs advanced here. ...................................................19

    C.  Plaintiffs cannot show any harm, much less irreparable harm, in the absence of an injunction. ...................................................20

    D.  Staying the Injunction Promotes the Public Interest. ..........22

IV.  CONCLUSION ................................................................23

i

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Dewald v. Wriggelsworth,* 748 F.3d 295 (6th Cir. 2014).

*In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71,* 740 N.W.2d 444 (Mich. 2007)

*Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1281 (5th Cir.1994)

*SEIU Local 1 v. Husted*, 698 F.3d 341 (6th Cir. 2012)

*Weber v. Heaney*, 793 F. Supp. 1438 (D. Minn. 1992)

*Weber v. Heaney*, 995 F.2d 872 (8th Cir. 1993)

*Wreal, LLC v. Amazon.com, Inc*., 840 F.3d 1244, 1247–48 (11th Cir. 2016).

**Constitutional Provisions and Statutes**

Mich. Const. 1963, art 4, §§ 1, 2

Mich. Comp. Laws § 168.931

11 C.F.R. § 108.7

Fed. R. Civ. P. 62(C)

## CONCISE STATEMENT OF ISSUES PRESENTED

Should this Court stay its preliminary junction pending appeal where the Plaintiffs are unlikely to succeed on the merits of their claim, and the balance of harms cuts against an injunction?

> The Legislature answers "Yes."
>
> Plaintiffs answer "No."
>
> Attorney General Nessel likely answers "Yes."
>
> The Michigan Republican Party and National Republican Party likely answer "Yes."
>
> This Court should answer "Yes."

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allan v. Penn. Higher Educ. Assistance Agency*,
  968 F.3d 567 (6th Cir. 2020).................................................................................16

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001)............................................................................2, 10

*Bunning v. Com. of Ky.*,
  42 F.3d 1008 (6th Cir.1994)................................................................................19

*California v. ARC Am. Corp.*,
  490 U.S. 93 (1989)...............................................................................................12

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001).............................................................................................18

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985).................................................................................21

*Dewald v. Wriggelsworth*,
  748 F.3d 295 (6th Cir. 2014)......................................................................... 19, 20

*Duncan v. Walker*,
  533 U.S. 167 (2001).............................................................................................16

*Fulani* ...................................................................................................................21

*Gonzales v. Nat'l Bd. of Med. Exam'rs*,
  225 F.3d 620 (6th Cir. 2000)................................................................................21

*Hanson Trust PLC v. ML SCM Acquisition Inc.*,
  781 F.2d 264 (2d Cir. 1986)..............................................................................2, 10

*Huron Valley Pub. Co. v. Booth Newspapers, Inc.*,
  336 F. Supp. 659 (E.D. Mich. 1972).....................................................................10

*In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*,
  740 N.W.2d 444 (Mich. 2007)...............................................................................1

*Kalamazoo Cty. Convention & Visitors Bureau, Inc. v. Sw. Michigan First Corp.*,
  No. 1:17-CV-303, 2017 WL 8640798 (W.D. Mich., Nov. 28, 2017) ..................21

*Karl Rove & Co. v. Thornburgh*,
  39 F.3d 1273 (5th Cir.1994).................................................................................19

iv

*Lair v. Bullock*,
   697 F.3d 1200 (9th Cir. 2012) .................................................................................22

*Maryland v. King*,
   567 U.S. 1301 (2012) .............................................................................................22

*Maryland v. Louisiana*,
   451 U.S. 725 (1981) ...............................................................................................11

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
   945 F.2d 150 (6th Cir. 1991) .................................................................................10

*Ne. Ohio Coal. for the Homeless v. Blackwell*,
   467 F3d 999 (6th Cir. 2006) ..................................................................................22

*North Carolina v. League of Women Voters of N Carolina*,
   574 U.S. 927 (2014) ...............................................................................................22

*Rathmann Group v. Tanenbaum*,
   889 F.2d 787 (8th Cir. 1989) .................................................................................10

*SEIU Local 1 v. Husted*,
   698 F.3d 341 (6th Cir. 2012) ........................................................................ 10, 22

*Siegel v. LePore*,
   234 F.3d 1163 (11th Cir. 2000) .............................................................................20

*Stern v. General Elec. Co.*,
   924 F.2d 472 (2d Cir. 1991) ..................................................................................19

*Teper v. Miller*,
   82 F.3d 989 (11th Cir. 1996) ..............................................................................6, 19

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
   60 F.3d 27 (2nd Cir. 1995) ...................................................................................10

*Weber v. Heaney*,
   793 F. Supp. 1438 (D. Minn. 1992),
   aff'd, 995 F.2d 872 (8th Cir. 1993) ................................................. 11, 12, 13, 14

*Williams v. Rhodes*,
   393 U.S. 23 (1968) .................................................................................................22

*Winter v. Nat'l Res. Def. Council*,
   555 U.S. 7 (2008) ...................................................................................................20

*Wreal, LLC v. Amazon.com, Inc.*,
   840 F.3d 1244 (11th Cir. 2016) ....................................................................... 20, 21

## Statutes

1895 P.A. 135 ........................................................................... passim

Mich. Comp. Laws § 168.759 .................................................................9

Mich. Comp. Laws § 168.931(1)(a),(d) ..............................................1, 3

Mich. Comp. Laws § 168.931(1)(f) ................................................. passim

Mich. Comp. Laws § 168.931(1)(k) .......................................................1

Mich. Comp. Laws § 931(1)(e) ..............................................................3

Mich. Comp. Laws §§ 168.759(4), (5), (8) ...........................................4

Voting Rights Act of 1965 § 208 ........................................................4, 5

## Constitutional Provisions

Mich. Const. 1963, art 2, § 4 ................................................................3

Mich. Const. 1963, art 4, § 1 ................................................................3

*Roudebush v. Hartke*,
  405 U.S. 15 (1972) .......................................................................12

U.S. Const. art. I, § 4 .......................................................................12

## Rules

Fed. R. Civ. P. 62(C) ..........................................................................9

## Regulations

11 C.F.R. § 108.7(b)(3) ................................................................7, 12

11 C.F.R. § 108.7(c)(4) ..........................................................7, 14, 18

11 C.F.R. § 114.1(a)(1) .....................................................................13

11 C.F.R. § 114.4(c)(2) .......................................................................7

11 C.F.R. § 114.4(d)(1) ...........................................................7, 13, 14

## I.     INTRODUCTION

For over 160 years, the people of Michigan have "specifically commanded" the Michigan Legislature, through the Michigan Constitution, "to 'preserve the purity of elections' and 'to guard against abuses of the elective franchise.'" *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 740 N.W.2d 444 (Mich. 2007); *see* Mich. Const. 1963, art 2, § 4.  To meet that constitutional imperative, the Legislature has routinely enacted laws that protect Michigan's elections from the specters of fraud and undue influence, preserving the faith of Michigan voters in their election process.  These laws include protections against quid pro quos by, for example, making it a misdemeanor to promise or lend something of value in exchange for a vote or to threaten someone's employment unless they vote for a particular candidate.  Mich. Comp. Laws § 168.931(1)(a),(d).  Other laws protect against undue influence on voters by, for example, barring anyone from soliciting votes within 100 feet of a polling place.  Mich. Comp. Laws § 168.931(1)(k).

Plaintiffs here challenge another ordinary law intended to prevent undue influence and other election fraud.  That law—Mich. Comp. Laws § 168.931(1)(f)— protects the integrity of Michigan's elections by making it a misdemeanor to hire a motor vehicle for the purpose of bringing voters to an election (other than those physically unable to walk).  This statute has been on the books in functionally the

same form since 1895, when it prohibited hiring *carriages* to transport voters. *See* 1895 P.A. 135. Even the current iteration has been around for almost 40 years.

Plaintiffs filed this lawsuit in the Fall of 2019—the first lawsuit in over 100 years to challenge the paid transportation ban. They waited for months—for no obvious reason—before requesting the extraordinary remedy of preliminary injunctive relief on the eve of a major national election. Now, rather than preserve a century's worth of status quo—including for two 2020 primary elections during the pendency of this case—this Court has employed "one of the most drastic tools in the arsenal of judicial remedies" to defeat the Legislature's intent only weeks before the November Election. *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). Because electoral integrity is most critical at times like these, the Legislature has appealed that order. While that appeal is pending, the Legislature requests that this Court preserve the status quo by staying its injunction.

## II.   STATEMENT OF FACTS

### A.   Relevant Michigan Election Law

#### 1.   Michigan's Constitution compels the Legislature "to preserve the purity of elections," "to guard against abuses of the elective franchise."

Though Plaintiffs focus their attention on two narrow slices of the Michigan Election Code, an analysis of those sections requires a broader understanding of the Michigan Constitution's relevant provisions. The Michigan Constitution grants the

Legislature the "legislative power of the State." Mich. Const. 1963, art 4, § 1. It also provides that it is exclusively the Legislature's role "to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting." Mich. Const. 1963, art 2, § 4. To carry out its constitutional duty, the Michigan Legislature has enacted statutes to protect the integrity of Michigan's elections, including those at issue here.

### 2.  Mich. Comp. Laws § 168.931 – Michigan's Prohibition of Payment for Transportation to Elections.

Plaintiffs also challenge one specific provision of Section 931 of the Michigan Election Law, which consists of various protections against undue influence and corruption.  For example, Section 931(1)(a) makes it a misdemeanor to promise or lend something of valuable consideration in exchange for a vote; Section 931(1)(d) makes it a misdemeanor to threaten someone's employment unless they vote for a particular candidate; and Section 931(1)(e) prohibits religious leaders from threatening religious penalties to influence votes.  Plaintiffs do not challenge any of these protections.  The only section Plaintiffs take issue with is Section 931(1)(f), which makes it a misdemeanor to pay for a voter's transportation to an election unless that voter is unable to walk:

(1)    A person who violates 1 or more of the following subdivisions is guilty of a misdemeanor:

* * *

(f)    A person shall not hire a motor vehicle or other conveyance or cause the same to be done, for conveying voters, other than voters physically unable to walk, to an election.

Mich. Comp. Laws § 168.931(1)(f). As the Court noted in its order, Order, p. 11, PageID.1581, this prohibition has existed in functionally the same form since 1895, when it first forbade paid transportation by carriage. See 1895 P.A. 135. Until this case, Mich. Comp. Laws § 168.931(1)(f)'s text had gone unchallenged for 125 years.

## B.    Procedural Background

Plaintiff Priorities USA—a voter-advocacy organization—filed this case in November 2019. ECF No. 1. Defendant filed a motion to dismiss, ECF No. 10, so Plaintiff filed an Amended Complaint in January 2020, adding Plaintiffs Rise, Inc., and the Detroit/Downriver Chapter of the A. Philip Randolph Institute, ECF No. 17. The Amended Complaint asserts eight counts: Count I, Mich. Comp. Laws §§ 168.759(4), (5), (8), are unconstitutionally vague and overbroad; Count II, §§ 168.759(4), (5), (8), violate the freedom of speech under U.S. Const. amends. I, XIV; Count III, §§ 168.759(4), (5), (8), unduly burden the right to vote; Count IV, §§ 168.759(4), (5), (8), are preempted by Section 208 of the Voting Rights Act of 1965 ; Count V, Mich. Comp. Laws § 168.931(1)(f) is unconstitutionally vague and overbroad; Count VI, § 168.931(1)(f) violates the freedom of speech under U.S.

4

Const. amends. I, XIV; Count VII, § 168.931(1)(f), unduly burdens the right to vote; and Count VIII, § 168.931(1)(f) is preempted by Section 208 of the Voting Rights Act of 1965.

In late January 2020, Plaintiffs filed a motion for preliminary injunction, seeking to enjoin the laws at issue. ECF. No. 22. At the same time, the case was transferred to the current judge, and the parties were briefing a motion to consolidate. ECF Nos. 20, 26. In early February, Defendant moved to dismiss the amended complaint, ECF. No. 27. And in mid-February, the Michigan Republican Party and the Republican National Committee (together, the "Republican Party") and the Michigan Senate and Michigan House of Representatives (together, the "Legislature") moved to intervene later. ECF Nos. 33, 39.

The parties finished briefing Plaintiff's motion for a preliminary injunction in early March. ECF. Nos. 30, 41. They finished briefing Defendant's motion to dismiss a week later. ECF Nos. 40, 44. The parties finished briefing the motions to intervene in late March. ECF Nos. 42–43, 46, 48–49.

The Court held a Zoom hearing in early May on the motions to intervene and motion to dismiss. ECF. No. 66. The Court granted in part the motion to dismiss, dismissing Counts III and VII, ECF No. 59; it fully granted the motions to intervene, ECF No. 60.

Now Defendants, the Republican Party and Legislature answered the amended complaint and responded to the still-pending motion for a preliminary injunction in June.  ECF Nos. 61–62, 68, 70.  The Court held a hearing on the motion for a preliminary injunction in mid-July, taking the motion under advisement.  ECF No. 78.  On September 17, the Court granted in part Plaintiffs' motion for a preliminary injunction.

### C.     The September 17 ruling

The Court granted in part Plaintiff's motion for preliminary injunction as to Mich. Comp. Laws § 168.931(1)(f), holding that § 168.931(1)(f) is preempted by the Federal Election Campaign Act ("FECA").  Order, p. 51, PageID.1621.  Under 2 U.S.C. § 453, FECA will "supersede and preempt any provisions of state law with request to election to Federal office."  *Id.* at 43, PageID.1613 (quoting § 453).  The procedure to decide preemption, the Court said, is to "juxtapose the state and federal laws, demonstrate their respective scopes, and evaluate the extent to which they are in tension."  *Id.* at 41, PageID.1611 (quoting *Teper v. Miller*, 82 F.3d 989 (11th Cir. 1996)).

The Court first established what the laws at issue say.  Section 168.931(1)(f), it said, is straightforward: "In a nutshell, no person (including a corporation) may pay wages or make any other payment to another to transport voters to the polls, unless the person so transported cannot walk."  *Id.* at 42, PageID.1612.

FECA is more complicated.  FECA-related regulations say that federal law supersedes state law concerning, among other things, "[l]imitation on contributions and expenditures regarding Federal candidates and political committees."  *Id.* at 44, PageID.1614 (quoting 11 C.F.R. § 108.7(b)(3)).  Federal law does not, however, supersede state laws governing, among other things, "false registration, voting fraud, theft of ballots, and similar offenses."  *Id.* (quoting 11 C.F.R. § 108.7(c)(4)).  Crucially, in the following two cases, corporate payments for voter-registration and get-out-the-vote drives are *not* considered contribution or expenditures under FECA.  *Id.*  First, if corporate get-out-the-vote and voter-registration communications do not expressly advocate for or against a candidate or political party.  *Id.* at 44–45, PageID.1614–.1615 (citing 11 C.F.R. § 114.4(c)(2)).  Second, if direct assistance in voter-registration or get-out-the-vote drives—including assistance "providing transportation to the polls," 11 C.F.R. § 114.4(d)(1)—is offered regardless of the assisted voter's political preference.  *Id.* at 45, PageID.1615.

In short, a corporation can either offer the kinds of get-out-the-vote and voter-registration drives just discussed, in which case its disbursed funds are not contribution or expenditures; or, alternatively, it could politically advocate, thereby triggering a host of other federal regulations.  *Id.* at 46, PageID.1616.  Either way, the Court said, "FECA regulations expressly permit corporations like plaintiffs to spend money on providing transportation to the polls as part of their get-out-the-vote

efforts." *Id.* This "conflicts" with § 168.931(1)(f), "which bars" nearly all spending on transportation to the polls. *Id.*

But this holding did not end the analysis; there were exceptions to consider— specifically whether § 168.931(1)(f) fit under FECA's exception for laws about regarding "false registration, voting fraud, theft of ballots, and similar offenses." *Id.* at 47, PageID.1617. The Court held that nothing in § 168.931(1)(f)'s plain language . . . suggests that its purpose is to prevent voter fraud or similar offenses." *Id.* at 48, PageID.1618. It contrasted § 168.931(1)(f) with other subsections that explicitly prohibit paying for votes. *Id.* It did not feel that paying for a voter's transportation could influence their vote more than "offering to transport them" in the corporation's own vehicle. *Id.* at 49, PageID.1619.

Finally, the Court disagreed with the Republican Party and the Legislature's argument that FECA's preemption scope should be narrowly construed—especially with state criminal statutes. *Id.* It held that such a construction should apply only to criminal statutes of general applicability. *Id.* When, on the other hand, the criminal statute at issue "regulated elections or campaign finance," the default is preemption. *Id.* at 50, PageID.1620. In the Court's view, § 168.931(1)(f) "falls in the latter category of cases where preemption by FECA is generally found." *Id.* at 51, PageID.1621. The Court therefore held that § 168.931(1)(f) is unlikely to be excepted from FECA's preemption rule.

The Legislature filed a Notice of Appeal on September 24 (ECF No. 80), and this motion followed.  The Republican Party intervenors have also filed a Notice of Appeal (ECF No. 81).

## III.   ARGUMENT

Fewer than 50 days from Election Day, this Court issued an injunction that thwarts the Legislature's intent by prohibiting the State of Michigan from enforcing a long-established law targeted at protecting Michigan's electoral integrity. At times like this, election safeguards that promote the public's faith in their elections are more important than ever. So, the Legislature is appealing this Court's decision to the Sixth Circuit. While that appeal is pending, this Court should stay its injunction, returning Michigan to the status quo that has existed for election after election—including two this year, while this case was pending—without incident.[1]

### A.   Legal Standard for a Stay Pending Appeal

Under Fed. R. Civ. P. 62(C), this Court has the power to stay an injunction pending appeal: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure

---

[1] This Court correctly determined that Plaintiffs are *not* entitled to an injunction of Mich. Comp. Laws § 168.759, properly preserving the status quo with respect to that statute.

the opposing party's rights." In deciding whether to issue a stay pending appeal, courts consider the same factors analyzed when issuing injunctive relief:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* The moving party has the burden of demonstrating entitlement to a stay. *Id.*

It is worth reiterating that preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell*, 241 F.3d at 808 (quoting *Hanson Trust PLC*, 781 F.2d at 273). And the standard is even higher where—as here—the injunction *alters* rather than *maintains* the status quo. *See generally Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F. Supp. 659 (E.D. Mich. 1972); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27 (2nd Cir. 1995); *Rathmann Group v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989).

All the factors favor a stay of this Court's injunction pending the Legislature's appeal.

**B.   Plaintiffs failed to show a strong likelihood of success on the merits.**

Plaintiffs' challenge to Section 931(1)(f), which prohibits hiring a motor vehicle to transport a voter to the polls, will fail on the merits.  This Court granted Plaintiffs' requested injunction based on the narrow conclusion that Section 931(1)(f) was likely preempted by the Federal Election Campaign Act ("FECA") and its associated regulations. But Plaintiffs are unlikely to succeed on this claim for several reasons. First, Section 931(1)(f) is harmonious with FECA's regulations because it is neither a "contribution" nor an "expenditure" under FECA; rather it limits spending on a particular activity in an effort to promote the integrity of Michigan's elections. Second, *even if* Section 931(1)(f) were an "expenditure" limit on federal elections, it falls into FECA's carve-out for fraud-prevention state statutes. And finally, Plaintiffs are unlikely to succeed on their preemption claim because they rely on a novel interpretation of FECA that is broader than any Court has ever recognized.

**1.   Preemption is a heavy burden.**

"A party claiming that federal law preempts state law bears a heavy burden." *Weber v. Heaney*, 793 F. Supp. 1438, 1443 (D. Minn. 1992), aff'd, 995 F.2d 872 (8th Cir. 1993). Courts presume generally that Congress does not intend to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). There is also "a specific presumption against a finding of federal preemption in areas traditionally regulated

by the states." *Weber*, 793 F. Supp. at 1443 (citing *California v. ARC Am. Corp.*, 490 U.S. 93 (1989)). And especially in situations where the Constitution itself specifies a role for the states—which is the case with election regulation, see U.S. Const. art. I, § 4—the "burden is onerous" on the party trying to show preemption. *Id.* (citing *Roudebush v. Hartke*, 405 U.S. 15, 24–25 (1972)).

> **2.  Section 931(1)(f) is harmonious with FECA's regulations because the paid transportation ban is neither an "expenditure" or a "contribution."**

Plaintiffs argue that Section 931(1)(f) is expressly preempted by the Federal Election Campaign Act (FECA).  Not so.  FECA purports to expressly preempt any limitations on "contributions" and "expenditures" with respect to Federal Elections, but Section 931(1)(f) does not limit such contributions and expenditures.

The Federal Regulation at issue, 11 C.F.R. § 108.7(b)(3), provides in relevant part: "Federal law supersedes State law concerning the . . . [l]imitation on contributions and expenditures regarding Federal candidates and political committees." The federal regulations define the terms "contributions" and "expenditures:"

> The terms contribution and expenditure shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value (except a loan of money by a State bank, a federally chartered depository institution (including a national bank) or a depository institution whose deposits and accounts are insured by the Federal Deposit Insurance Corporation or the National Credit Union Administration, if such loan is made in accordance with 11 CFR 100.82(a) through (d)) to any candidate, political party or

committee, organization, or any other person in connection with any election to any of the offices referred to in 11 CFR 114.2 (a) or (b) as applicable.

11 C.F.R. § 114.1(a)(1). Finally, FECA also allows corporation and unions to "[p]rovide transportation to the polls." 11 C.F.R. § 114.4(d)(1).

This Court determined that Plaintiffs are likely to succeed on their preemption claim because Section 931(1)(f) is in tension with both FECA provisions, depending on whether the transportation was provided in connection with a specific candidate or part of a general get-out-the-vote effort. But it is not so clear cut.

With respect to the candidate-specific transportation, the paid transportation ban does not conflict with FECA. It requires a strenuous reading of the phrase "contributions and expenditures regarding Federal candidates and political committees" to conclude that it encompasses money that one party pays to a third party to drive voters to the polls. And, indeed, any money paid for transportation for the purpose of buying a person's vote would necessarily be swept up in anti-fraud prohibitions (which are expressly excluded from FECA). Plaintiffs rely on *Weber* to argue that FECA expressly preempts Section 931(1)(f), but this is misplaced. 995 F.2d at 874. *Weber* concerned a Minnesota law that limited total campaign expenditures. *Id.* The Minnesota law at issue was therefore covered by FECA's regulations.

Unlike the restriction in *Weber*, Section 931(1)(f) does *not* limit contributions

13

or expenditures with respect to federal candidates or political committees. Indeed, anyone remains free to contribute or spend as much money as they please on federal candidates or political committees, and those candidates and committees remain free to spend their money. Section 931(1)(f) only eliminates one thing from the menu of options that someone might spend their money on.  But because Section 931(1)(f) does not limit contributions or expenditures, it is not in conflict with FECA's regulations.

Nor does Section 931(1)(f) conflict with the federal regulations that allow corporations and unions to "[p]rovide transportation to the polls." 11 C.F.R. § 114.4(d)(1).  Under Section 931(1)(f), a corporation or union may, for example, provide such transportation, through their own employees or through volunteers. The law only prohibits these organizations from paying someone else to transport voters.  These provisions can be read in harmony with each other, so they must be. See *Weber*, 793 F. Supp. at 1443 ("[T]here is a general presumption that Congress did not intend to displace state law.")

### 3.    Section 931(1)(f) is covered by FECA's carve-outs for laws intended to protect election integrity.

Even under an interpretation of FECA's regulations that deemed Section 931(1)(f) a "contribution" or "expenditure" limit, it would be excepted from the preemption provision by the carve-outs contained in 11 C.F.R. § 108.7.  Specifically, the federal regulations expressly carved out from preemption, "[s]tate laws which

provide for the prohibition of false registration, voting fraud, theft of ballots, and similar offenses." 11 C.F.R. §108.7(c)(4). Section 931(1)(f) protects against undue influence to preserve the public's faith in elections. Thus, far from conflicting with FECA's purposes, it is fully consistent with them.

This Court said that it would have to read additional language into Section 931(1)(f) to have it fall within FECA's carve-out. ECF No. 79, Page ID. 1617. Not so.

*First*, contrary to the Court's reading, *id.* at PageID.1618, the voter-transportation piece of 1895 P.A. 135 has nothing to do with a quid pro quo relationship arising from the transportation. Consistent with nineteenth century statutory-drafting style, 1895 P.A. 135 is just one solid block of text, making grammatical analysis difficult. Here is the identical text, but with independent prohibitions separated into numbered subsections to make it clearer:

Any person

(1) who shall hire any carriage or other conveyance, or cause the same to be done, for conveying voters, other than voters physically unable to walk thereto, to any primary conducted hereunder,

(2) or who shall solicit any person to cast an unlawful vote at any primary,

(3) or who shall offer to any voter any money or reward of any kind, or shall treat any voter or furnish any entertainment for the purpose of securing such voter's vote, support, or attendance at such primary or convention, or shall cause the same to be done,

shall be deemed guilty of a misdemeanor.

This reading properly treats the voter-transportation prohibition as separate from the quid-pro-quo prohibition.  It is more persuasive for two reasons:

First, this division respects the text's natural cadence: the three subsections each begin with the statute's three "who shall" phrases. Statutory interpretation should respect intentional parallelism like this.

Second, this division avoids making the phrase "cause the same to be done," which appears in both clauses (1) and (3), redundant. Under the Court's reading, the "purpose of securing" clause modifies the transportation, unlawful-voter, and voter-payment prohibitions. But that clause ends with expanding language, "or shall cause the same to be done"—the identical language *already included* in the voter-transportation prohibition. Only by isolating each "cause the same to be done" clause within separate prohibitions is redundancy avoided.  *Allan v. Penn. Higher Educ. Assistance Agency*, 968 F.3d 567, 573 (6th Cir. 2020) ("It is our duty 'to give effect, if possible, to every clause and word of a statute . . . .  We are thus 'reluctan[t] to treat statutory terms as surplusage' in any setting.") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

*Second*, ultimately, whether 1895 P.A. 135's voter-transportation prohibition was intended to combat quid pro quo arrangements doesn't matter because, at the very least, it (and Section 931(1)(f)) combats a different sort of election fraud: undue

influence and intimidation. There are many ways to commit election fraud: e.g., including impersonating others at the polls, falsely registering voters, voting twice, sending fraudulent mail-in ballots, buying votes, intimidating voters, voting unlawfully (e.g., underage or noncitizen voting), altering vote counts, and forging signatures, among others. Rather than combat the quid pro quo variety of election fraud, 1895 P.A. 135's voter-transportation prohibition and Section 931(1)(f) combat voter intimidation and undue influence. Allowing corporations or other groups to pay for voters' transportation could easily offer unscrupulous or nefarious actors a vulnerable, captive audience in a private, enclosed space—just the elements needed for intimidation and undue influence. Section 931(1)(f) ensures that, at least in one forum, such intimidation masquerading as "assistance" can never happen.

*Third*, and relatedly, the evolution and placement of two of 1895 P.A. 135's prohibitions within this chapter of Michigan's Election Law supports the Legislature's reading. Since it arrived in 1895, the voter-transportation prohibition has substantively changed from carriages to motor vehicles and has moved within the statute to subsection (1)(f). And the primitive vote-buying prohibition has matured into detailed restrictions occupying subsections (1)(a), (1)(b), and others. That these prohibitions are still neighbors—appearing as fellow subsections in the same chapter—is strong evidence that they aim at the same objective: preventing voter and election fraud. After all, both combat voter fraud—Section 931(1)(f) by

17

protecting Michigan's elections from the shadow of undue influence or an implicit pressure to support a particular candidate or political party. In short, by reading this subsection *in pari materia* with the other subsections Section 931(1), one easily concludes that all of these provisions impose criminal penalties on actions that undercut the faith of Michigan's voters in their state's electoral integrity.

The FECA carve-out provision is open-ended and broad, and certainly includes Section 931(1)(f).  The list of carve-outs must be interpreted under the canon of *ejusdem generis*: FECA intends to exclude from preemption state offenses "*similar*" to false registrations, voter fraud, and ballot theft, i.e., offenses that undercut the faith of the electorate. 11 C.F.R. §108.7(c)(4). See *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) ("[Under] the maxim *ejusdem generis* . . . [w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.") (cleaned up). As a statute with the aim of electoral integrity, like laws preventing ballot theft and voter fraud, Section 931(1)(f) falls into FECA's carve-out, regardless whether it constitutes an "expenditure" or "contribution."

The Sixth Circuit recognized the importance of the *ejusdem generis* doctrine in determining which statutes were excluded from FECA's preemptive scope. The Sixth Circuit majority in *Dewald v. Wriggelsworth* held that common-law fraud

18

ancillary to an election (there, the use of a federal candidate's name to swindle potential contributors) was "similar" to the offenses specifically listed in 11 C.F.R. §108.7(c)(4) and was therefore excepted from preemption. 748 F.3d 295, 303 (6th Cir. 2014). Section 931(1)(f) is even more clearly within the FECA carve-out because, unlike common-law fraud, it is a targeted law aimed at preserving electoral integrity.

### 4.   FECA has never been interpreted as broadly as Plaintiffs advanced here.

FECA contains "an intricate federal statutory scheme governing campaign contributions and expenditures related to federal elections." *Teper*, 82 F.3d at 994. Its "primary purpose . . . is to regulate campaign contributions and expenditures in order to eliminate pernicious influence—actual or perceived—over candidates by those who contribute large sums" of money. *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1281 (5th Cir.1994). To this end, "[t]he FECA imposes limits and restrictions on contributions; provides for the formation and registration of political committees; and mandates reporting and disclosure of receipts and disbursements made by such committees." *Bunning v. Com. of Ky.*, 42 F.3d 1008, 1011 (6th Cir.1994) (referring to provisions in the FECA dealing with the organization, registration, and reporting requirements for political committees).

Plaintiffs and this Court's September 17 Order ignore the "strong presumption" against FECA preemption. *Karl Rove & Co. v. Thornburg*, 39 F.3d

1273, 1280 (5th Cir. 1994) (quoting *Stern v. General Elec. Co.*, 924 F.2d 472, 475 n. 3 (2d Cir. 1991). Indeed, "courts have given section 453 a narrow preemptive effect in light of its legislative history." *Id.*; *see Dewald*, 748 F.3d at 302 ("The Michigan Court of Appeals' observation that courts have given [§] 453 a narrow preemptive effect in light of its legislative history is a reasonable one."). This strong presumption *against* FECA preemption provides all the more reason to stay any injunctive relief—thereby preserving the status quo—pending the final resolution of this action.

### C. Plaintiffs cannot show any harm, much less irreparable harm, in the absence of an injunction.

Plaintiffs failed to show why maintaining the status quo—as it existed for a century's worth of elections—would result in imminent and irreparable injury. *See Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 22 (2008); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247–48 (11th Cir. 2016). "A showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*) (cleaned up). Thus, "even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.*

Plaintiffs' argument that they will suffer irreparable injury unless this Court enjoins the Paid Transportation Ban rings hollow. As explained in detail, this law has been on the books, with minor alterations only, for a century. Yet Plaintiffs slept

on their rights until 2019—giving rise to the Legislature's *laches* defense—and, even then, delayed several more months before finally moving for injunctive relief. The law is clear "that a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Wreal*, 840 F.3d at 1248; see also *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (holding that the plaintiff's "failure to seek injunctive relief for a period of seventeen months ... vitiates much of the force of [its] allegations of irreparable harm") (cleaned up); *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (holding that the plaintiffs' claim of "a serious injury become less credible by their having slept on their rights"); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action."). Plaintiffs have never provided an explanation for not moving for injunctive relief sooner.

Moreover, even if Plaintiffs could demonstrate a harm, their motion should still be denied. "[A] finding that there is simply no likelihood of success on the merits is usually fatal" to a request for injunctive relief. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

### D.       Staying the Injunction Promotes the Public Interest.

As this Court noted in its September 17 Order, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." ECF No. 79, PageID.1623, quoting *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J. in chambers). Thus, the public interest cuts against enjoining a Michigan law that has been on the books for decades.

Additionally, it is contrary to the public interest for courts to interfere in election laws in the run-up to an election. *See, e.g.*, *Williams v. Rhodes*, 393 U.S. 23, 34 (1968) (declining to order new ballots printed at a "late date" even where existing ballots unconstitutionally excluded a certain candidate); *North Carolina v. League of Women Voters of N Carolina*, 574 U.S. 927 (2014) (granting stay to prevent interference with election procedures roughly one month before election); *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012) (staying a district court's injunction "given the imminent nature of the election"); *Serv Emps Int'l Union Local 1 v. Husted*, 698 F.3d 341, 345 (6th Cir. 2012) ("As a general rule, last-minute injunctions changing election procedures are strongly disfavored."); *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F3d 999, 1012 (6th Cir. 2006) (vacating in part a temporary restraining order that "creates disorder in electoral processes").

We are less than 40 days from the November Election. And, as this Court noted, "any particular election only occurs once." ECF No. 79, Page.ID 1623. The

public will be harmed irreparably if the Legislature's intent is impeded at the last minute, through extraordinary injunctive relief. And with an appeal of the injunction pending to boot. The public interest weighs in favor of judicial restraint, maintaining a century's worth of status quo.

## IV. CONCLUSION

The Legislature respectfully requests that the Court grant its request for a stay of enforcement of the preliminary injunction pending the Legislature's appeal. The Legislature requests a decision on this motion by October 2, 2020 to allow for the parties to exercise their appellate rights sufficiently in advance of the November 3 Election.

Respectfully submitted,

BUSH SEYFERTH PLLC
*Attorneys for the Michigan Senate and the Michigan House of Representatives*

By: /s/ Patrick G. Seyferth
Patrick G. Seyferth (P47475)
Michael K. Steinberger (P76702)
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
Dated: September 25, 2020       steinberger@bsplaw.com

24

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF System, which will send notification to all ECF counsel of record.

By:  /s/ Patrick G. Seyferth
        Patrick G. Seyferth