UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA, *et al.*,　　　　　　　　　　Case No. 19-13341

　　　　Plaintiffs　　　　　　　　　　　　　Stephanie Dawkins Davis
v.　　　　　　　　　　　　　　　　　　　　United States District Judge

DANA NESSEL,

　　　　Defendant.
_____/

**<u>ORDER DENYING EMERGENCY MOTION TO STAY (ECF No. 84)</u>**

**I.　　PROCEDURAL HISTORY**

On September 17, 2020, the court preliminarily enjoined enforcement of the Voter Transportation Law, Mich. Comp. Laws § 168.931(1)(f), finding it preempted by the Federal Election Campaign Act and its accompanying regulations. (ECF No. 79). Defendant, Attorney General Dana Nessel has not filed an appeal. However, the Intervenors in this matter, the Michigan Senate and Michigan House of Representatives (the Legislature) and the Michigan Republican Party and the Republican National Committee (the Republican Party), both filed notices of appeal. (ECF Nos. 80, 81). On September 25, 2020, the Legislature filed an emergency motion to stay pending appeal, in which the Republican Party joined. (ECF Nos. 84, 86). Plaintiffs oppose the request for a stay and defendant

1

takes no position on the matter. (ECF Nos. 87, 88). The Intervenors filed replies in support of their request to say. (ECF Nos. 90, 91).

## II. STAYING THE INJUNCTION PENDING APPEAL

Under Federal Rule of Civil Procedure 62(c), this Court has the power to stay an injunction pending appeal: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." In deciding whether to issue a stay pending appeal, courts consider factors similar to those analyzed when issuing injunctive relief: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *SEIU Local 1 v. Husted*, 698 F.3d 341, 343 (6th Cir. 2012) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id*. The moving party has the burden of demonstrating entitlement to a stay. *Id*.

A. <u>Likelihood of Success on the Merits of the Appeal</u>

The Legislature contends that plaintiffs are unlikely to succeed on the merits of their claim that the Voter Transportation Law (alternately "VTL") is preempted by FECA. According to the Legislature, the Voter Transportation Law is consistent with FECA because the payment prohibited under the law is neither a "contribution" nor an "expenditure" under FECA. Rather, the VTL only limits spending on a particular activity in order to protect the integrity of Michigan's elections. More particularly, the Legislature contends that with respect to candidate-specific transportation, the VTL does not conflict with FECA because to find such a conflict, a strained reading of the phrase "contributions and expenditures regarding Federal candidates and political committees" is required. That is, according to the Legislature, it is a stretch to conclude that "contributions and expenditures regarding Federal candidates and political committees" encompasses money that one party pays to a third party to drive voters to the polls.

Contrary to the position of the Republican Party, the court did not fail to presume that the VTL was not preempted. The court began its preemption analysis with "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (ECF No. 79, PageID.1605-1606, quoting *Cmty. Refugee & Immigration Servs. v. Registrar, Ohio Bureau of Motor Vehicles*, 334 F.R.D. 493,

3

509 (S.D. Ohio 2020) (quoting *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 438 (2002) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).[1] FECA contains such an expression of Congress's "clear and manifest" directive regarding preemption. The court then carefully examined whether the VTL falls within the scope of the preemption provision, beginning with the plain language of the statute itself, followed by an analysis of whether the VTL was captured by the carved-out exceptions to preemption. According to the FECA statute, the Act and any rules prescribed under it "supersede and preempt any provision of State law with respect to election to Federal office." 52 U.S.C. § 30143. FECA regulations state that it expressly supersedes state law concerning limitations on "contributions and expenditures regarding Federal candidates and political committees." 11 C.F.R. § 108.7(b)(3). The Voter Transportation Law quite broadly "bars all spending on transportation to the polls, except for that made on behalf of those unable to walk to the polls." (ECF No. 79, PageID.1616). Yet, FECA regulations expressly permit "disbursements" to provide transportation to the polls for voters. (ECF No. 79, PageID.1614-1615 (citing 11 C.F.R. §§ 114.3(c)(4)(i), 114.4(d)(1)). A disbursement is the spending of money, which is

---

[1] While the court's preemption analysis begins with a discussion of plaintiffs' claim that the Absentee Ballot Law was preempted, it continues into the next section of the opinion regarding the Voter Transportation Law and refers back to the general principles governing such an analysis.

4

prohibited by the Voter Transportation Law. The FECA regulations limit the types of disbursements an organization may make to transport voters to the polls. These disbursements cannot be contributions or coordinated expenditures, within the meaning of applicable statutes. 11 C.F.R. § 114.4(a); 11 C.F.R. § 114.3(c)(4)(iii). But disbursements for the transportation of voters to the polls are considered expenditures, within the meaning of FECA, unless the organization meets several specific criteria while carrying out its voter transportation or other covered get-out-the-vote efforts. *See* 11 C.F.R. § 114.4(d)(2)(i)-(v) (outlining the steps necessary to prevent a disbursement from being considered an expenditure). In sum, FECA regulations permit organizations to make expenditures to transport voters to the polls, and FECA's preemption regulation mandates that federal law supersedes state law regarding such expenditures related to federal elections. 11 C.F.R. § 108.7(b)(3).[2]

The court is not convinced by the Legislature's argument that FECA only encompasses expenditures made to a federal candidate or political committee, but not funds paid to third parties to transport voters. Instead, the court finds plaintiffs' interpretation of the FECA regulations more persuasive. That is, 11

---

[2] To the extent that the Republican Party argues that the court incorrectly determined that FECA created a "right" to spend to transport voters to the polls, the court did not so hold. Rather, the court merely concluded that FECA regulations allowed such expenditures regarding federal elections.

C.F.R. § 108.7(b)(3) does not merely provide that FECA preempts state laws that cover contributions and expenditures *to* candidates and political committees, but rather, includes all limitations on contributions and expenditures "regarding" federal candidates and political committees. As plaintiffs point out, if the FEC meant to limit the preemptive scope of FECA to cover only contributions and expenditures made "to" candidates and political committees, it would have used that language, as it has done elsewhere in the regulatory scheme. *See e.g.*, 11 C.F.R. § 114.2(f)(1) (discussing the "making of contributions *to* candidates or political committees"); 11 C.F.R. § 110.14 (discussing "limitations on contributions *to* candidates and political committees"); 11 C.F.R. § 110.1 (discussing "[c]ontributions *to* candidates") (emphasis added). Further, as noted in the underlying decision, the term "expenditure" is expansively defined as "any direct or indirect payment . . . to any candidate, political party or committee, organization, *or any other person* in connection with any election." 11 C.F.R. § 114.1(a)(1) (emphasis supplied). The Legislature's interpretation limiting expenditures to federal candidates and political committees ignores much of the definition of "expenditure," which includes payments to "organizations, or any other person" in connection with a federal election.

The Republican Party also suggests that the court should have refrained from finding preemption because the ruling necessarily applies to state elections, and not

just federal elections. The court's ruling, inasmuch as it is premised on a federal statute governing federal elections, can only be applied to federal elections. Because the VTL does not limit itself to state elections, it is appropriate for the court to determine its applicability to federal elections.

Next, the Legislature argues that even if the Voter Transportation Law imposes an expenditure limit on federal elections, it falls into FECA's carve-out for statutes prohibiting "false registration, voting fraud, theft of ballots and similar offenses." 11 C.F.R. § 108.7(c)(4). The Legislature takes issue with the court's analysis that a fraud prevention purpose cannot be read into the statute, particularly where a prior version appears to have articulated such a purpose, while the present version does not. Rather, according to the Legislature, a proper parsing of the prior version of the statutory provision in which the prohibition on transporting voters appears, shows that the *quid pro quo* language is entirely separate from the voter transportation prohibition, rendering the two versions nearly identical. Even if the Legislature's reading of the earlier version of the law is correct, this does little to contradict the court's conclusion that there is no obvious anti-fraud purpose to the current Voter Transportation Law. The court's point was, construing the prior version of the statute generously, it at least contained express language revealing an anti-fraud purpose which arguably could be read to link back to the

transportation clause. Whereas, the current version contains no language directly expressing an anti-fraud purpose.

The Legislature contends, however, that rather than being designed to prevent a *quid pro quo*, the purpose of the Voter Transportation Law is to prevent undue influence and voter intimidation. The Legislature argues that the placement of this provision among other anti-fraud provisions supports its interpretation that the law has an anti-fraud purpose – even though surrounding provisions seeking to prevent undue influence and voter intimidation contain language addressing such scenarios. *See e.g.*, Mich. Comp. Laws § 168.931(a) (prohibiting a person from giving valuable consideration as an inducement to influence a person's vote); § 168.931(b) (prohibiting a person from contracting for valuable consideration to vote or to induce another to vote); § 168.931(d) (prohibiting a person from threatening to fire an employee in order to influence the employee's vote in an election). The Legislature relies on *Dewald v. Wriggelsworth*, which held that common-law fraud ancillary to an election (there, the use of a federal candidate's name to swindle potential contributors) was "similar" to the offenses specifically listed in 11 C.F.R. § 108.7(c)(4) and was therefore excepted from preemption. 748 F.3d 295, 303 (6th Cir. 2014). According to the Legislature, the Voter Transportation Law falls more clearly within the FECA carve-out because, unlike common-law fraud, it is a targeted law aimed at preserving electoral integrity. But,

8

as noted in the underlying ruling, the VTL is not listed among provisions exclusively targeting "false registration, voting fraud, theft of ballots and similar offenses." Indeed, it stands alongside what appear to be regulatory provisions governing attendance by inspectors at polling places, and any fraud-related provisions are explicit in their language.

To find an anti-fraud purpose in the Voter Transportation Law, the court would essentially have to conclude that spending on transporting voters to the polls, despite being expressly permitted under FECA regulations, is fundamentally an activity that promotes voter fraud, undue influence, or voter intimidation. Yet, this proposition is not evidenced by the plain language of the Voter Transportation Law, which does not suggest an anti-fraud purpose, and it is inconsistent with the FECA regulations, which expressly permit spending on transporting voters to the polls. Indeed, the FEC has expressly adopted a policy that federal law allows spending on transporting voters to the polls and the Voter Transportation Law stands in stark contrast to this policy. Nor is there any evidence in the record at this juncture of voter fraud, undue influence or voter intimidation related to paying for transportation to the polls. As plaintiffs point out, the act of facilitating a lawful voter's access to the polls so that he or she can cast a ballot increases participation in the democratic process and is common in many states and a central

part of advocacy organizing efforts. (ECF No. 22-8, PageID.239-241 (Nse Ufot Decl.)).

*Dewald v. Wrigglesworth* does not help the Legislature's cause. That case involved, amongst other things, the question of whether common law fraud was a similar offense to false registration, voting fraud, or ballot theft. The Sixth Circuit held that it was, because "the fraudulent acquisition of money by an individual purporting to represent a federally registered PAC" was a "similar offense" to "voting fraud." *Dewald v. Wriggelsworth*, 748 F.3d 295, 302 (6th Cir. 2014). Here, the question is whether spending to transport voters to the polls, which, according to plaintiffs, is legal in 49 states, is a "similar offense" to false registration, voting fraud, or ballot theft. The court concludes that such a finding requires an unduly strained interpretation of the FECA regulation. Accordingly, the court finds no basis to revisit its earlier determination that the Voter Transportation Law is likely preempted by FECA and its accompanying regulations. This factor weighs against a stay of the preliminary injunction pending appeal.

  B. <u>Irreparable Harm to the Moving Party</u>

In evaluating the harm that will occur depending on whether the stay is granted, the Sixth Circuit generally examines three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the

10

proof provided. *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)). Here, the Legislature failed to address this issue, instead revisiting plaintiffs' allegations of irreparable harm as it relates to the underlying preliminary injunction instead of addressing the irreparable harm that they, as movants, will face if a stay is not granted. (*See* ECF No. 84, PageID.1661-1662). The Republican Party argues that the State and the Republican Party will be irreparably harmed absent a stay, yet the bulk of its argument focuses on harm to the State. The Republican Party does not represent the interests of the State, however. The only harm that the Republican Party identifies to itself is harm to its competitive interests. But the effect of the preliminary injunction affects the Republican Party no differently than its competitors. Presumably, other political parties are making the same calculations and preparations as it relates to the VTL as the Republican Party. The Republican Party has not offered any proofs, as required, in support of its claim of competitive harm, and in light of the fact that all political parties are affected in the same manner, the court finds this alleged injury insubstantial. Accordingly, this factor does not weigh in favor of the issuance of a stay.

### C. Harm to Others and the Public Interest

The last two factors the court must consider when evaluating whether to grant the stay pending appeal are: (1) the prospect that others will be harmed if the court grants the stay; and (2) the public interest in granting the stay. Plaintiffs contend that they and voters will suffer irreparable harm if the stay is granted. Plaintiffs proffer evidence that, after the issuance of the preliminary injunction, plaintiff Rise began preparations to transport Michigan voters to the polls. (ECF No. 88-2, Declaration of Maxwell Lubin in Support of Response at ¶¶ 10-11). If the injunction is stayed, Rise says it will need to divert monetary and staff resources to work with voters one-on-one to figure out those voters' individual transit needs and assist them with getting to the polls in a way that does not involve paid transportation. *Id.* at ¶¶ 12-15. Accordingly, plaintiffs argue that a stay would result in a significant diminution of their ability to participate in and assist others in fully participating in the democratic process. Plaintiffs further assert that because each election is a unique, non-repeatable occurrence, no amount of monetary damages can make plaintiffs whole if the Voter Transportation Law remains place for upcoming elections. As this court noted in the decision on the preliminary injunction, "[t]he November election is nearly upon us and any particular election only occurs once." (ECF No. 79, PageID.1623). The harm to plaintiffs weighs against granting the stay.

Moreover, Michigan voters will also likely be adversely affected if the injunction is stayed. Plaintiffs proffer evidence that if the court were to grant the motion to stay and the Voter Transportation Law were to remain in place, Uber would again be prevented from providing Michigan voters with free and discounted rides, and those voters who would have otherwise had the opportunity to receive free transportation to the polls provided by Rise will now need to find a different way to make it to the polls. (ECF No. 88-2, Lubin Decl. ¶ 12). It cannot be disputed that "[t]here is a strong public interest in allowing every registered voter to vote freely." *Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004). Denying the stay supports this public interest.

D. Applicability of *Purcell v. Gonzalez*

The Republican Party alleges that a stay is required by *Purcell v. Gonzalez*, 549 U.S. 1 (2006) because injunctions that can result in voter confusion should be avoided in close proximity to an election. The Supreme Court cautioned that "[c]ourt orders affecting elections, . . . can themselves result in voter confusion and consequent incentive to remain away from the polls," a risk that increases "[a]s an election draws closer." The Court in *Purcell* was concerned that last-minute changes to elections procedures may create a "consequent incentive to remain away from the polls." 549 U.S. at 5. While the Republican Party argues that the injunction will cause serious voter confusion regarding paid transportation to the

polls, it offers no evidence to support this assertion. Moreover, the Voter Transportation Law is not similar to the "election procedure" at issue in *Purcell*. There, the court enjoined the operation of a voter identification law just weeks before an election. In that circumstance, the Court of Appeals was required to weigh, in addition to usual considerations for the issuance of an injunction, considerations specific to election cases, especially conflicting orders, that can result in voter confusion. Here, whether a voter may take advantage of a free ride to the polls does not appear to be an "election procedure" akin to requiring voters to provide proof of citizenship. Moreover, unlike in *Purcell*, there is no danger of conflicting orders.

## III. STANDING

In the response to the motion to stay, plaintiffs challenge whether the Intervenors even have standing to pursue an appeal of the preliminary injunction order, absent the Attorney General pursuing such an appeal. As recently held by the Supreme Court, "to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). While the parties have briefed the issue of appellate standing, because the court concludes that the Intervenors have not established the that they are entitled to a stay of the

preliminary injunction pending appeal, the court declines to address the issue at this juncture.

For the reasons set forth above, the Court **DENIES** the Intervenors' Emergency Motion to Stay Pending Appeal.

**IT IS SO ORDERED**.

Date: October 6, 2020                             s/Stephanie Dawkins Davis
                                                  Stephanie Dawkins Davis
                                                  United States District Judge