# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
Deborah S. Hunt     POTTER STEWART U.S. COURTHOUSE     Tel. (513) 564-7000
Clerk     CINCINNATI, OHIO 45202-3988     www.ca6.uscourts.gov

Filed: July 20, 2021

Ms. Amanda Beane
Mr. Kevin J. Hamilton
Perkins Coie
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

Mr. Frank Anthony Dame
Bush, Seyferth
100 W. Big Beaver Road, Suite 400
Troy, MI 48084

Mr. Steven R. Eatherly
Butzel Long
150 W. Jefferson Avenue, Suite 100
Detroit, MI 48226

Mr. Marc Elias
Ms. Jyoti Jasrasaria
Perkins Coie
700 Thirteenth Street, N.W.
Suite 800
Washington, DC 20005

Ms. Sarah S. Prescott
Salvatore Prescott & Porter
105 E. Main Street
Northville, MI 48167

Mr. Joseph E. Richotte
Butzel Long
41000 Woodward Avenue
Stoneridge West Building
Bloomfield Hills, MI 48304

Mr. Patrick Gerard Seyferth
Bush, Seyferth
100 W. Big Beaver Road
Suite 400
Troy, MI 48084

Ms. Alexandra M. Walsh
Wilkinson Stekloff
2001 M Street, N.W.
10th Floor
Washington, DC 20036

Mr. Kurtis T. Wilder
Butzel Long
150 W. Jefferson Avenue
Suite 100
Detroit, MI 48226

Mr. Michael Williams
Bush Seyferth
151 S. Rose Street
Suite 707
Kalamazoo, MI 49007

              Re:  Case Nos. 20-1931/20-1940, *Priorities USA, et al v. Dana Nessel*
                  Originating Case No. : 4:19-cv-13341

Dear Counsel,

   The Court issued the enclosed Order today in these cases.

                                       Sincerely yours,

                                       s/Cathryn Lovely
                                       Opinions Deputy

cc: Ms. Kinikia D. Essix

Enclosure

NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0351n.06

Nos. 20-1931/1940

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| PRIORITIES USA; RISE, INC.; DETROIT/ DOWNRIVER CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE,<br><br>    *Plaintiffs-Appellees*,<br><br>v.<br><br>DANA NESSEL,<br><br>    *Defendant*,<br><br>MICHIGAN SENATE; MICHIGAN HOUSE OF REPRESENTATIVES; REPUBLICAN NATIONAL COMMITTEE; MICHIGAN REPUBLICAN PARTY,<br><br>    *Intervenors-Appellants*. | **FILED**<br>Jul 20, 2021<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN<br><br><u>O R D E R</u> |

BEFORE: BOGGS, COLE, and COOK, Circuit Judges.

    BOGGS, Circuit Judge. This dispute over a Michigan election statute is again before us. Michigan's legislature appealed (in lieu of the state's attorney general) the district court's preliminary injunction of that statute's enforcement. In October 2020, we granted the Michigan legislature's emergency motion for a stay of the injunction pending appeal. The case has since been consolidated with a separate appeal of the district court's injunction by the Republican National Committee and the Michigan Republican Party, and the parties have fully briefed the merits of the

Nos. 20-1931/1940, *Priorities USA v. Nessel*

preliminary injunction. For largely the same reasons as in our earlier order, we reverse the district court's grant of the preliminary injunction.

We omit a detailed statement of the facts and procedural history because they are essentially unchanged from October (with the obvious exception that the 2020 election is now behind us).

We may properly exercise jurisdiction here. As we decided before, the Michigan Legislature has standing to appeal the injunction because the state attorney general has not done so. *Priorities USA v. Nessel*, 978 F.3d 976, 981–82 (6th Cir. 2020). No change in law or fact undermines this decision,[1] so we are bound by our earlier, published order. 6 Cir. R. 32.1(b); *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (interpreting 6 Cir. R. 32.1(b)'s forerunner to mean that "published panel opinions are binding on all subsequent panels"); *see also Wallace v. FedEx Corp.*, 764 F.3d 571, 583–85 (6th Cir. 2014) (noting that, even in an *unpublished* order on a motion, a "clear error" is still entitled to deference and that "the proper course of action is to request panel rehearing or rehearing en banc," not to relitigate the motion before the merits panel).[2] Nor is the case moot—the injunction was not limited to the 2020 election.

---

[1] Indeed, two months after our previous order issued, the Michigan Supreme Court released an opinion regarding legislative standing on appeal. Although that opinion speaks to standing only in Michigan, its conclusion that the state legislature is aggrieved nevertheless supports our earlier holding that the legislature has appellate standing in federal court. *League of Women Voters of Mich. v. Sec'y of State*, 957 N.W.2d 731, 739–40 (Mich. 2020) ("[W]hen the Attorney General does not defend a statute against a constitutional challenge by private parties in court, the Legislature is aggrieved and, upon intervening, has standing to appeal.").

[2] The dissent suggests that 6 Cir. R. 32.1(b) does not apply to later decisions by the *same* panel. Dissenting Op. at 6. This presents an interpretive question: what does the phrase "later panels" in 6 Cir. R. 32.1(b) mean?

The best reading is that it means *any* panel of judges that makes a later decision, even one consisting of the same members. For one thing, look at the rule's language: "Published panel opinions are binding on later panels. A published opinion is overruled *only* by the court en banc." 6 Cir. R. 32.1(b) (emphasis added). So the dissent cannot be correct that a three-judge panel can overrule its own published decision: a three-judge panel is not the en banc court. Were we to come out

Nos. 20-1931/1940, *Priorities USA v. Nessel*

We need not consider whether the Republican National Committee and the Michigan Republican Party separately have standing on appeal. *See Diamond v. Charles*, 476 U.S. 54, 64 (1986) (recognizing that a party can ride "piggyback" on another party's standing).

The standard of review of the preliminary injunction is similar to the standard for the stay pending appeal we considered last time. We consider essentially the same four factors:

(1) whether the movant has a strong likelihood of success on the merits;
(2) whether the movant would suffer irreparable injury without the injunction;
(3) whether issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by the issuance of the injunction.

*Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019) (cleaned up) (quoting *Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013)). We review de novo the first factor and review the district court's balancing of all the factors for abuse of discretion. *Ibid.*

---

differently on, say, the standing question now, we would be overruling our own published decision, which we cannot do.

Our case law supports this interpretation. We have always given an opinion precedential force because it is earlier in time, never because of the makeup of the panel that issued it. Only intervening changes in law permit a three-judge panel to reconsider a previous published decision. *E.g.*, *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009) ("[W]e are without authority to overrule prior published decisions of our court absent an inconsistent decision of the Supreme Court or an en banc reversal."); *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) ("Without taking a case en banc, a 'panel cannot' reconsider a prior published case that interpreted state law, 'absent an indication by the [state] courts that they would have decided [the prior case] differently.' (quoting *Blaine Constr. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 350 (6th Cir. 1999)); *United States v. Conces*, 507 F.3d 1028, 1039 n.10 (6th Cir. 2007) ("[T]his panel nonetheless is bound to follow the prior published decisions of this court, without regard for whether they might be mistaken in their reading of the Supreme Court's decisions.").

And the dissent's interpretation does not make sense. Consider the following hypothetical. Suppose that a different three-judge panel decided the merits of this case. By relying on the "later panels" language, the dissent apparently concedes that the *different* three-judge panel would be bound by our published decision on the emergency motion. But because the *same* three judges sit on the panel, we are not so bound? Likewise, it would be anomalous if a different panel were bound by our published order two weeks after we had issued it but we were free to disregard it in the same matter a year later. The dissent gives no convincing reason for these distinctions.

- 3 -

Nos. 20-1931/1940, *Priorities USA v. Nessel*

We held last time that the legislature had made a strong showing that it was likely to prevail on the merits. *Priorities USA*, 978 F.3d at 985. Again, there has been no change in the underlying law or fact that undermines this outcome, so our earlier decision binds us. 6 Cir. R. 32.1(b).[3] And, as we have said before, "that's the most important part of the analysis." *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020).

We now consider the three remaining factors. The circumstances are largely the same as before, except that there is no longer an imminent general election. We previously held that "the harm to the voter-advocacy organizations" without an injunction "appears modest." *Priorities*

---

[3] Although we did not specifically discuss the voter-advocacy organizations' First Amendment argument in our October order, we did not—and still do not—find it likely to succeed. We "generally evaluate First Amendment challenges to state election regulations" using the *Anderson-Burdick* framework. *Schmitt v. LaRose*, 933 F.3d 628, 639 (6th Cir. 2019). Under that framework, "[l]aws imposing 'severe burdens on plaintiffs' rights' are subject to strict scrutiny, but 'lesser burdens . . . trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.'" *Ibid.* (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). Moreover, "[b]ecause plaintiffs have advanced a broad attack on the constitutionality of [the statute], 'seeking relief that would invalidate the statute in all its applications, they bear a heavy burden of persuasion.'" *Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016) (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 200 (2008)).

The appellees do not seem likely to shoulder that heavy burden. The Michigan statute is likely not a severe burden on their rights because it does not appear to result in "exclusion or virtual exclusion" from the ballot. *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016). The state's interest in preventing potential voter fraud is an important regulatory interest. *Crawford*, 553 U.S. at 196 ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."). And prohibiting paid vote-hauling is likely a reasonable, nondiscriminatory restriction justified by that interest. *See Ohio Democratic Party*, 834 F.3d at 631 (holding that Ohio's limitation of its early-voting period was at most "minimally burdensome on the right of some African-American voters"); *Crawford*, 553 U.S. at 198–99 (holding that the "inconvenience of making a trip to the [Bureau of Motor Vehicles], gathering the required documents, and posing for a photograph surely does not . . . even represent a significant increase over the usual burdens of voting," even though "a somewhat heavier burden may be placed on" the elderly, poor, or homeless). Compared to those examples, Michigan's law requiring get-out-the-vote organizers to get people to the polls other than by hired vehicle does not appear to pose an unconstitutional burden. "And even assuming that the burden may not be justified as to a few voters, that conclusion is by no means sufficient to" warrant invalidating the law altogether. *Crawford*, 553 U.S. at 199–200 (footnote omitted).

- 4 -

Nos. 20-1931/1940, *Priorities USA v. Nessel*

*USA*, 978 F.3d at 985. Without an impending election, that harm is even less—whatever amount of surprise befell the advocacy groups in the 2020 elections, they now are keenly aware of the voter-transportation law and can organize their future activities in compliance with it.

As for Michigan, the injunction would necessarily cause the state irreparable harm. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration in original) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). Although the potential for electoral fraud from vote-hauling is minimal until the next election (unlike the situation in *King*, in which there was also "ongoing and concrete harm to Maryland's law enforcement and public safety interests," *ibid.*), we still recognize an injury in the infringement of the state's sovereign interest in passing and enforcing its laws.

And we have also recognized that "the public interest lies in a correct application" of the law and "upon the will of the people of Michigan being effected in accordance with Michigan law." *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) (quoting *Congregation Lubavitch v. City of Cincinnati*, 923 F.2d 458, 460 (6th Cir. 1991)). Thus, the public interest necessarily weighs against enjoining a duly enacted statute, and our assessment that the appellants will likely prevail on the merits tips the public-interest factor further in their favor.

The district court erred in finding the appellees likely to prevail, and it abused its discretion by issuing an injunction even though all four factors counseled against doing so.

We reverse, and we remand for further proceedings consistent with our orders.

Nos. 20-1931/1940, *Priorities USA v. Nessel*

COLE, Circuit Judge, dissenting. In the lead-up to the 2020 election, Priorities USA and a group of nonprofits challenged Michigan's law banning paid transportation to the polls and moved for a preliminary injunction. The district court heard oral argument and spent two months crafting a decision after carefully reviewing FECA's text, relevant regulations, and history. Given the proximity to the election, the Michigan Attorney General declined to seek an emergency stay. But intervenors did, and five days after briefing, without hearing argument, we granted an emergency stay of the district court's injunction. Now, on appeal of the preliminary injunction, the majority finds that we are bound by the reasoning of our emergency order. Because we are in no way bound by our hastily crafted emergency stay order, and because the order was issued without standing (and in error), I respectfully dissent.

This case implicates two different, but interrelated concepts: law of the circuit and law of the case. The law-of-the-circuit doctrine ensures that like cases are treated alike. It prohibits one panel from overruling the published decision of another panel. *See* 6 Cir. R. 32.1(b) ("Published panel opinions are binding on *later panels*.") (emphasis added). When a panel is handling the same case, however, law of the case applies. The law-of-the-case doctrine stands for the proposition that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Patterson v. Haskins*, 470 F.3d 645, 660-61 (6th Cir. 2006).

We have repeatedly explained that the motions decisions are not binding on subsequent panels because of their interlocutory nature. *See Kraus v. Taylor*, 715 F.3d 589, 594 (6th Cir. 2013) ("While this court's interlocutory orders are rarely altered as a practical matter, they are nonetheless subject to revision.") (internal quotation marks omitted); *Wallace v. FedEx Corp.*, 764 F.3d 571, 583-85 (6th Cir. 2014). ("[M]otions panels are generally interlocutory in nature (and,

- 6 -

thus, not strictly binding upon subsequent panels)."). Those decisions, admittedly, came in the context of unpublished motions decisions, but the logic is the same. Because motions decisions are issued in the course of deciding a case (often tentatively) and are not final decisions, they are not binding on subsequent panels and may be reconsidered.

Consider the problem in the context of the present case. This panel issued an emergency stay order a few months back. A stay order predicts the final disposition of the case, but it does not resolve the case. Applying the law-of-the-circuit doctrine to require a published stay order to control the ultimate outcome of the case contradicts the very logic of a stay motion: to receive an initial, expedited review of the case *pending full resolution* of the appeal. If Rule 32.1(b) worked the way the majority suggests, there would never be any need for a merits determination after a panel decided an emergency stay motion. Indeed, panels would be precluded from reconsidering after full briefing, a more developed record, and oral argument.

And there are good reasons to give little deference to our original decision on the emergency stay motion. To start, our previous decision involved a different standard of review—one that was substantially less deferential to the district court. When evaluating the emergency stay motion, we considered the preliminary injunction factors de novo. *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 917 (6th Cir. 2018). At the current stage, we must consider instead whether the district court's balancing of the factors was an abuse of discretion. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019). There are also serious practical differences between emergency decisions and full merits considerations. With emergency motions, the panel does not benefit from oral argument and the briefing is expedited and limited. *See* Fed. R. App. P. 27(e); *compare also* Fed. R. App. P. 27(d)(2)(A) (limiting motions to 5,200 words), *with* Fed. R. App. P. 32(a)(7)(B) (limiting principal briefs to 13,000 words). Nor are we able to afford the issues the

Nos. 20-1931/1940, *Priorities USA v. Nessel*

same depth of consideration. In the present case, we faced an impending election and issued an emergency stay only five days after receiving briefing. Such a decision should not bind us in our consideration of the merits.

That is especially true because the original stay decision was issued without jurisdiction, and we still lack jurisdiction to consider this appeal. *See Amen v. City of Dearborn*, 718 F.2d 789, 794 (6th Cir. 1983) ("[L]aw of the case doctrine does not foreclose reconsideration of subject-matter jurisdiction."). The standing analysis in our emergency stay order (which the majority reflexively adopts here) directly contravenes both Sixth Circuit and Supreme Court precedent. In *Bethune-Hill*, in nearly identical circumstances, the Supreme Court concluded that an intervenor state Legislature lacked standing to represent the state's interests on appeal. *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019). We have likewise held that legislative intervenors cannot appeal on behalf of the state. *Tennessee ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 511–12 (6th Cir. 2019). Nothing supports the majority's novel theory of legislative standing.

Worse still, the majority's contention that the state Legislature has standing to defend laws when the Attorney General has abandoned its defense is only legally erroneous; it is also devoid of factual support. The Michigan Attorney General is still defending the voter transportation law. Her strategic decision not to move for temporary emergency relief does not amount to abdication of that duty. So the Legislature's "injury" amounts to nothing more than disagreement with the Attorney General's litigation strategy.

Because I would dismiss for lack of standing, I would not reach the merits. But I will briefly note that the majority's analysis of the preliminary injunction factors is incorrect for many of the same reasons that I detailed in my prior dissent. *See Priorities USA v. Nessel*, 978 F.3d 976,

- 8 -

Nos. 20-1931/1940, *Priorities USA v. Nessel*

985-90 (6th Cir. 2020). The majority's analysis is only more erroneous now as it should review the district court decision for an abuse of discretion, but instead chooses to follow the conclusions from its prior de novo review.

In sum, the majority decides for the first time that a panel considering an appeal's merits is bound by the holdings in its prior emergency stay order. Next, it holds that Legislatures have standing when their laws are temporarily enjoined. Courts have "never held that a judicial decision invalidating a state law as unconstitutional inflicts a discrete, cognizable injury on each organ of government that participated in the law's passage." *Bethune-Hill*, 139 S. Ct. at 1953. We should not be the first. I respectfully dissent.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk