UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PRIORITIES USA, et al. RISE, INC., and DETROIT/DOWNRIVER CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE,<br>    Plaintiffs,<br><br>v.<br><br>DANA NESSEL,<br>    Defendant,<br><br>and<br><br>MICHIGAN HOUSE OF REPRESENTATIVES, MICHIGAN SENATE, MICHIGAN REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br>    Intervenors–Defendants. | Civil No. 19-13341<br><br>STEPHANIE DAWKINS DAVIS<br>United States District Judge<br><br>R. STEVEN WHALEN<br>United States Magistrate Judge<br><br><br>**RULE 26(F) REPORT** |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the parties to this case, by and through their respective counsel, jointly submit this Rule 26(f) Report:

**I.    Rule 26(f) Conference**

The parties conferred on July 27, 2021. The following attorneys participated in the conference:

    <u>For Plaintiffs</u>
    Amanda J. Beane

Christopher J. Bryant
Jyoti Jasrasaria
Sarah S. Prescott

<u>For the Attorney General</u>
Erik A. Grill
Assistant Attorney General

<u>For the Legislature</u>
Patrick G. Seyferth
Frank A. Dame

<u>For the Republican Committees</u>
Joseph E. Richotte
Steven R. Eatherly

## II. Related Cases

This case is not related to any other cases.

## III. Jurisdiction and Venue

This action arises under the U.S. Constitution and laws of the United States. This Court has original subject-matter jurisdiction of the federal questions presented in this case pursuant to 28 U.S.C. §§ 1331 and 1343.

Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Defendant resides and/or conducts business in the Eastern District of Michigan.

## IV. Amendment of Pleadings and Addition of Parties

The Parties do not anticipate the need for any amendments to the pleadings or addition of parties at this time.

The Republican Committees and the Legislature reserve their right to respond if Plaintiffs amend their pleadings and to seek leave to amend their affirmative and other defenses if any additional defenses are discerned during discovery.

## V. Anticipated Motions

A. *Plaintiffs' position*. Plaintiffs anticipate filing a dispositive motion after discovery closes addressing their entitlement to relief on the following claims: the Absentee Ballot Organizing Ban violates the First and Fourteenth Amendments' guarantees of freedom of speech and association (Count II); the Absentee Ballot Organizing Ban is preempted by Section 208 of the Voting Rights Act of 1965, 52 U.S.C. § 10508 (Count IV); the Transportation Ban is invalid under the First and Fourteenth Amendments because of its vagueness and overbreadth (Count V); and the Transportation Ban violates the First and Fourteenth Amendments' guarantees of freedom of speech and association (Count VI). Plaintiffs will seek limited, targeted discovery regarding these claims as described further in Section VII.

As evidenced by both the briefing presented to that court and its opinion, the Sixth Circuit decision in *Priorities USA v. Nessel*, No. 20-1931, ___ Fed. App'x ___, 2021 WL 3044270 (6th Cir. July 20, 2021), only addressed Plaintiffs' claim that the Transportation Ban was preempted by the Federal Election Campaign Act (FECA) (Count VIII). Reserving all other rights, Plaintiffs do not intend to further pursue this claim in this Court. In addition, in light of this Court's decision on Plaintiffs' motion for a preliminary injunction, and again reserving all other rights, Plaintiffs do not intend to further pursue their claim for overbreadth and vagueness relating to the

3

Absentee Ballot Organizing Ban in this Court (Count I).

Given that the remaining claims are largely First Amendment claims which—as this Court has already determined—will likely be decided under the exacting scrutiny test, limited, targeted discovery is necessary in order for the Court to render a final decision. Recently, in *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373, 2386 (2021), the Supreme Court clarified that exacting scrutiny requires narrow tailoring between the state action being challenged and the government's asserted interest, and closely reviewed the factual evidence in the record to apply this test to California's donor disclosure regime. In doing so, it noted the lack of record evidence that the challenged regulation had in even a single instance advanced the state's purported interest in preventing fraud and the state's lack of rigorous enforcement of the challenged regulation prior to 2010. *Id.* at 2386-87; *see also Meyer v. Grant*, 486 U.S. 414, 426 (1988) (considering evidence proffered by state in support of government interest when applying exacting scrutiny to Colorado's ban on payments for circulators of initiative petitions).

B.  *Attorney General's position*. Defendant Attorney General Dana Nessel anticipates filing a motion for judgment on the pleadings shortly after the scheduling conference, based upon the Sixth Circuit's decision in this matter. Should any claims remain following that motion, Defendant Nessel anticipates that she would file a motion for summary judgment following the close of discovery.

C.  *Republican Committees' position*. The Republican Committees also plan to file a motion for judgment on the pleadings under Rule 12(c). Adjudication of Rule 12(c) motions before the parties embark on discovery would promote the

4

just, speedy, and inexpensive determination of this action. The Republican Committees also note that this will be their first opportunity to file a motion based on the pleadings. When the Court allowed them to intervene, ECF 60, PageID.1026–1027, Plaintiffs had already filed their motion for preliminary injunction, ECF 22, PageID.139. The Court ordered the Republican Committees to respond to the motion within 14 days, ECF 60, PageID.1027. Thereafter, the Court enjoined the paid driver ban, *Priorities USA* v. *Nessel*, 487 F. Supp. 3d 599, 626 (ED Mich. 2020), after which the appellate process commenced.

    D.    *Michigan Legislature's position.* The Sixth Circuit has now held "that the legislature had made a strong showing that it was likely to prevail on the merits."[1] Given this holding, the Michigan Senate and Michigan House of Representatives ("the Legislature") plan to file a motion for judgment on the pleadings under Rule 12(c) seeking an award of judgment as to all remaining claims. The Legislature anticipates filing this motion close to the Rule 16 Conference on September 2, 2021.

## VI.    Changes to Disclosure Requirements Under Rule 26(a)

    A.    *Plaintiffs' position.* Consistent with their position that the parties should proceed immediately to limited discovery before dispositive motions, Plaintiffs do not request any changes to Rule 26(a)'s disclosure requirements and made initial disclosures on August 11, 2021, as prescribed by Rule 26(a)(1)(C). Defendant and Intervenors have not yet served their initial disclosures, based on the legal arguments they lay out below. Plaintiffs submit that this position is incorrect because Rule 26(a)

---

[1] *Priorities USA v. Nessel*, No. 20-1931, ___ Fed. App'x ___, 2021 WL 3044270, at *2 (6th Cir. July 20, 2021).

governs this proceeding, and there are factual issues that require discovery. Plaintiffs accordingly request that Defendant and Intervenors be required to serve their initial disclosures within 7 days of the Rule 16 Scheduling Conference being held on September 2, 2021.

      B.     *Attorney General's position.* As discussed during the parties' Rule 26(f) conference, Defendant Attorney General Dana Nessel objects to initial disclosures on the grounds that they are not appropriate in light of anticipated dispositive motions based on the Sixth Circuit's decision, which discussed serious legal defects in Plaintiffs' claims. After earlier granting a stay of the injunction, the Sixth Circuit held that—for essentially the same reasons it granted a stay—the Plaintiffs were not likely to prevail on the merits. (R. 102, PageID#1830–31). In fact, the Court held that legislature was likely to prevail, instead. *Id.* Because the Sixth Circuit's analysis was based on the legal merits of Plaintiffs' claims and the Court's reasoning does not depend on possible factual developments, the same reasoning suggests that the Plaintiffs' claims should be dismissed based upon the pleadings alone. Initial disclosures—or discovery of any sort—should not be required until this Court has had an opportunity to rule on initial dispositive motions and determine whether some or all of Plaintiffs' claims will be dismissed.

      C.     *Republican Committees' position.* The Republican Committees objected to the requirement of and timing for initial disclosures at the Rule 26(f) conference. Discovery, including initial disclosures, will be unnecessary if the Court disposes of the case on Rule 12(c) motions. The Republican Committees therefore

propose that the Court decide the dispositive motions before requiring initial disclosures.

    D.    *Michigan Legislature's position.* Under Rule 26(a)(1)(C), the Legislature objects to the requirement of and timing for initial disclosures. This Court's decision on the Legislature's forthcoming 12(c) motion may well resolve all the remaining issues in the case. Thus, to spare all parties from the burden of disclosures or any other potentially unnecessary discovery, the Legislature proposes that the Court decide dispositive motions before requiring initial disclosures or setting other discovery dates.

## VII. Subjects of Discovery

    A.    *Plaintiffs' position.* Plaintiffs intend to seek targeted discovery to support their remaining constitutional and statutory claims challenging the Voter Transportation Ban and the Absentee Ballot Organizing Ban. In general, Plaintiffs plan to conduct discovery on the issues of the State's justifications for enacting and enforcing the Voter Transportation Ban and the Absentee Ballot Organizing Ban; Defendant and Intervenor–Defendants' interpretation(s) of the Voter Transportation Ban and the Absentee Ballot Organizing Ban; the enforcement history of the Voter Transportation Ban and the Absentee Ballot Organizing Ban; the effect of the Voter Transportation Ban and the Absentee Ballot Organizing Ban on Plaintiffs; the impact of the Absentee Ballot Organizing Ban on voters covered by Section 208 of the Voting Rights Act; and Intervenor–Defendants' interest in this case.

To accomplish this discovery, Plaintiffs anticipate serving limited written discovery requests on Defendant and Intervenor–Defendants and, if necessary, taking depositions of Defendant and Intervenor–Defendants, as well as any fact or expert witnesses that Defendant and Intervenor–Defendants identify. Plaintiffs also anticipate that they may obtain documents and depositions via third-party discovery. Further, Plaintiffs anticipate the need for one or more experts concerning the State's justifications for enacting and enforcing the Voter Transportation Ban and the Absentee Ballot Organizing Ban, the history of the Voter Transportation Ban, and/or the effect of the Voter Transportation Ban and the Absentee Ballot Organizing Ban on Plaintiffs. Plaintiffs anticipate this discovery will be targeted and not burdensome.

Discovery is appropriate and necessary in light of the status of the case and the remaining claims. The Sixth Circuit decision resolved only the FECA preemption claim as related to the Transportation Ban, which Plaintiffs will not pursue. It did not resolve any other claims.[2] This Court expressly did not reach Plaintiffs' constitutional claims as to the Transportation Ban when deciding the Motion for Preliminary Injunction. While it reached Plaintiffs' constitutional claims as to the Absentee Ballot Organizing Ban, it did so at the preliminary injunction stage, with

---

[2] Although the Sixth Circuit panel briefly opined in a footnote on Plaintiffs' likelihood of success on the merits on their "First amendment argument," *Priorities USA*, 2021 WL 2044270, at *3 n.2, that issue was not briefed and its discussion was therefore not a decision on the merits for any of Plaintiffs' other claims. *See Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (in applying law-of-the-case doctrine, court asks whether "the appellate panel considering the preliminary injunction has issued a fully considered appellate ruling on an issue of law") (quoting *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015)) (internal quotation marks omitted).

8

limited discovery. Plaintiffs should therefore be allowed to pursue relevant discovery before a final judgment by this Court, particularly in light of new intervening Supreme Court caselaw in the form of *American for Prosperity Foundation v. Bonta*, 141 S. Ct. at 2385, discussed above, which was decided after the Court issued its ruling on the preliminary injunction.

Each of the remaining claims hinge on factual issues that require discovery in order for the court to meaningfully consider the claims. For example, Defendant's own interpretation of the Transportation Ban will go directly to plaintiffs' vagueness and overbreadth claim. And evidence regarding the state interests put forth to justify both laws are unquestionably relevant to a First Amendment Claim. *See, e.g., Meyer v. Grant*, 486 U.S. at 426 (considering evidence relating to state's proffered interest in applying exacting scrutiny test).

Discovery should therefore not be stayed, even if the Defendant and Intervenors wish to pursue Rule 12(c) motions. The fact that the Defendant and Intervenors believe that discovery will not change the outcome does not mean that Plaintiff is not entitled to pursue it at this stage of the litigation. There is no reason to delay relevant discovery and the ultimate decision for another round of briefing which will be repetitive of the Defendant's Motion to Dismiss.

B. *Attorney General's position*. Should discovery be necessary following the outcome of dispositive motions, only limited discovery should be required since Plaintiffs' claims are based entirely upon the legality of the challenged statutes. The scope of discovery should be limited to whether and how the statutes pertinent to any remaining claims are actually enforced, and what is required in order for

9

Plaintiffs to comply with them. Defendant Nessel might also take the depositions of appropriate members of the Plaintiff organizations based upon the answers to written discovery, as well as the depositions of any experts identified by the Plaintiffs to investigate what relevance their expertise could have on the legality of the statutes.

    C.    *Republican Committees' position.* It is premature to address the subjects of discovery until after the Court adjudicates the Rule 12(c) motions, which may obviate the need for any discovery at all.

    D.    *Michigan Legislature's position.* Given the Legislature's forthcoming Rule 12(c) motion, addressing the subjects and scope of discovery is premature.

## VIII. Timeline and Scope of Discovery

    A.    *Plaintiffs' position.* Plaintiffs' position is that discovery should begin immediately and complete by mid-February 2022 to ensure adequate time for this Court's consideration of the merits and the resolution of any subsequent appeals before the August 2, 2022 primary. Without such a schedule and timeline, Plaintiffs will suffer irreparable and significant harm because of their inability to engage in the desired activities (which Plaintiffs believe are protected by the First and Fourteenth Amendments) before the next federal election. Plaintiffs propose that discovery be conducted in two phases: fact discovery through November 19, 2021, followed by expert discovery through January 28, 2022. Plaintiffs oppose any stay of discovery because it will delay resolution of the issues before the August 2022 primary. As explained above, Plaintiffs intend to pursue discovery that is relevant in light of the scope of the case and the Court's decisions to date. The fact that there are questions

of law does not obviate the need for all discovery, including on the issues described above. To the contrary, binding Supreme Court precedent makes clear that the factual record is relevant to these claims. *See, e.g., Ams. for Prosperity Found.*, 141 S. Ct. at 2385–87; *Meyer*, 486 U.S. at 426.

      B.    *Attorney General's position*. Defendant Nessel urges that discovery not be conducted until after the anticipated dispositive motions have been decided. It is already apparent from Plaintiffs' description of the subjects of discovery above that discovery would be voluminous, laborious for both the parties and for unidentified third parties, and expensive—including the retention of multiple expert witnesses. That cost in resources and time may be entirely unnecessary if the Court concludes that Plaintiffs' claims fail as a matter of law. Even if only some of Plaintiffs' claims are dismissed, that would significantly narrow the scope and extent of discovery that may be required.

      It is unclear why Plaintiffs suggest that this case must be concluded before the August 2022 primary, but for the same reasons stated by the Sixth Circuit when it stayed the injunction, Plaintiffs will not suffer any irreparable harm while this Court determines whether some or all of their claims must be dismissed before initiating costly discovery.

      C.    *Republican Committees' position*. The Republican Committees plan to file a Rule 12(c) motion. If any of Plaintiffs' claims remain after the Court decides the motion, and if any factual disputes actually exist on those remaining claims, then the parties would proceed with limited discovery.

The Republican Committees agree with the Attorney General and the Legislature that Plaintiffs have not adequately explained why this case must be concluded before the August 2022 primary.

If discovery proves necessary, it should be conducted in stages. Stage 1 should consist of 45 days devoted to requesting, producing, receiving, and reviewing records. Stage 2 should consist of 45 days devoted to supplemental requests and depositions of nonparties. Stage 3 should consist of 21 days devoted to depositions of the parties. Stage 4 should consist of 21 days devoted to depositions of experts.

Discovery should also be supremely limited in scope. The Court has already ruled that "whether the court applies exacting scrutiny or a rational basis standard of review, on the record before the court . . . [the harvesting ban] is constitutional." ECF 79, PageID.1591. It has also ruled that Plaintiffs are unlikely to prove that the harvesting ban is vague or ambiguous, *id.*, at PageID.1601–02, or that Section 208 of the Voting Rights Act preempts the harvesting ban, *id.*, at PageID.1609–10. Plaintiffs concede that vagueness and preemption are pure questions of law. ECF 25, PageID.359.[3]

Similarly, the Sixth Circuit has ruled that Plaintiffs are unlikely to prove that the paid driver ban is preempted under the Federal Election Campaign Act, *Priorities USA* v. *Nessel*, 978 F. 3d 976, 982–85 (CA6 2020); *Priorities USA* v. *Nessel*, —F. Appx.—; 2021 WL 3044270, *2 (CA6 Jul. 20, 2021), slip op. at 4, and Plaintiffs

---

[3] Although Plaintiffs have announced that they will no longer pursue the overbreadth and vagueness claim in Count I concerning the harvesting ban, *supra* at 3–4, this announcement does not extend to the overbreadth and vagueness claim in Count V concerning the paid driver ban.

have elected to discontinue this claim, *supra* at 3. Plaintiffs have admitted that "[t]here is no ambiguity in the Voter Transportation Law's statutory language," Brief for Plaintiffs, CA6 Doc. 44, Page 47, and the relevant facts are not likely to be disputed.

Given the rulings by this Court and the Sixth Circuit and Plaintiffs' previous position, the Republican Committees asked Plaintiffs to provide a list of specific facts that they believe to be at issue in this case. During the Rule 26(f) conference and this discovery plan, Plaintiffs suggested that potential areas of discovery might include: (i) the state's interest in enacting and enforcing the harvesting ban and the paid driver ban; (ii) the Attorney General and Intervenors' interpretations of these two laws; (iii) the enforcement history of these two laws; (iv) the laws' effect on Plaintiffs; (v) the impact of the harvesting ban on voters covered by Section 208 of the Voting Rights Act; and (vi) Intervenors' interest in the case. The Republican Committees contend that discovery on these topics would not be germane to a Rule 12(c) motion.

(i)     *State's interests.* The Supreme Court's recent decision in *Americans for Prosperity* does not support Plaintiffs' contention that discovery regarding the state's interest is warranted. It is settled that the challenged election laws serve important regulatory interests. The "[harvesting ban] is designed with fraud prevention as its aim and it utilizes well-recognized means in doing so." *Priorities USA*, 487 F. Supp. 3d, at 614. "[W]hile Michigan has a number of laws criminalizing interference with the absentee voting process, . . . none of these laws are primarily designed to reduce fraud or abuse in the application process on the front end, as opposed to simply

13

punishing it after it occurs." *Ibid*. The paid driver ban "is one provision among several others in the statute intended to prevent fraud and undue influence," which is "assuredly aimed at preventing a kind of voter fraud known as 'vote-hauling.'" *Priorities USA*, 978 F.3d, at 983–94. And "[t]he state's interest in preventing potential voter fraud is an important regulatory interest." *Priorities USA*, —F. Appx.—; 2021 WL 3044270 at *2 n. 3 (CA6 Jul. 20, 2021). Further, states are not required to submit "any record evidence in support of [their] stated interests." *Common Cause/Ga.* v. *Billups*, 554 F.3d 1340, 1353 (CA11 2009). States can even rely on "post hoc rationalizations" to justify an alleged burden placed on the right to vote. See *Mays* v. *LaRose*, 951 F.3d 775 (CA6 2020). Discovery therefore is not necessary on the state's sufficient interests for the election laws.

(ii) *Interpretations of the laws.* Discovery is not needed into the Attorney General and Intervenor's interpretations of the harvesting ban and the paid driver ban. Plaintiffs have conceded that vagueness is a question of law. ECF 25, PageID.359.

(iii) *Enforcement history.* There is no dispute that Plaintiffs seek to engage in the conduct prohibited by the challenged election laws. It is not clear how enforcement history of the challenged laws somehow invalidates the state's important regulatory interests for these content-neutral and generally applicable election laws. Given the myriad options for Michigan voters to return their AV ballot applications and receive transportation to the polls (including non-paid transportation from Plaintiffs), any alleged burden is outweighed by the state's sufficient regulatory interests. Moreover, any lack of evidence regarding criminal prosecutions of the challenged laws actually bolsters the state's interests in enacting these election laws.

14

"[A] statute can be a prophylactic rule intended to prevent the potential for fraud where enforcement is otherwise difficult." *Priorities USA*, 978 F.3d, at 984.

(iv)   *Effect of laws on Plaintiffs*. Plaintiffs do not need to engage in discovery about the laws' effect on themselves. Indeed, Plaintiffs have already disclosed the laws' effect on them in declarations filed in support of their motion for preliminary injunction. ECF 22-4, PageID.202–06; ECF 22-5, PageID.207–15; ECF 22-6, PageID.216–26.

(v)   *Impact on Section 208 voters.* Count IV asserts a claim of conflict preemption. After analyzing the plain language of Section 208, the Court has already determined that "some state law limitations on the identity of persons who may assist voters [under Section 208] is permissible." ECF 79, PageID.1607. This conclusion is further bolstered by the legislative history of Section 208. *Ibid*. The issue is whether the harvesting ban stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress—allowing specified voters to choose someone to help them vote (not *the* person of choice)—when voters covered under Section 208 can obtain assistance from any of the more than 8 million people registered to vote in Michigan. This does not require factual development through discovery; it can be decided as a question of law. And the speculation that Plaintiffs might possibly find a voter who has suffered an undue burden in seeking voting assistance because of the harvesting ban should not open the door to a fishing expedition. See *Tolliver* v. *Fed. Republic of Nigeria*, 265 F. Supp. 2d 873, 880 (WD Mich. 2003) ("The mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions.").

15

(vi)    *Intervenors' interest in the case*. The Court has already considered and accepted Intervenors' interest in the case. ECF 60, PageID.1016–27. There is no reason for further discovery on an already-decided matter.

D.    *Michigan Legislature's position*. Again, given the Legislature's forthcoming Rule 12(c) motion, addressing the subjects and scope of discovery is premature. The Legislature concurs with Defendant Nessel's position that discovery not begin until after this Court's decision on all dispositive motions, especially given Plaintiffs' prior concessions that their case turns on purely legal issues. See, e.g., ECF No. 23-1, PageID.319.

Further, Plaintiffs here raise a new concern about resolving their claims in time for the August 2022 primary, but they do not explain (1) why addressing the Legislature's motion before discovery would necessarily affect that primary or (2) why the August 2022 primary could not proceed under the statutes and rules that have governed Michigan elections for decades. Indeed, given that Plaintiffs request a trial in June, not even Plaintiffs' proposed schedule would allow for "consideration of the merits *and the resolution of any subsequent appeals* before the August 2, 2022 primary."

### IX.    Electronically Stored Information

The Parties agree to limit the sources and scope of the production of electronically stored information ("ESI") to reasonably accessible sources which are likely to contain information responsive to the Parties' discovery requests, including,

but not limited to, email accounts, hard drives, shared network drives, and other commonly used storage devices.

In most circumstances, ESI will be exchanged in commonly used and searchable formats such as TIFF, Excel spreadsheets, PDFs, Word, and common video or audio files. To the extent that files to be exchanged are in less commonly used formats, the Parties will meet and confer about the best means for producing the data. The Parties agree to continue to discuss in good faith the production of ESI, methods of production, and the inclusion or exclusion of metadata as discovery proceeds.

In the absence of agreement on issues regarding discovery of ESI, the Parties shall request a scheduling conference.

## X.   Claims of Privilege or Protection

In the event the Court directs discovery, the parties agree that an order under Rule 502 of the Federal Rules of Evidence should be entered to protect the attorney-client privilege and information protected under the work product doctrine.

## XI.   Limitations on Discovery

Subject to Defendant and Intervenors–Defendants position that discovery is unnecessary, counsel to the Parties will work together and believe the Parties will adhere to the proportionality requirements of Fed. R. Civ. P. 26(b)(1). Additionally, they do not expect to exceed the discovery limits set forth in the federal rules related to depositions and written discovery. Further, should any dispute arise in this regard, they will attempt to work through it prior to involving the Court.

## XII. Proposed Schedule

The Parties disagree on the proposed schedule for the case management order ("CMO"). Plaintiffs request the below schedule in order to ensure timely and efficient resolution of the important issues they raise in their Amended Complaint. Plaintiffs also request that a trial be set no later than June so that the matter can be resolved in advance of the August 2022 primary elections. Defendant Nessel requests that the Court set a deadline for dispositive motions based upon the Sixth Circuit's decision, and that all discovery be stayed until any such motions are determined. Defendant Nessel requests that such dispositive motions be filed within 21 days of an order staying discovery. The Republican Committees and the Legislature concur in Defendant Nessel's proposed schedule, and, if necessary, the Court should issue a scheduling order following disposition of Defendant and Intervenors–Defendants' dispositive motions.

*Plaintiffs' Proposed Schedule*

| Event | Proposed Deadline |
|---|---|
| Initial disclosures | August 10 |
| Fact Discovery | September 2 – November 12, 2021 |
| Deadline to Serve Written Discovery | October 13, 2021 |
| Plaintiffs' Expert Report(s) | November 17, 2021 |
| Defendants' Expert Report(s) | December 17, 2021 |
| Plaintiffs' Rebuttal Expert Report(s) | January 7, 2022 |
| Expert Witness Depositions | January 10 – January 21, 2022 |
| Close of Discovery | January 21, 2022 |
| Last Day for Daubert Motions | February 21, 2022 |
| Last Day for Dispositive Motions | February 21, 2022 |
| Trial | TBA (3 days) |

## XIII. Settlement Potential

Following discussion by all counsel, the Parties agree that there is no possibility of settlement.

## XIV. Trial by Magistrate Judge

The parties do not consent to having this case tried before a magistrate judge of this Court.

Respectfully submitted,

Dated:  August 26, 2021

*/s/ Amanda J. Beane*
MARC E. ELIAS
KEVIN J. HAMILTON
AMANDA J. BEANE
JYOTI JASRASARIA
Perkins Coie, LLP
SARAH PRESCOTT (P70510)
Salvatore Prescott, PLLC
*Counsel for Plaintiffs*

Dated:  August 26, 2021

*/s/ Erik A. Grill*
HEATHER S. MEINGAST (P55439)
ERIK A. GRILL (P64713)
Assistant Attorneys General
Department of the Attorney General
*Counsel for the Attorney General of the State of Michigan*

Dated:  August 26, 2021

*/s/ Patrick G. Seyferth*
PATRICK G. SEYFERTH (P47575)
Bush Seyferth, PLLC
*Counsel for the House of Representatives and the Senate of the State of Michigan*

Dated: August 26, 2021    /s/ *Kurtis T. Wilder*
KURTIS T. WILDER (P37017)
JOSEPH E. RICHOTTE (P70902)
STEVEN R. EATHERLY (P81180)
Butzel Long, P.C.
*Counsel for the Michigan Republican Party and the Republican National Committee*

# CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in this case.

/s/ *Jyoti Jasrasaria*
Attorney for Plaintiffs
Perkins Coie, LLP
700 13th St. N.W., Suite 800
Washington, D.C. 20005-3960
Phone: (202) 654-6200
Email: jjasrasaria@perkinscoie.com