UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PRIORITIES USA, RISE, INC., and DETRTOIT/DOWNRIVER CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE, <br><br>     Plaintiffs, <br><br> v. <br><br> DANA NESSEL, <br><br>     Defendant, <br><br> and <br><br> MICHIGAN HOUSE OF REPRESENTATIVES, MICHIGAN SENATE, MICHIGAN REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE, <br><br>     Intervenors–Defendants. | Civil No. 19-13341 <br><br> HON. STEPHANIE DAWKINS DAVIS <br> MAG. KIMBERLY G. ALTMAN <br><br><br><br> **MOTION FOR JUDGMENT ON THE PLEADINGS BY THE REPUBLICAN NATIONAL COMMITTEE AND THE MICHIGAN REPUBLICAN PARTY** |

Under Rule 12(c) of the Rules of Civil Procedure, the Republican National Committee and the Michigan Republican Party (the "**Republican Committees**") move for a judgment on the pleadings, specifically to dismiss Plaintiffs' claims, in whole or in part with prejudice.

Counsel for the Republican Committees sought concurrence under Local Rule 7.1 before filing this Motion. The Michigan House of Representatives and the Michigan

Senate (the "**Legislature**") and the Attorney General concur in the relief requested. Plaintiffs do not.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  SEPTEMBER 24, 2021

*/s/ Kurtis T. Wilder*

KURTIS T. WILDER  (P37017)
JOSEPH E. RICHOTTE  (P70902)
STEVEN R. EATHERLY  (P81180)
150 West Jefferson Avenue, Suite 150
Detroit, Michigan 48226
(313) 225-7000
wilder@butzel.com
richotte@butzel.com
eatherly@butzel.com
*Counsel for Republican National Committee*
*and Michigan Republican Party*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PRIORITIES USA,<br>RISE, INC., and<br>DETRTOIT/DOWNRIVER<br>CHAPTER OF THE A. PHILIP<br>RANDOLPH INSTITUTE,<br><br>      Plaintiffs,<br><br>v.<br><br>DANA NESSEL,<br><br>      Defendant,<br><br>and<br><br>MICHIGAN HOUSE OF<br>REPRESENTATIVES,<br>MICHIGAN SENATE,<br>MICHIGAN<br>REPUBLICAN PARTY, and<br>REPUBLICAN<br>NATIONAL COMMITTEE,<br><br>      Intervenors–Defendants. | Civil No. 19-13341<br><br>HON. STEPHANIE DAWKINS DAVIS<br>MAG. KIMBERLY G. ALTMAN<br><br><br>**BRIEF IN SUPPORT OF<br>MOTION FOR JUDGMENT ON<br>THE PLEADINGS BY THE<br>REPUBLICAN NATIONAL<br>COMMITTEE AND THE<br>MICHIGAN REPUBLICAN PARTY** |

# TABLE OF CONTENTS

INDEX OF AUTHORITIES....................................................................... *ii*

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................*vii*

QUESTION PRESENTED .......................................................... *viii*

INTRODUCTION ...................................................................1

I.   Plaintiffs' challenges to the paid driver ban fail as a
     matter of law.........................................................3

     A.   The paid driver ban is not vague................................3

     1.   The Sixth Circuit correctly found that the paid driver ban
          satisfies the *Anderson-Burdick* framework................................5

     2.   The paid driver ban survives exacting scrutiny ........................8

II.  Plaintiffs' challenges to the harvesting ban fail as a
     matter of law.........................................................10

     A.   The harvesting ban is constitutional .........................11

     1.   The First Amendment does not apply because the harvesting
          ban does not affect political speech or associational rights......11

     2.   If the Court rules that the First Amendment applies, it
          should apply the *Anderson-Burdick* framework to the
          harvesting ban and find the law constitutional ........................12

     3.   The harvesting ban survives exacting scrutiny........................15

     B.   The harvesting ban is not preempted by the Voting
          Rights Act ...............................................18

CONCLUSION.......................................................21

PROOF OF SERVICE.............................................21

# INDEX OF AUTHORITIES

**Cases**

*A. Philip Randolph Inst. of Ohio* v. *Larose*,
831 F. Appx. 188 (CA6 2020)...............................................................6

*Americans for Prosperity Foundation* v. *Bonta*,
594 U.S.—; 141 S. Ct. 2373 (2021) ...................................... 8, 16, 17

*Bickley* v. *Dish Network, LLC*,
751 F.3d 724 (CA6 2014)......................................................................2

*Brnovich* v. *Democratic Nat'l Comm.*,
594 U.S.—; 141 S. Ct. 2321 (2021) ......................................... 10, 13

*Bucciarelli* v. *Nationwide Mut. Ins. Co.*,
662 F. Supp. 2d 809 (ED Mich. 2009) .................................................2

*Buckley* v. *Valeo*,
424 U.S. 1 (1976) .................................................................................8

*Citizens United* v. *FEC*,
558 U.S. 310 (2010) .............................................................................8

*Clark* v. *Community for Creative Non-Violence*,
468 U.S. 288 (1984) ...........................................................................11

*Common Cause of Ga.* v. *Billups*,
554 F.3d 1340 (CA11 2009).................................................................18

*Connecticut Nat. Bank* v. *Germain*,
503 U.S. 249 (1992)..............................................................................3

*Crawford* v. *Marion County Election Bd.*,
553 U.S. 181 (2008) ........................................................................6, 7

*Daunt* v. *Benson*,
999 F.3d 299 (CA6 2021).................................................................6, 8

*Davis* v. *Secretary of State*,
333 Mich. App. 588 (2020)................................................................15

*Detroit Unity Fund v. Whitmer*,
  819 F. Appx. 421 (CA6 2020)................................................................6

*DSCC* v. *Simon*,
  950 N.W.2d 280 (Minn. 2020)............................................................20

*Gaspee Project* v. *Mederos*,
  —F.4th—, 2021 WL 4167090 (CA1 2021) .............................. 17, 18

*Graveline* v. *Benson*,
  992 F.3d 524 (CA6 2021) ....................................................................6

*In re Application to Obtain Discovery for Use in Foreign Proceedings*,
  939 F.3d 710 (CA6 2019)....................................................................3

*In re Blasingame*,
  920 F.3d 384 (CA6 2019)....................................................................5

*Initiative & Referendum Inst.* v. *Jaeger*,
  241 F.3d 614 (CA8 2001 ...................................................................16

*John Doe No. 1* v. *Reed*,
  561 U.S. 186 (2010) ......................................................... 9, 13, 15, 17

*JPMorgan Chase Bank, NA* v. *Winget*,
  510 F.3d 577 (CA6 2007)....................................................................2

*Keith* v. *Bobby*,
  618 F.3d 594 (CA6 2010)....................................................................6

*Kishore* v. *Whitmer*,
  972 F.3d 745 (CA6 2020) ....................................................................6

Libertarian Party of Ky. *v.* Grimes,
  835 F.3d 570 (CA6 2016) ....................................................................7

*Lichtenstein* v. *Hargett*,
  489 F. Supp. 3d 742 (MD Tenn. 2020)..............................................11

*Lloyd's of London* v. *KG Admin. Servs., Inc.*,
  855 F. Appx. 260 (CA6 2021) .............................................................2

*Mays* v. *LaRose*,
   951 F.3d 775 (CA6 2020)......................................................................18

*McCutcheon* v. *FEC*,
   572 U.S. 185 (2014) ...............................................................................8

*Moore* v. *Weekly*,
   159 F. Supp. 3d 784 (ED Mich. 2016).................................................19

*National Fed. of Indep. Bus.* v. *Sebelius*,
   567 U.S. 519 (2012)................................................................................4

Ohio Democratic Party *v.* Husted,
   834 F.3d 620 (CA6 2016)....................................................................5, 7

*Ohio State Univ.* v. *Redbubble, Inc.*,
   989 F.3d 435 (CA6 2021)........................................................................1

*Priorities USA* v. *Nessel*,
   —F. Appx. —; 2021 WL 3044270 (CA6 Jul. 20, 2021)..................... *passim*

*Priorities USA* v. *Nessel*,
   487 F. Supp. 3d 599 (ED Mich. 2020) ...................................... *passim*

*Priorities USA* v. *Nessel*,
   978 F.3d 976 (CA6 2020)................................................... 9, 10, 12

*Purcell* v. *Gonzalez*,
   549 U.S. 1 (2006) ................................................................................13

*Rumsfeld* v. *Forum for Academic & Inst. Rights*,
   547 U.S. 47 (2006) ...............................................................................11

*SawariMedia, LLC* v. *Whitmer*,
   963 F.3d 595 (CA6 2020)........................................................................6

Schmitt v. LaRose,
   933 F.3d 628, (CA6 2019)....................................................................5, 6

*Thompson* v. *DeWine*,
   976 F.3d 610 (CA6 2020)........................................................................6

*Tolliver* v. *Federal Republic of Nigeria*,
  265 F. Supp. 2d 873 (WD Mich. 2003) .............................................................19

*United States* v. *Adams*,
  722 F.3d 788 (CA6 2013) ........................................................................................9

*United States* v. *Campbell*,
  168 F.3d 263 (CA6 1999)........................................................................................5

*United States* v. *O'Brien*,
  391 U.S. 367 (1968) .............................................................................................11

*United States* v. *Stevens*,
  559 U.S. 460 (2010) .......................................................................................4, 18

*United States* v. *Turner*,
  465 F.3d 667 (CA6 2006) .......................................................................................9

*Voting for Am., Inc.* v. *Steen*,
  732 F.3d 382 (CA5 2013)......................................................................................16

*Washington State Grange* v. *Washington State Republican Party*,
  552 U.S. 442 (2008) ...............................................................................................4

*Wimbush* v. *Wyeth*,
  619 F.3d 632 (CA6 2010)......................................................................................19

*ZMC Pharmacy, LLC* v. *State Farm Mut. Auto. Ins. Co.*,
  307 F. Supp. 3d 661 (ED Mich. 2018) ..................................................................2

**Statutes**

52 U.S.C. § 10508 ...............................................................................................1, 10

Mich. Comp. Laws § 168.744 .................................................................................10

Mich. Comp. Laws § 168.759 ................................................................ 1, 11, 14, 17

Mich. Comp. Laws § 168.931 ...............................................................................1, 3

**Rules**

Fed. Rule Evid. 201 .................................................................................................14

**Law Review Articles**

Hasen, *Vote Buying*, 88 Calif. L. Rev. 1323 (Oct. 2000)...........................................9

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Brnovich* v. *Democratic Nat'l Comm.*, 594 U.S.—; 141 S. Ct. 2321 (2021)

*DSCC* v. *Simon*, 950 N.W.2d 280 (Minn. 2020)

*Gaspee Project* v. *Mederos*, —F.4th—, 2021 WL 4167090 (CA1 2021)

*JPMorgan Chase Bank, NA* v. *Winget*, 510 F.3d 577 (CA6 2007)

*Lichtenstein* v. *Hargett*, 489 F. Supp. 3d 742 (MD Tenn. 2020)

*Priorities USA* v. *Nessel*, —F. Appx. —; 2021 WL 3044270 (CA6 Jul. 20, 2021)

*Priorities USA v. Nessel*, 978 F.3d 976 (CA6 2020)

*Priorities USA* v. *Nessel*, 487 F. Supp. 3d 599 (ED Mich. 2020)

*Rumsfeld* v. *Forum for Academic & Inst. Rights*, 547 U.S. 47 (2006)

*Schmitt v. LaRose*, 933 F.3d 628 (CA6 2019)

*United States* v. *Stevens*, 559 U.S. 460 (2010)

## QUESTION PRESENTED

Should the Court grant judgment against Plaintiffs on the pleadings?

Republican Committees:     Yes
Plaintiffs:                No

## INTRODUCTION

This election law case returns after rulings from this Court and the Sixth Circuit finding that Plaintiffs' claims are not likely to succeed. Plaintiffs challenge long-standing election laws in Michigan that (1) prohibit strangers from soliciting and returning Absent Voter (AV) ballot applications from Michigan voters, Mich. Comp. Laws §168.759 ("**harvesting ban**"), and (2) prohibit payment for transporting third-party ambulatory Michigan voters to the polls ("**paid driver ban**"), Mich. Comp. Laws §168.931(1)(f). ECF 17, PageID.90–91. Plaintiffs' only remaining claims are: their First Amendment challenges to the election laws (Counts II and VI); that the Voting Rights Act of 1965, specifically 52 U.S.C. §10508, preempts the harvesting ban (Count IV); and that the paid driver ban is vague and overbroad (Count V). These claims all fail as a matter of law, and accordingly, any factual discovery would not be germane in resolving these legal matters. For the reasons fully stated below, the Court should dismiss Plaintiffs' claims, in whole or in part, with prejudice.[1]

---

[1]    The Republican Committees acknowledge that the Case Management Order ("**CMO**") limits their arguments to "issues not already addressed and resolved through the Court's opinion regarding defendant Nessel's motion to dismiss." ECF 110, PageID.1874 (citing ECF 60, PageID.1026–1027). They respectfully object to being precluded from making arguments necessary to properly preserve issues for appeal, especially when this is the Republican Committees' first opportunity to file a dispositive motion based solely on the parties' pleadings. Therefore, in order to avoid waiver or forfeiture of any arguments, *Ohio State Univ.* v. *Redbubble, Inc.*, 989 F.3d 435, 443–44 (CA6 2021), the Republican Committees submit all arguments in support of their request for judgment on the pleadings.

## ARGUMENT

A party may move for judgment on the pleadings under Rule 12(c). A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss. *JPMorgan Chase Bank, NA* v. *Winget*, 510 F.3d 577, 581 (CA6 2007). A motion for judgment on the pleadings is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Bickley* v. *Dish Network, LLC*, 751 F.3d 724, 733 (CA6 2014).

"In ruling on a motion for judgment on the pleadings, the Court may consider documents attached to, incorporated by or referred to in the pleadings." *Bucciarelli* v. *Nationwide Mut. Ins. Co.*, 662 F. Supp. 2d 809, 814 (ED Mich. 2009). "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(c), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Lloyd's of London* v. *KG Admin. Servs., Inc.*, 855 F. Appx. 260, 269 (CA6 2021) (cleaned up). A district court may take judicial notice of its own docket. See *ZMC Pharmacy, LLC* v. *State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 (ED Mich. 2018).[2]

Although allegations of the opposing party must be taken as true, the Court need not accept as true legal conclusions or unwarranted factual inferences. See *JPMorgan Chase Bank*, 510 F.3d, at 581.

---

[2]   Although the Court limited the scope of the present motion to "issues not already addressed and resolved through the Court's opinion regarding defendant Nessel's motion to dismiss," ECF 110, PageID.1874, it should take judicial notice of its own docket for decided legal issues, specifically its order denying in part and granting in part Plaintiffs' motion for preliminary injunction, ECF 79.

## I. Plaintiffs' challenges to the paid driver ban fail as a matter of law.

Plaintiffs allege that the paid driver ban is unconstitutionally vague and overbroad (Count V) and violates the First and Fourteenth Amendments because it impermissibly infringes on Plaintiffs' speech and associational rights (Count VI). ECF 17, PageID.121–124. These claims fail as a matter of law.

### A. The paid driver ban is not vague.

Plaintiffs contend that the phrase "hire a motor vehicle" in Mich. Comp. Laws § 168.931(1)(f) is vague and overbroad. ECF 17, PageID.121–122. Statutory interpretation is a purely legal question. See *In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 717 (CA6 2019). "When the words of a statute are unambiguous, then … 'judicial inquiry is complete.'" *Priorities USA* v. *Nessel*, 487 F. Supp. 3d 599, 621 (ED Mich. 2020) (quoting *Connecticut Nat. Bank* v. *Germain*, 503 U.S. 249, 253 (1992)).

In ruling on the Attorney General's motion to dismiss, the Court declined to address her limited construction of the paid driver ban because Plaintiffs were not provided an opportunity to respond, leaving this statutory interpretation question to be decided in Plaintiffs' then-pending motion for preliminary injunction. ECF 59, PageID.1006–1007. The Court thereafter correctly found that the paid driver ban is "relatively straightforward and unambiguous." *Priorities USA*, 487 F. Supp. 3d, at 621. "In a nutshell, no person (including a corporation) may pay wages or make any other payment to another to transport voters to the polls, unless the person so transported cannot walk. Thus, … a corporation is limited to providing transportation for voters who can walk through means that do not involve payment to the person doing the

– 3 –

transporting." *Ibid*. On appeal, Plaintiffs admitted that "[t]here is no ambiguity in the Voter Transportation Law's statutory language." CA6 Doc. 44, p. 47. Plaintiffs have further conceded that vagueness is a pure question of law. ECF 25, PageID.359.

Because the Court correctly found that the paid driver ban is "relatively straightforward and unambiguous," *Priorities USA*, 487 F. Supp. 3d, at 621, and Plaintiffs have admitted as such, CA6 Doc. 44, p. 47, the Court should now dismiss Plaintiffs' vagueness challenge.

### B.    The paid driver ban is constitutional.

Plaintiffs challenge the paid driver ban on its face, claiming that it violates their First and Fourteenth Amendment right to engage in political expression by (1) limiting political spending on transporting voters to the polls, and (2) regulating rides-to-the-polls efforts. ECF 17, PageID.122.

Facial challenges are generally disfavored. See *Priorities USA*, 487 F. Supp. 3d, at 609. "[F]acial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Washington State Grange* v. *Washington State Republican Party*, 552 U.S. 442, 450 (2008). A law implicating the right to expression may be invalidated on a facial challenge if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States* v. *Stevens*, 559 U.S. 460, 473 (2010). "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *National Fed. of Indep. Bus.* v. *Sebelius*, 567 U.S. 519, 563 (2012). "Because plaintiffs have advanced a broad attack on the constitutionality of [the statute], seeking relief

– 4 –

that would invalidate the statute in all its applications, they bear a heavy burden of persuasion." *Ohio Democratic Party* v. *Husted*, 834 F.3d 620, 627 (CA6 2016) (internal quotation and citation omitted).

### 1.   The Sixth Circuit correctly found that the paid driver ban satisfies the *Anderson-Burdick* framework.

Although the Court previously ruled that the exacting scrutiny standard applies to Plaintiffs' First Amendment challenge to the paid driver ban, ECF 59, PageID.1003, Plaintiffs alternatively argued on appeal that the preliminary injunction should be affirmed because the paid driver ban is unconstitutional, CA6 Doc. 44, p. 65–66. In rejecting Plaintiffs' argument, the Sixth Circuit found that the *Anderson-Burdick* framework applied, and then concluded that Plaintiffs' First Amendment challenge to the paid driver ban would not likely succeed. *Priorities USA* v. *Nessel*, —F. Appx. —; 2021 WL 3044270, at *2 n.3 (CA6 Jul. 20, 2021) ("We 'generally evaluate First Amendment challenges to state election regulations' using the *Anderson-Burdick* framework" (quoting *Schmitt v. LaRose*, 933 F.3d 628, 639 (CA6 2019)).

The Sixth Circuit's application of the *Anderson-Burdick* framework binds this Court. The law-of-the-case doctrine provides that courts' earlier decisions "should continue to govern the same issues in subsequent stages in the same case." *In re Blasingame*, 920 F.3d 384, 392 (CA6 2019). Under the law-of-the-case doctrine, "determinations of the court of appeals of issues of law are binding on both the district court on remand and the court of appeals upon subsequent appeal." *United States* v. *Campbell*, 168 F.3d 263, 265 (CA6 1999). Further, "the law of the case

turns on whether a court previously decided upon a rule of law not on whether, or how well, it explained the decision." *Keith* v. *Bobby*, 618 F.3d 594, 600 (CA6 2010) (cleaned up). In short, the Sixth Circuit's finding that the *Anderson-Burdick* framework applies to the paid driver ban controls—not exacting scrutiny.[3]

The *Anderson-Burdick* framework is tailored to the regulation of election mechanics. See *Crawford* v. *Marion County Election Bd.*, 553 U.S. 181, 190 (2008). It applies where it is alleged that a state election law burdens voting. *Supra* note 3. Under that framework, "[l]aws imposing severe burdens on plaintiffs' rights are subject to strict scrutiny, but lesser burdens trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Schmitt*, 933 F.3d, at 639 (cleaned up). The court

---

[3]    Moreover, since this Court's ruling on the Attorney General's motion to dismiss on May 22, 2020, the Sixth Circuit has repeatedly applied the *Anderson-Burdick* framework to election challenges. See *e.g.*, *Kishore* v. *Whitmer*, 972 F.3d 745 (CA6 2020) (applied to Michigan's ballot-access requirements for independent party candidates for president and vice president); *Graveline* v. *Benson*, 992 F.3d 524, 534 (CA6 2021) (applied to Michigan laws governing an independent candidate's ability to be placed on ballot for statewide office); *Thompson* v. *DeWine*, 976 F.3d 610, 615–16 (CA6 2020) (applied to signature requirements for ballot initiatives imposed under Ohio law); *SawariMedia, LLC* v. *Whitmer*, 963 F.3d 595, 596–98 (CA6 2020) (applied to signature requirements for ballot initiatives imposed under Michigan law); *Detroit Unity Fund v. Whitmer*, 819 F. Appx. 421, 422 (CA6 2020) (applied to Governor Whitmer's enforcement of the filing deadline for local ballot initiatives); *A. Philip Randolph Inst. of Ohio* v. *Larose*, 831 F. Appx. 188, 191–92 (CA6 2020) (applied to the Ohio Secretary of State's directive that absentee ballot drop boxes be placed only at the offices of the county boards of elections); *Daunt* v. *Benson*, 999 F.3d 299, 311–12 (CA6 2021) (applied to eligibility requirements under the Michigan Constitution amendment for serving on the Michigan Independent Citizens Redistricting Commission).

must first consider the character and magnitude of the asserted injury to the rights protected by the Constitution that the plaintiffs seeks to vindicate. *Ohio Dem. Party*, 834 F.3d, at 626–27. Next, the court must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. *Ibid*. Finally, the court must determine the legitimacy and strength of each of those interests and consider the extent to which those interests make it necessary to burden the plaintiff's rights. *Ibid*.

The Sixth Circuit found that the paid driver ban "is likely not a severe burden on [Plaintiffs'] rights because it does not appear to result in 'exclusion or virtual exclusion' from the ballot." *Priorities USA*, 2021 WL 3044270, at *2 n.3 (quoting *Libertarian Party of Ky.* v. *Grimes*, 835 F.3d 570, 574 (CA6 2016)). The court further found that "[t]he state's interest in preventing potential voter fraud is an important regulatory interest," and "prohibiting paid vote-hauling is likely a reasonable, nondiscriminatory restriction justified by that interest." *Priorities USA*, 2021 WL 3044270, at *2 n.3 (comparing *Ohio Dem. Party*, 834 F.3d, at 631, and *Crawford*, 553 U.S., at 198–99). The Sixth Circuit concluded that the paid driver ban "does not appear to pose an unconstitutional burden." *Priorities USA*, 2021 WL 3044270, at *2 n.3 "'And even assuming that the burden may not be justified as to a few voters, that conclusion is by no means sufficient to' warrant invalidating the paid driver ban altogether." *Ibid*. (quoting *Crawford*, 553 U.S., at 199–200).

For regulations that are not unduly burdensome, like the paid driver ban, a state is not required to prove "the sufficiency of the evidence" under the *Anderson-Burdick* framework." *Ohio Dem. Party*, 834 F.3d, at 632. Neither Plaintiffs' amended

complaint nor their motion for preliminary injunction identified a single voter who has been unable to secure transportation to the polls due to the paid driver ban, but regardless, Plaintiffs' expansive discovery requests cannot lead to any discoverable information that will abrogate the state's important governmental interest for the paid driver ban, especially given Plaintiffs' facial challenge. See *Daunt* v. *Benson*, 999 F.3d 299, 313 (CA6 2021) (the Sixth Circuit has "not shied away from disposing of *Anderson-Burdick* claims at the motion-to-dismiss stage where a plaintiff's allegations 'failed as a matter of law.'").

### 2.    The paid driver ban survives exacting scrutiny.

Even if exacting scrutiny applied, the paid driver ban would still pass muster. Exacting scrutiny "requires a 'substantial relation' between the [challenged law] and a 'sufficiently important' governmental interest." *Citizens United* v. *FEC*, 558 U.S. 310, 366–67 (2010) (quoting *Buckley* v. *Valeo*, 424 U.S. 1, 64, 66 (1976)). "Where exacting scrutiny applies, the challenged [disclosure] requirement must be narrowly tailored to the interest it promotes, even if it is not the least restrictive means of achieving that end." *Americans for Prosperity Foundation* v. *Bonta*, 594 U.S.—; 141 S. Ct. 2373, 2384 (2021).[4] Exacting scrutiny "require[s] a fit that is not necessarily perfect, but reasonable." *Ibid*. (quoting *McCutcheon* v. *FEC*, 572 U.S. 185, 218 (2014)). To withstand exacting scrutiny, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *John*

---

[4]   The Republican Committees contend that narrow tailoring does not apply to *all* First Amendment challenges reviewed under the exacting scrutiny standard, *infra* II.A.3.

*Doe No. 1* v. *Reed*, 561 U.S. 186, 196 (2010).

The Sixth Circuit expressly recognized the state's interest in protecting against fraud and undue influence in enacting the long-standing paid driver ban. The paid driver ban "is one provision among several others in the statute intended to prevent fraud and undue influence," which is "assuredly aimed at preventing a kind of voter fraud known as 'vote-hauling.'" *Priorities USA* v. *Nessel*, 978 F.3d 976, 983–84 (CA6 2020).[5] And "[t]he state's interest in preventing potential voter fraud is an important regulatory interest." *Priorities USA*, 2021 WL 3044270, at *2 n.3. "Ensuring that every vote is cast freely, without intimidation or undue influence, is … a valid and important state interest." *Brnovich* v. *Democratic Nat'l Comm.*, 594

---

[5]   Besides this case, the Sixth Circuit has previously analyzed vote-hauling. The court stated that "[v]ote hauling involves transporting voters who otherwise lack transportation to the polls on election day," and noted that "[p]aying workers to provide transportation to voters in need is legal in Kentucky if done legitimately." *United States* v. *Turner*, 465 F.3d 667, 669 n.1 (CA6 2006). *Turner* involved a candidate's campaign issuing checks that were labeled for "vote hauling" and direct payments of cash to voters to influence their votes. *Id.*, at 670. Then, in another case out of Kentucky, the court stated that "[v]ote hauling in this case … refers to the illegal practice of bringing voters to polls to be paid to vote." *United States* v. *Adams*, 722 F.3d 788, 798 n.1 (CA6 2013). *Adams* involved candidates pooling their money to pay voters to vote for a specified slate or ticket and also paying the "vote haulers" (*i.e.*, drivers) to deliver these voters to the polls. *Id.*, at 798–99. The fact that these vote-hauling schemes included payments to voters actually bolsters Michigan's rationale for enacting the paid driver ban. Michigan, as a matter of election integrity, has prohibited paid transportation due to the threat of money "finding its way" to voters and the difficulty in enforcement. See also Hasen, *Vote Buying*, 88 Calif. L. Rev. 1323, 1328, n.25 (Oct. 2000) ("A related practice is paying 'street money' to 'haulers' and 'flushers' to get out the vote … No doubt, some of the money paid to these haulers and flushers ends up in the hands of voters.").

– 9 –

U.S.—; 141 S. Ct. 2321, 2340 (2021). The paid driver ban is narrowly tailored to these important interests. It is "a prophylactic rule intended to prevent the potential for fraud where enforcement is otherwise difficult," *Priorities USA*, 978 F.3d, at 984, by keeping money out of the hands of drivers who may be tempted to use those funds to bribe voters, while still letting third parties facilitate the transportation of voters to the polls, to most voter registration sites or to election officials' offices, and spend money to do so (*e.g.*, they may purchase vehicles, buy fuel, etc.). The law expressly targets the payment of money for transportation to the polls, not the actual transportation of voters to the polls. It bears repeating that Plaintiffs are free to provide transportation to the polls. The transportation of voters to the polls is also an impressionable time as it will likely be the last time a voter is exposed to electioneering. See Mich. Comp. Laws §168.744 (prohibiting campaigning within 100 feet of the entrances to the polling place). Moreover, the paid driver ban does not "result in 'exclusion or virtual exclusion' from the ballot. *Priorities USA*, 2021 WL 3044270, at *2 n.3. And, the burden, if any, to voters is nondiscriminatory. *Ibid*.

## II.  Plaintiffs' challenges to the harvesting ban fail as a matter of law.

Plaintiffs allege that the harvesting ban violates the First and Fourteenth Amendments because it impermissibly infringes on Plaintiffs' speech and associational rights (Count II), and that the Voting Rights Act of 1965, 52 U.S.C. §10508, preempts the challenged law (Count IV). ECF 17, PageID.114–116, 118–121. These claims fail as a matter of law.

**A.**    **The harvesting ban is constitutional.**

**1.**    **The First Amendment does not apply because the harvesting ban does not affect political speech or associational rights.**[6]

The harvesting ban does not unconstitutionally infringe on protected speech because the process of returning an AV ballot application or requesting to return an application is neither "inherently expressive" nor inextricably entwined with protected speech. See *Rumsfeld* v. *Forum for Academic & Inst. Rights*, 547 U.S. 47, 66 (2006).

Nonexpressive conduct does not acquire First Amendment protection whenever combined with protected speech. See *Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 297–98 (1984); *Rumsfeld*, 547 U.S., at 66; *United States* v. *O'Brien*, 391 U.S. 367, 376 (1968). Section 759 does not restrict Plaintiffs' freedom to educate Michigan voters about how to request AV ballot applications or vote absentee. Mich. Comp. Laws §168.759. Section 759 bears only on Plaintiffs' ability to engage in certain conduct relating to the mechanism of the return of AV ballot applications: their desire to return AV ballot applications after soliciting or requesting to return them— conduct most akin to the non-discretionary act of delivering the mail. The harvesting ban regulates the mechanics of the absentee voting process. It does not regulate an elector's ability to vote absentee, nor does it regulate any individual or organization's right to engage in political speech. See also *Lichtenstein* v. *Hargett*, 489 F. Supp. 3d 742, 769, 773 (MD Tenn. 2020) (holding that the plaintiff organizations failed to establish a likelihood of success for their First Amendment challenge to Tennessee's

---

[6]    The Republican Committees acknowledge that the Court applied exacting scrutiny to Plaintiffs' First Amendment challenge to the harvesting ban, ECF 59, PageID.992. They assert this argument to preserve the issue for appeal, *supra* note 1.

election law that prohibited the distribution of absentee ballot applications, concluding that the "the conduct prohibited by the Law is not 'speech'" and thus not protected under the First Amendment). The Republican Committees therefore continue to argue that the First Amendment does not apply.

### 2. If the Court rules that the First Amendment applies, it should apply the *Anderson-Burdick* framework to the harvesting ban and find the law constitutional.[7]

In deciding Plaintiffs' preliminary injunction motion, the Court ruled that "whether the court applies exacting scrutiny or a rational basis standard of review, on the record before the court . . . [the harvesting ban] is constitutional." *Priorities USA*, 487 F. Supp. 3d, at 612. The Republican Committees argue that the harvesting ban, like the paid driver ban, is a state election regulation, and accordingly, the Court should apply the *Anderson-Burdick* framework to Plaintiffs' constitutional challenge to the harvesting ban as well. See *Priorities USA*, 2021 WL 3044270, at *2 n.3.

Plaintiffs' First Amendment claim fails under the *Anderson-Burdick* framework. It is settled that the harvesting ban serves important regulatory interests, specifically preserving the integrity of elections and preventing fraud in the absentee voting process. As the Court stated, the "[harvesting ban] is designed with fraud prevention as its aim and it utilizes well-recognized means in doing so." *Priorities USA*, 487 F. Supp. 3d, at 614. "[W]hile Michigan has a number of laws criminalizing interference with the absentee voting process, … none of these laws are primarily

---

[7]   The Republican Committees again acknowledge that the Court applied exacting scrutiny to the harvesting ban, ECF 59, PageID.992. They assert this argument to preserve the issue for appeal, *supra* note 1.

designed to reduce fraud or abuse in the application process on the front end, as opposed to simply punishing it after it occurs." *Ibid*. The state's interest is "particularly strong with respect to efforts to root out fraud, which not only may produce fraudulent outcomes, but has a systemic effect as well: It 'drives honest citizens out of the democratic process and breeds distrust of our government.'" *Reed*, 561 U.S., at 197 (quoting *Purcell* v. *Gonzalez*, 549 U.S. 1, 4 (2006)). The Supreme Court recently expressed that "[o]ne strong and entirely legitimate state interest is the prevention of fraud. Fraud can affect the outcome of a close election, and fraudulent votes dilute the right of citizens to cast ballots that carry appropriate weight. Fraud can also undermine public confidence in the fairness of elections and the perceived legitimacy of the announced outcome." *Brnovich*, 141 S. Ct., at 2340.

The Court further highlighted the greater susceptibility of fraud in the absentee voter context, including in the application process. "Intervenors have cited cases from across the country in which courts have acknowledged that the absentee ballot process is susceptible to fraud, along with other supporting evidence." *Priorities USA*, 487 F. Supp. 3d, at 613 (string citation). The Court expressly relied on the bi-partisan Carter-Baker Commission report. *Id.*, at 614 n.3. "As the Carter-Baker Commission recognized, third-party ballot collection can lead to pressure and intimidation. And it should go without saying that a State may take action to prevent election fraud without waiting for it to occur and be detected within its own borders." *Brnovich*, 141 S. Ct., at 2348. "Limiting the classes of persons who may handle early ballots to those less likely to have ulterior motives deters potential fraud and improves voter confidence." *Id.*, at 2347. The same fraud concerns for absentee voting

apply equally in the application process. See *Priorities USA*, 487 F. Supp. 3d, at 614 n.3 ("[I]t logically follows that precluding [third-party] organizations from handling absentee voter applications may also limit the opportunities for fraud and abuse in the application process."). Therefore, the Court should once again find that "the state's interests in preventing fraud and abuse in the absentee ballot application process and maintaining public confidence in the absentee voting process are sufficiently important interests and are substantially related to the limitations and burdens set forth in § 759." *Id.*, at 615.

Although the Court found that the alleged burden imposed on Plaintiffs by § 759 is "not slight," *id.*, at 614, the harvesting ban still allows Plaintiffs to engage in GOTV efforts: "[P]laintiffs can still educate the public about registering to vote absentee and answer questions about this process." *Id.*, at 614. Plaintiffs may also mail and hand out blank applications to voters. Section 759 further provides many ways for Michigan voters to return their written requests or form applications to the local clerk: (1) in person, (2) by US mail or some other mail service, (3) email, (4) fax, (5) through in-person, mail, or other delivery by an immediate family member, which includes in-laws and grandchildren, (6) through in-person, mail, or other delivery by a person residing in the same household, and (7) if none of those methods are available, through in-person, mail, or other delivery "by any registered elector." *Id.*, at 614–15 (citing Mich. Comp. Laws § 168.759(4)-(6)). The Court can take judicial notice that there were over eight million registered electors in the State of Michigan in October 2020. See Michigan Sec'y of State, Michigan Voter Registration Count by County, https://perma.cc/QDG6-VRPU; Fed. Rule Evid. 201.

– 14 –

In other words, Michigan voters have over 8 million options for returning their absentee ballot application. Additionally, before the 2020 primary and general elections, the Michigan Secretary of State sent every registered voter an AV ballot application. ECF 70-4, PageID.1298–1300. See also *Davis* v. *Secretary of State*, 333 Mich. App. 588, 2020 WL 5552822, *5 (Mich. App. Sept. 16, 2020). Therefore, the harvesting ban, if anything, is minimally burdensome on Michigan voters and third-party organizations, such as Plaintiffs.

### 3. The harvesting ban survives exacting scrutiny.

If the Court continues to apply exacting scrutiny, the harvesting ban would still satisfy this level of review. As stated, the harvesting ban serves important regulatory interests, specifically preserving the integrity of elections and preventing fraud in the absentee voting process. *Priorities USA*, 487 F. Supp. 3d, at 615. And the harvesting ban, if anything, minimally burdens any alleged protected speech for a voter applying and returning his or her application given the numerous ways for Michigan voters to return their written requests or form applications to the local clerk. Third party organizations, such as Plaintiffs, also remain free to engage in GOTV efforts and educate voters regarding absentee voting.

The harvesting ban is narrowly tailored to "help[] prevent certain types of … fraud otherwise difficult to detect," *Reed*, 561 U.S., at 198, such as might occur if a bad actor were to bully or fraudulently entice a voter into giving the bad actor the voter's AV ballot application only for the bad actor to destroy or fail to deliver the AV ballot application. See ECF 70, PageID.1231–1233 (setting forth examples of fraud by absentee voting, including in the application process). The "registered elector"

– 15 –

requirement specifically is important to maintain a credible possibility of prosecution for AV ballot application fraud. "Election law violations typically carry low penalties and are hard to prosecute against local violators. Requiring the state to authorize itinerant out-of-state [canvassers] could render enforcement ineffective." *Voting for Am., Inc.* v. *Steen*, 732 F.3d 382, 395 (CA5 2013); *Initiative & Referendum Inst.* v. *Jaeger*, 241 F.3d 614, 616 (CA8 2001) (holding that "[t]he residency requirement allows North Dakota's Secretary of State to protect the petition process from fraud and abuse by ensuring that circulators answer to the Secretary's subpoena power"). Thus, the "registered elector" requirement subjects the deliverer to the state's subpoena power, which acts as a deterrent against foul play and ensures that the voter's application is properly delivered.

Plaintiffs asserted in the parties' Rule 26(f) report that discovery is necessary for their First Amendment claims, citing *Bonta*. ECF 109, PageID.1853. But *Bonta* involved compelled disclosures, whereas the harvesting ban does not.

The *Bonta* Court struck down California's compelled disclosure requirement that charities and nonprofits operating in the state provide the attorney general with the names and addresses of their largest donors. *Bonta*, 141 S. Ct., at 2389. When the attorney general threatened enforcement against those failing to supply such information, two tax-exempt charities filed First Amendment facial and as-applied challenges against the regulation. The Court concluded that the exacting scrutiny standard applied to the charities' First Amendment challenges to California's compelled disclosure regime. *Id.*, at 2383, 2385. California argued that it needed to collect donor information to help it police fraud, but the facts adduced at trial showed

that the attorney general never used the information to advance any investigative efforts and did not rigorously enforce the requirement for a long period of time. *Id.*, at 2386. And since the attorney general could obtain this information in other targeted ways when actually needed, the dragnet collection was not narrowly tailored to advance the policing interest. *Id.*, at 2387.

The *Bonta* Court held that narrow tailoring applies to the exacting scrutiny standard in the context of First Amendment challenges to compelled disclosure regimes. See *id.*, at 2383–85 (providing narrow tailoring analysis); cf. *Reed*, 561 U.S., at 194–96 (applying exacting scrutiny to the disclosure requirements of Washington's Public Records Act). But "disclosure and disclaimer regimes are cut from different cloth." *Gaspee Project* v. *Mederos*, —F.4th—, 2021 WL 4167090, at *3 (CA1 2021). The *Bonta* Court did not establish a broad-based rule that exacting scrutiny *always* requires narrow tailoring between the challenged state action and the state's asserted interest.

It was also obvious in *Bonta* why the factual record mattered. The California attorney general initially claimed that it needed to mandate the disclosure of donor information to police fraud, but it could not actually show that it used information for this purpose. Then he claimed to need the information for administrative convenience, which the Court ruled was not a sufficiently important governmental interest to overcome a First Amendment challenge.

The present case is significantly different. Here, the Republican Committees contend that third parties harvesting AV ballot applications pose a risk of fraud and damage to the integrity of the election. Michigan has long prohibited third parties from harvesting AV ballot applications. Mich. Comp. Laws § 168.759. Prohibiting

– 17 –

election fraud and preserving election integrity are recognized, important governmental interests, there is a substantial relationship between that interest and a law prohibiting behavior that can lead to election fraud. The harvesting ban further has a reasonable fit to the state's interest in preventing fraud as the law prohibits the very behavior that can lead to fraud. See, *e.g.*, *Gaspee Project*, 2021 WL 4167090, at *12 (rejecting plaintiffs' reliance on *Bonta* for a facial challenge to Rhode Island's election spending disclosure requirements as the fit between the regulations was reasonable to the state's interest in promoting an informed electorate). Therefore, any reliance on *Bonta* would be distinguishable as a matter of law.

Moreover, states are not required to submit "any record evidence in support of [their] stated interests." *Common Cause of Ga.* v. *Billups*, 554 F.3d 1340, 1353 (CA11 2009). States can even rely on "post hoc rationalizations" to justify an alleged burden placed on the right to vote. See *Mays* v. *LaRose*, 951 F.3d 775, 789 (CA6 2020). Similarly, Plaintiffs cannot prove a negative—*i.e.*, that the law is not stopping fraud by general deterrence. Further, Plaintiffs raise facial challenges only, and therefore must present factual evidence that "a substantial number of [the laws'] applications are unconstitutional," which they cannot do given the plainly legitimate sweep of the challenged laws. *Stevens*, 559 U.S., at 473. Discovery therefore is not necessary on the state's sufficient interests for the election laws to survive exacting scrutiny.

### B.   The harvesting ban is not preempted by the Voting Rights Act.

The Court has ruled that Plaintiffs are unlikely to prove that Section 208 of the Voting Rights Act preempts the harvesting ban. *Priorities USA*, 487 F. Supp. 3d, at 620. Plaintiffs also concede the preemption is a pure question of law. ECF 25, PageID.359.

Count IV asserts a claim of conflict preemption. Conflict preemption refers to circumstances "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wimbush* v. *Wyeth*, 619 F.3d 632, 643 (CA6 2010). After analyzing the plain language of Section 208, the Court ruled that "its language suggests that some state law limitations on the identity of persons who may assist voters is permissible." *Priorities USA*, 487 F. Supp. 3d, at 619. This conclusion is further bolstered by the legislative history of Section 208. *Ibid*. The issue then is whether the harvesting ban stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress—allowing specified voters to choose someone to help them vote (not *the* person of choice)—when voters covered under Section 208 can obtain assistance from any of the more than eight million people registered to vote in Michigan. The answer is no.[8] This does not require factual development through discovery; it can be decided as a question of law.

---

[8]   Despite initiating this lawsuit 22 months ago, Plaintiffs have not identified in their pleadings, or at the preliminary injunction stage of this action, a single beneficiary of Section 208 who has been unable to select a person of choice from among more than 8 million registered elections. See *Priorities USA*, 487 F. Supp. 3d, at 619. The speculation that Plaintiffs might possibly find a voter who has suffered an undue burden in seeking voting assistance because of the harvesting ban should not open the door to a fishing expedition. See *Tolliver* v. *Federal Republic of Nigeria*, 265 F. Supp. 2d 873, 880 (WD Mich. 2003) ("The mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions."); see also *Moore* v. *Weekly*, 159 F. Supp. 3d 784, 799 (ED Mich. 2016) ("A lawsuit is not a fishing expedition for a plaintiff to discover a claim against the defendant.").

Additionally, in *DSCC* v. *Simon*, 950 N.W.2d 280, 290 (Minn. 2020), the Supreme Court of Minnesota rejected a similar Section 208 VRA preemption challenge to Minnesota's election law that prohibited a voter agent from delivering or mailing completed absentee ballots for more than three voters in any election (the "**three-voter limit**"). *Ibid. Simon* differs in that the three-voter limit applied to the actual delivery of absentee ballots, compared to the delivery of AV ballot applications here. This distinction actually bolsters the Republican Committees' argument that the harvesting ban is not an obstacle to the full purposes and objectives of voting under Section 208, unlike applying to vote.

The Minnesota court further highlighted that the three-voter limit is "a generally applicable statute; it does not specifically address the delivery of completed ballots for voters with disabilities or language impairments, and it also provides multiple options for return of a completed ballot: by mail, in person, or by designating an agent who may mail or deliver the completed ballot in person." *Ibid*. The harvesting ban is also generally applicable, has many options for returning AV ballot applications, and does not address the delivery of completed ballots by voters covered under Section 208. This Court should likewise reject Plaintiffs' VRA preemption challenge to the harvesting ban.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' claims, in whole or in part, with prejudice.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  SEPTEMBER 24, 2021

*/s/ Kurtis T. Wilder*

KURTIS T. WILDER  (P37017)
JOSEPH E. RICHOTTE  (P70902)
STEVEN R. EATHERLY  (P81180)
150 West Jefferson Avenue, Suite 150
Detroit, Michigan 48226
(313) 225-7000
wilder@butzel.com
richotte@butzel.com
eatherly@butzel.com
*Counsel for Republican National Committee
and Michigan Republican Party*

BH3181199.2

## PROOF OF SERVICE

STATE OF MICHIGAN  )
COUNTY OF WAYNE  )  §

All counsel of record will automatically receive service of this paper through the Court's efiling system.  There are no non-ECF participants.

Dated:  SEPTEMBER 24, 2021

*/s/ Kurtis T. Wilder*

KURTIS T. WILDER  (P37017)

– 21 –