# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Priorities USA, Rise, Inc., and the Detroit/Downriver Chapter of the A. Philip Randolph Institute,<br><br>       Plaintiffs,<br><br>v.<br><br>Dana Nessel, in her official capacity as Attorney General of the State of Michigan,<br><br>       Defendant,<br><br>and<br><br>Republican National Committee, Michigan Republican Party, Michigan House of Representatives, and Michigan Senate,<br><br>       Intervenor-Defendants. | NO. 19-13341<br><br>JUDGE STEPHANIE DAWKINS DAVIS<br><br>MAGISTRATE JUDGE KIMBERLY G. ALTMAN<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO INTERVENOR-DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKROUND ........................................................................................................2

LEGAL STANDARD..............................................................................................4

ARGUMENT ...........................................................................................................5

   I.    Plaintiffs have plausibly alleged that the Bans violate their free speech and associational rights. ........................................................................................5

       A.    This Court correctly held that the Bans infringe on protected expression. .............................................................................................5

       B.    This Court correctly held that exacting scrutiny applies to the Bans. 7

       C.    The constitutionality of the Bans depends upon several questions of fact. ...............................................................................................15

       D.    Even if the Bans are evaluated under an *Anderson-Burdick* framework, further factual development is required..........................18

   II.    Plaintiffs have sufficiently alleged that the Absentee Ballot Organizing Ban is preempted by Section 208 of the VRA....................................................20

   III.    Plaintiffs have plausibly alleged that the Voter Transportation Ban is vague and overbroad. ..........................................................................................23

CONCLUSION ......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Americans for Prosperity Foundation v. Bonta*,
  141 S. Ct. 2373 (2021).................................................................................*passim*

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)...........................................................................12, 18, 20

*Andrus v. Glover Const. Co.*,
  446 U.S. 608 (1980).........................................................................................22

*Bates v. Green Farms Condo. Ass'n*,
  958 F.3d 470 (6th Cir. 2020) .............................................................................4

*Brnovich v. Democratic National Committee*,
  141 S. Ct. 2321 (2021).............................................................................14, 15

*City of Chi. v. Morales*,
  527 U.S. 41 (1999).........................................................................................23

*Common Cause of Ga. v. Billups*,
  554 F. 3d 1340 (11th Cir. 2009) ......................................................................19

*Crawford v. Marion Cnty. Election Bd.*,
  553 U.S. 181 (2008).........................................................................................23

*Daunt v. Benson*,
  999 F.3d 299 (6th Cir. 2021) ..................................................................*passim*

*DSCC v. Simon*,
  950 N.W.2d 280 (Minn. 2020) ........................................................................14

*Engler v. Arnold*,
  862 F.3d 571 (6th Cir. 2017) .............................................................................5

*Freed v. Thomas*,
  976 F.3d 729 (6th Cir. 2020) .............................................................................8

*Gaspee Project v. Mederos*,
  13 F.4th 79 (1st Cir. 2021)...............................................................................16

*Guillermety v. Sec'y of Educ. of U.S.*,
　241 F. Supp. 2d 727 (E.D. Mich. 2002) ................................................................9

*Keith v. Bobby*,
　618 F. 3d 594 (6th Cir. 2010) ...........................................................................11

*Kolender v. Lawson*,
　461 U.S. 352 (1983)...........................................................................................24

*League of Women Voters v. Hargett*,
　400 F. Supp. 3d 706 (M.D. Tenn. 2019) .............................................................6

*Lichtenstein v. Hargett*,
　489 F. Supp. 3d 742 (M.D. Tenn. 2020) ..........................................................6, 7

*Logan v. MGM Grand Detroit Casino*,
　939 F.3d 824 (6th Cir. 2019) ...............................................................................8

*McIntyre v. Ohio Elections Comm'n*,
　514 U.S. 334 (1995)...........................................................................................12

*Memphis A. Philip Randolph Institute v. Hargett*,
　978 F.3d 378 (6th Cir. 2020) .............................................................................14

*Meyer v. Grant*,
　486 U.S. 414 (1988)..............................................................................................6

*Ne. Ohio Coal. for the Homeless v. Husted*,
　837 F.3d 612 (6th Cir. 2016) .............................................................................21

*Newman v. Voinovich*,
　789 F. Supp. 1410 (S.D. Ohio 1992), *aff'd*, 986 F.2d 159 (6th Cir.
　1993) ..................................................................................................................21

*OCA-Greater Houston v. Texas*,
　867 F.3d 604 (5th Cir. 2017) .............................................................................21

*Priorities USA v. Nessel*,
　462 F. Supp. 3d 792 (E.D. Mich. 2020) .......................................................*passim*

*Priorities USA v. Nessel*,
    487 F. Supp. 3d. 599 (E.D. Mich.), *rev'd and remanded on other
    grounds*, No. 20-1931, 2021 WL 3044270 (6th Cir. July 20, 2021)
    ..................................................................................................9, 17, 20

*Priorities USA v. Nessel*,
    No. 20-1931, 2021 WL 3044270 (6th Cir. July 20, 2021) ...................................8

*Raglin v. Mitchell*,
    No. 1:00-CV-767, 2017 WL 6629102 (S.D. Ohio Dec. 29, 2017) .....................9

*Soltysik v. Padilla*,
    910 F.3d 438 (9th Cir. 2018) ...........................................................................18

**Statutes**

52 U.S.C. § 10508...............................................................................................22

52 U.S.C. § 30143.................................................................................................4

Mich. Comp. Laws § 168.759........................................................................ iii, 2

Mich. Comp. Laws § 168.931(1)(f) ............................................................... iii, 2

**Other Authorities**

Federal Rule of Civil Procedure Rule 12(b) ........................................................4

Federal Rule of Civil Procedure Rule 12(c) .................................................. iii, 4

Federal Rule of Civil Procedure 26(f) ...........................................................4, 19

S. Rep. No. 295, 94th Cong., 1st Sess. 1, 40 (1975), reprinted in 1975
    U.S.C.C.A.N. 774 .............................................................................................21

## CONCISE STATEMENT OF THE ISSUES

Intervenor-Defendants the Michigan Senate and House ("Legislative Intervenors") and the Republican National Committee and Michigan Republican Party ("Republican Intervenors") (collectively, "Intervenors") move for judgment on the pleadings on the Amended Complaint under Rule 12(c).[1]

Through the Amended Complaint, Plaintiffs Priorities USA, Rise, Inc., and the Detroit/Downriver Chapter of the A. Philip Randolph Institute ("DAPRI") challenge the Absentee Ballot Organizing Ban and Voter Transportation Ban. Mich. Comp. Laws §§ 168.759(4), (5), (8); *id.* at § 168.931(1)(f).

The motions for judgment on the pleadings should be denied for at least the following reasons:

1. In granting Intervenors' motions to intervene, this Court expressly prohibited Intervenors from relitigating issues already decided in its decision denying the Attorney General's motion to dismiss, which is nevertheless exactly what Intervenors do here.

2. This Court has already ruled that Plaintiffs stated a claim as to each of the counts challenged in Intervenors' motions for judgment on the pleadings, and no intervening change in fact or law warrants this Court revisiting and overturning its earlier ruling.

3. In the time since the Court issued its ruling on the Attorney General's motion to dismiss and Plaintiffs' motion for a preliminary injunction, the Supreme Court issued its opinion in *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), which underscores that (a) laws subject to exacting scrutiny (including the Absentee Ballot Organizing Ban and Voter Transportation Ban) must be narrowly tailored to the government interests they purport to serve, and (b) the exacting scrutiny inquiry is highly fact intensive.

---

[1] Defendant Attorney General Dana Nessel "joins in and concurs with the Michigan House and Senate's motion under Fed. R. Civ. Proc. 12(c)." ECF No. 114, PageID.1915.

v

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

## Cases

*Americans for Prosperity Foundation v. Bonta*,
    141 S. Ct. 2373 (2021)

*Daunt v. Benson*,
    999 F.3d 299 (6th Cir. 2021)

*Freed v. Thomas*,
    976 F.3d 729 (6th Cir. 2020)

*League of Women Voters v. Hargett*,
    400 F. Supp. 3d 706 (M.D. Tenn. 2019)

*Logan v. MGM Grand Detroit Casino*,
    939 F.3d 824 (6th Cir. 2019)

*Meyer v. Grant*,
    486 U.S. 414 (1988)

*Priorities USA v. Nessel*,
    462 F. Supp. 3d 792 (E.D. Mich. 2020)

## Statutes

52 U.S.C. § 10508

52 U.S.C. § 30143

Mich. Comp. Laws § 168.759

Mich. Comp. Laws § 168.931(1)(f)

## Other Authorities

Federal Rule of Civil Procedure Rule 12(b)

Federal Rule of Civil Procedure Rule 12(c)

## INTRODUCTION

With these motions for judgment on the pleadings, Intervenors move in direct contravention of this Court's prior orders, seeking to relitigate issues resolved by the Court in its May 2020 order deciding the Attorney General's motion to dismiss. *See Priorities USA v. Nessel*, 462 F. Supp. 3d 792 (E.D. Mich. 2020). When the Court permitted Intervenors to intervene, it expressly prohibited them from raising issues already decided in that order. ECF No. 60, PageID.1026–1027. It again reminded Intervenors of this six weeks ago, when it issued its September 2021 scheduling order. ECF 110, PageID.874.

Yet Intervenors press on, offering various excuses for their failure to comply with this Court's clear directive. *See* ECF No. 115, PageID.1927 n.1 (noting Republican Intervenors "respectfully object"); ECF No. 113, PageID.1903 (attempting to reframe Legislative Intervenors' arguments as novel). In reality, they offer nothing new to support their arguments, and nothing that justifies revisiting the Court's earlier order. The most they can muster is reliance on a very brief footnote— clearly dicta—in the Sixth Circuit's decision on the likelihood of success on the merits of a claim *no longer before the Court*. This thin reed can hardly support the weight Intervenors place on it. This Court has already held that Plaintiffs have sufficiently stated claims that the Voter Transportation Ban is vague and overbroad and violates the First Amendment, and that the Absentee Ballot Organizing Ban both

1

violates the First Amendment and is preempted by Section 208 of the VRA. Intervenors' motions should be denied.

## BACKGROUND

At issue are Plaintiffs' constitutional and statutory challenges to two criminal laws in Michigan's Election Code: First, the Absentee Ballot Organizing Ban (Mich. Comp. Laws §§ 168.759(4), (5), (8)), which allows (with limited exceptions) only registered voters in Michigan to assist other voters with returning their absentee ballot applications and, separately, bans requesting or soliciting to assist voters with returning their absentee ballot applications. And second, the Voter Transportation Ban (Mich. Comp. Laws § 168.931(1)(f)), which provides that "[a] person shall not hire a motor vehicle or other conveyance or cause the same to be done, for conveying voters, other than voters physically unable to walk, to an election." The statute does not define "hire."

The Absentee Ballot Organizing Ban and the Voter Transportation Ban (together, the "Bans") severely hinder Plaintiffs' electoral organizing activities in Michigan. The Voter Transportation Ban burdens a host of rides-to-the-polls campaigns, including souls to the polls. ECF No. 17, PageID.102–103 ¶ 35. These campaigns are especially crucial in cities like Detroit, where private transportation is expensive and public transit is limited or unreliable. *Id.* For its part, the Absentee Ballot Organizing Ban squelches a key component of electoral organizing by

preventing Plaintiffs from assisting voters in applying for an absentee ballot. ECF No. 17, PageID.110 ¶ 52. Such interactions are important and meaningful vehicles for conversations about the importance of voting, as well as the merits of candidates and ballot measures. *Id.*

Plaintiffs are three non-profit advocacy and service organizations, each of which works to educate, mobilize, and turn out voters in Michigan. ECF No. 17, PageID.92–96, ¶¶ 7–18. As part of their missions, Plaintiffs desire to assist voters with absentee ballot applications in a manner proscribed by the Absentee Ballot Organizing Ban. ECF No. 17, PageID.98, ¶ 24. Plaintiffs also seek to get voters to the polls, but the Voter Transportation Ban prevents them from renting vehicles or leveraging existing resources like The Detroit Bus Company and Uber—requiring them to instead recruit and train individual volunteer drivers. ECF No. 17, PageID.99, ¶ 26. In short, Plaintiffs allege that the Bans prevent them from engaging in "protected First Amendment activity." *Priorities USA*, 462 F. Supp. 3d at 821.

The Court already determined, in considering the Attorney General's motion to dismiss, that Plaintiffs have sufficiently stated their claims that (1) the Absentee Ballot Organizing Ban violates Plaintiffs' free speech and associational rights under the First Amendment (Count II); (2) the Voter Transportation Ban violates Plaintiffs' free speech and associational rights under the First Amendment (Count VI); (3) the Absentee Ballot Organizing Ban is preempted by Section 208 of the VRA (Count

3

IV); and (4) the Voter Transportation Ban is unconstitutionally vague and overbroad (Count V). *Id.* at 821–22. [2]

The Court granted Intervenors' motions to intervene to defend this lawsuit together with the Attorney General in May 2020. ECF No. 60, PageID.1026–1027. However, in doing so, the Court expressly prohibited them from relitigating issues decided in the order on the Attorney General's motion to dismiss. *Id.* The Court reiterated this during the parties' scheduling conference last month and formally in its September 3, 2021 scheduling order. ECF 110, PageID.1874. Nonetheless, both sets of Intervenors have now filed motions for judgment on the pleadings under Rule 12(c) that repeat arguments made in the Attorney General's Rule 12(b) motion to dismiss. ECF No. 113; ECF No. 115. The arguments are no more persuasive the second time around.

## LEGAL STANDARD

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). In short, "[w]hen ruling on a defendant's motion to dismiss on

---

[2] As explained in the parties' Rule 26(f) report, Plaintiffs do not intend to pursue their claims under the Federal Election Campaigns Act ("FECA"), 52 U.S.C. § 30143, or their vagueness challenge to the Absentee Ballot Organizing Ban. ECF No. 109, PageID.1852–1853.

the pleadings, a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).

## ARGUMENT

I.  **Plaintiffs have plausibly alleged that the Bans violate their free speech and associational rights.**

   A.  **This Court correctly held that the Bans infringe on protected expression.**

Republican Intervenors first rehash an argument previously considered and rejected by this Court in its resolution of the prior motion to dismiss. Contending that they reassert this issue only to preserve it for appeal, they argue that the Absentee Ballot Organizing Ban "does not unconstitutionally infringe on protected speech," because it "bears only on Plaintiffs' ability to engage in certain conduct relating to the mechanism of the return of AV ballot applications." ECF No. 115, PageID.1937.[3] But as this Court properly found, "it is difficult to distinguish the political speech at issue here" from the speech in cases where courts (including the

---

[3] This is not materially different than the Attorney General's "conduct only" argument. ECF No. 115, PageID.1937 n.1; *Priorities USA*, 462 F. Supp. 3d at 814. Notably, neither set of Intervenors disputes that the Voter Transportation Ban regulates expression protected by the First Amendment.

Supreme Court) have applied exacting scrutiny to government restrictions on aspects of electoral organizing. *Priorities USA*, 462 F. Supp. 3d at 814 (collecting cases); *see also Meyer v. Grant*, 486 U.S. 414, 421 (1988) (finding circulation of an initiative petition constituted protected expression because it "of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change"); *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 723 (M.D. Tenn. 2019) (applying *Meyer*'s reasoning to voter registration drives).

Republican Intervenors do nothing to distinguish (or even discuss) these cases, nor could they. After all, this Court recognized that there is "little difference between discussions of whether to register to vote and discussions of whether to vote absentee," *Priorities USA*, 462 F. Supp. 3d at 812, since both involve the expression of a desire for political change no less than circulation of an initiative petition. Under Republican Intervenors' portrayal of First Amendment doctrine, however, any one of the activities described above (paying petition circulators, registering voters, assisting voters in applying for absentee ballots) would amount to mere "conduct" undeserving of First Amendment protection. This is not the law.[4]

---

[4] Republican Intervenors cite *Lichtenstein v. Hargett*, 489 F. Supp. 3d 742 (M.D. Tenn. 2020), a case in which a district court denied a motion for a preliminary injunction against a law prohibiting the distribution of absentee ballot applications. That law is quite unlike the Absentee Ballot Organizing Ban: In its discussion on why the law before it did not regulate speech, the *Lichstenstein* court provided "a list of things that the Law does not prohibit any person or organization ('speaker')

**B.     This Court correctly held that exacting scrutiny applies to the Bans.**

As this Court explained, pure First Amendment claims like Plaintiffs' are properly analyzed under *Meyer-Buckley*'s exacting scrutiny standard of review. *Priorities USA*, 462 F. Supp. 3d at 812 (distinguishing "cases involving the mere administrative process or the mechanics of the electoral process"). This is because "laws that govern election-related speech and association, go beyond the mere intersection between voting rights and election administration, and turn toward the area where 'the First Amendment has its fullest and most urgent application.'" *Id*. at 810–11 (quoting *League of Women Voters*, 400 F. Supp. 3d at 722). As such, "the Supreme Court applies 'exacting scrutiny' rather than *Anderson-Burdick* when a case involves election-related speech as opposed to 'the mechanics of the electoral process.'" *Priorities USA*, 462 F. Supp. 3d at 811 (citation omitted); *see also Bonta*, 141 S. Ct. 2373, 2382 (2021) (holding that "[p]rotected association furthers 'a wide variety of political, social, economic, educational, religious, and cultural ends'" and that "[g]overnment infringement of this freedom 'can take a number of forms'")

---

from doing," which includes, notably "inviting and encouraging anyone the speaker wishes to come somewhere (an office or other location selected by the speaker) to access the [absentee ballot] application online and then print it out, collect it, and take it away oneself" as well as "assist[ing] anyone the speaker wishes in completing an absentee-ballot application," and "more generally, saying, writing, or publishing anything about anything to anyone." 489 F. Supp. 3d at 764, 765. Each of the activities described above are implicated, and in many cases proscribed, by the Absentee Ballot Organizing Ban. And, for the reasons described above, such activity constitutes protected expression under governing First Amendment case law.

(quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)).

Intervenors attempt to circumvent this Court's holding (and binding Supreme Court precedent) by arguing—exactly as the Attorney General did in her motion to dismiss—that the Bans should instead be analyzed under *Anderson-Burdick*. ECF No. 113, PageID.1902–1903. Their only "new" argument relies on a brief footnote in the Sixth Circuit's decision reviewing the Court's order granting the Plaintiffs' motion for a preliminary injunction on the grounds that the Voter Transportation Ban was preempted by FECA, a claim that is no longer at issue in this case. ECF No. 109, PageID.1852–1853. In that footnote, the Sixth Circuit stated that, "[w]e 'generally evaluate First Amendment challenges to state election regulations' using the *Anderson-Burdick* framework." *Priorities USA v. Nessel*, No. 20-1931, 2021 WL 3044270, at *2 n.3 (6th Cir. July 20, 2021). But this cursory statement is, at best, dicta, does not amount to the law of the case (far from it), and is itself not supported by the precedent upon which Intervenors rely.

*First*, the footnote is dicta because the First Amendment issues were not essential to the Sixth Circuit's disposition of the case. *See Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020) (holding that dicta, defined as "anything not necessary to the determination of the issue on appeal," is not binding) (citations omitted); *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 836 (6th Cir. 2019) (holding that where decision would not necessarily have come out differently without

8

"questionable language," such language is dicta). The <u>*only*</u> claim before the Sixth Circuit at the time was a statutory preemption claim; this Court's preliminary injunction order did not reach Plaintiffs' First Amendment claims with respect to the Voter Transportation Ban, *Priorities USA v. Nessel*, 487 F. Supp. 3d 599, 626 (E.D. Mich.), *rev'd and remanded on other grounds*, No. 20-1931, 2021 WL 3044270 (6th Cir. July 20, 2021), and the sole question on appeal was whether the Voter Transportation Ban was properly enjoined on FECA preemption grounds. The Sixth Circuit was not required to reach the issue of whether Plaintiffs' *separate* First Amendment challenges to *either* Ban were likely to succeed, nor did it purport to do so.[5] As a result, it is not authoritative and provides no basis for revisiting this Court's prior order. *See, e.g.*, *Raglin v. Mitchell*, No. 1:00-CV-767, 2017 WL 6629102, at *3 (S.D. Ohio Dec. 29, 2017) (noting "dictum [is] not binding on future panels of the Sixth Circuit and, *a fortiori*, not binding on the District Courts").

*Second*, the footnote is not properly deemed the "law of the case." A preliminary injunction decision does not generally constitute the law of the case, except when there is a fully developed record. *Guillermety v. Sec'y of Educ. of U.S.*, 241 F. Supp. 2d 727, 731 (E.D. Mich. 2002) (citing *William G. Wilcox, D.O., P.C. Emps'. Defined Ben. Pension Tr. v. United States*, 888 F.2d 1111, 1114 (6th Cir.

---

[5] Notably, the Sixth Circuit did not even *discuss* the Absentee Ballot Organizing Ban, much less resolve a determinative issue as to how it should be evaluated.

1989)). The Sixth Circuit stressed exactly this in a decision issued earlier this year, in which it emphasized that "the law-of-the-case doctrine may be inapplicable when the legal conclusions in a preliminary-injunction decision were based on an underdeveloped record, issued under time pressures related to the circumstances of the preliminary injunction at issue, or were otherwise not conclusively decided." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (citing *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015)). "Ultimately we must ask whether 'the appellate panel considering the preliminary injunction has issued a fully considered appellate ruling on an issue of law.'" *Id.* (quoting *Howe*, 801 F.3d at 740).

Here, it did not. The appellate record was not only limited to the fast-moving preliminary injunction proceedings, but largely limited to the issue of FECA preemption, an issue that is no longer at play in this case. The parties had no occasions to thoroughly address the question of whether the First Amendment challenge to the Absentee Ballot Organizing Ban should be addressed under *Meyer* or *Anderson-Burdick*, and, in fact, the Sixth Circuit did not even discuss that provision in its opinion at all. As to the Voter Transportation Ban, the Sixth Circuit also did not have a full record before it, nor did it issue a "fully considered ruling on an issue of law" on this question. *Id.* Plaintiffs discussed their First Amendment argument for less than a single page of their appellate brief, noting only that the Sixth Circuit could affirm on that basis and not discussing the applicability of exacting

10

scrutiny or *Anderson-Burdick* balancing. Br. of Appellees, *Priorities USA v. Nessel*, Nos. 20-1931, 20-1940, 2021 WL 1604068 at *53–54 (6th Cir. Apr. 16, 2021). Intervenors similarly discussed the issue only briefly. Indeed, Republican Intervenors urged the Sixth Circuit to "decline to address Plaintiffs' First Amendment challenge in the first instance," noting "[b]ecause the district court enjoined the paid driver ban based on preemption, it declined to address Plaintiffs' additional challenges to the law." Reply Br. of Appellants Republican Intervenors, *Priorities USA v. Nessel*, Nos. 20-1931, 20-1940, 2021 WL 2074180 at *18 (6th Cir. May 21, 2021). Likewise, Legislative Intervenors insisted that the issue *had not been sufficiently briefed* and encouraged the court to order supplemental briefing if it planned to consider the issue. Reply Br. of Appellants Legislative Intervenors, *Priorities USA v. Nessel*, No. 4:19-cv-13341, 2021 WL 2074167, at *22–23 (6th Cir. May 21, 2021). Ultimately, the Sixth Circuit did not address whether the Voter Transportation Ban "regulates protected political expression." Brief of Appellees, *Priorities USA*, 2021 WL 1604068 at *53. Rather, the court simply mentioned *Anderson-Burdick* in a footnote, without explanation.[6]

---

[6] Republican Intervenors assert that it does not matter "whether, or how well, [the court] explained the decision." ECF No. 115, PageID.1931–1932 (quoting *Keith v. Bobby*, 618 F.3d 594, 600 (6th Cir. 2010)). But that quote is taken from a case in which the Federal Circuit "necessarily" decided a jurisdictional issue. *Keith*, 618 F.3d at 600 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)). In other words, the holding at issue was not dicta. Here, not only was the

In short, nothing about the Sixth Circuit's footnote suggests this Court should reverse its careful, studied conclusion that exacting scrutiny, not *Anderson-Burdick*, applies to Plaintiffs' remaining constitutional claims. The cases Intervenors cite are inapposite, dealing with claims related to pure election mechanics issues, such as ballot access, not claims related *solely* to speech and political expression, as Plaintiffs' are. In other words, they prove the delineation recognized by this Court in its order rejecting this same argument in the Attorney General's motion to dismiss. *See Priorities USA*, 462 F. Supp. 3d at 810–12.

For example, *Thompson v. DeWine* and *Hawkins v. DeWine*, on which Legislative Intervenors rely, concern requirements for ballot access. Such cases have long been analyzed under *Anderson-Burdick* and are distinct from the pure political speech claims that Plaintiffs bring. Indeed, *Anderson* itself was about ballot access. *See Anderson v. Celebrezze*, 460 U.S. 780, 782 (1983). Similarly, Republican Intervenors cite cases in which the Sixth Circuit has applied *Anderson-Burdick* to ballot access cases, as well as to a law governing drop boxes. Both clearly involve the "mechanics of the electoral process," rather than a "limitation on political expression subject to exacting scrutiny." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345, 346 (1995) (quotation marks and citation omitted).

---

Sixth Circuit's footnote unnecessary to its holding, but Plaintiffs' First Amendment claims were not even properly before that court. This is hardly law of the case.

Both sets of Intervenors also rely on *Daunt v. Benson*, in which the Sixth Circuit acknowledged that "*Anderson-Burdick* applies to a wide array of claims touching on the election process, including First Amendment and Equal Protection claims." ECF No. 113, PageID.1903 n.2 (quoting *Daunt*, 999 F.3d at 314). But the First Amendment has many different aspects, and Intervenors ignore that laws that impede on the rights of expressive and associational conduct are treated differently than those that are challenged on the basis that they burden the right to vote. *Daunt* did not involve claims analogous to those here, and, read in its appropriate context, it is clear that its reference to "First Amendment and Equal Protection" claims is meant to refer to *election process* claims. Such claims have typically been decided under *Anderson-Burdick*.[7]

Plaintiffs' claims are based on harms to their speech and associational rights, specifically focused on the ways in which the Bans impede them from engaging with

---

[7] Indeed, in support of this proposition, the Sixth Circuit cited *Obama for America*, a case about disparities in access to early voting in which the plaintiffs claimed a burden on their *right to vote*. *See Daunt*, 999 F.3d at 314 (citing *Obama for Am. v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012)). And even *Daunt* was clear that not all First Amendment claims were equal in this regard: the Sixth Circuit expressly warned that, "we have stopped short from conclusively adopting *Anderson-Burdick* as the controlling standard for challenges to the independent redistricting commissions' eligibility criteria." 999 F.3d 299 at 314. Thus, far from articulating a standard for all challenges to election regulations under the First Amendment, the *Daunt* court refused to even articulate a standard for all challenges to independent redistricting commissions, a fact pattern far removed from this case.

13

potential voters in ways that would advance their missions. ECF No. 17, PageID.92–96, ¶¶ 7–18. Those types of claims are analyzed under *Meyer*'s exacting scrutiny standard, as Plaintiffs have previously argued, and this Court previously (and properly) found. *See Priorities USA*, 462 F. Supp. 3d at 813. The Supreme Court recently reiterated as much, noting in *Bonta* that exacting scrutiny has been applied to speech and associational claims even in "election-related settings." 141 S. Ct. at 2383.[8]

Legislative Intervenors' citation to *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2340 (2021), is also misplaced. *See* ECF No. 115, PageID.1939; ECF No. 113, 1903 n.2, 1905, 1906. In *Brnovich*, the Court's analysis of the state's anti-fraud rationale came in the context of a VRA Section 2 claim, in which the plaintiffs argued that Arizona's voting laws diluted minority voting power.

---

[8] Legislative Intervenors cite *Memphis A. Philip Randolph Institute v. Hargett*, 978 F.3d 378 (6th Cir. 2020), to suggest otherwise*,* but not only does it pre-date *Bonta*, it undermines Intervenors' position. In *Memphis A. Philip Randolph Institute*, the court applied *Anderson-Burdick* only to the plaintiffs' claim that Tennessee's signature-verification law violated their fundamental *right to vote*. *Id.* at 391. When it came to the plaintiffs' claim that the same law violated their procedural due process rights, the court reasoned that procedural due process principles—not *Anderson-Burdick*—should govern their claim. *Id.* at 389–90. Legislative Intervenors also cite *DSCC v. Simon*, a Minnesota Supreme Court case dealing with limits on absentee ballot collection. Again, the decision only bolsters *Plaintiffs'* position: the *Simon* court quoted this Court's motion to dismiss order distinguishing "'cases involving the mere administrative process or the mechanics of the electoral process' from challenges to laws that regulate 'discussions of whether to register to vote and . . . whether to vote absentee.'" *DSCC v. Simon*, 950 N.W.2d 280, 295 (Minn. 2020) (quoting *Priorities USA*, 462 F. Supp. 3d at 812).

14

*See Brnovich*, 141 S. Ct. 2321 at 2334. Plaintiffs' claims here are constitutional, not statutory. And again, Plaintiffs do not claim a burden on the right to vote, but a burden on their speech and associational rights. Furthermore, the question before this Court is not whether states have an interest in preventing election fraud. It is whether Plaintiffs have plausibly alleged that the *laws at issue* constitute burdens on their First Amendment rights and do not "*bear[] a substantial relationship* to a sufficiently important governmental interest," *Priorities USA*, 462 F. Supp. 3d at 818 (emphasis added), or are not "narrowly tailored" toward those ends. *Bonta*, 141 S. Ct. at 2383. This Court has already held that Plaintiffs carry this burden at the motion-to-dismiss stage, and *Brnovich* does not alter that conclusion.

### C.   The constitutionality of the Bans depends upon several questions of fact.

This Court's determination of whether the Bans are narrowly tailored to the state's asserted interests requires factual development, making judgment on the pleadings premature. The Supreme Court's application of exacting scrutiny in *Bonta* highlights the fact-intensive nature of this inquiry. There, in determining that the challenged restriction was not narrowly tailored to the state's interest in preventing fraud, the court combed extensively through the factual record to find there was "a dramatic mismatch . . . between the interest that the Attorney General seeks to promote and the disclosure regime that he has implemented in service of that end."

*Bonta*, 141 S. Ct. at 2386. This analysis of the record included citation to evidence that the challenged regulation did not actually advance the state's "investigative, regulatory or enforcement efforts." *Id.* The Court also pointed to the existence of "less intrusive alternatives" that might similarly advance the state's interests. *Id.*

Similarly, here, to prevail, the defending parties must demonstrate that the Bans are narrowly tailored to their interest in preventing fraud. This, in turn, will depend on whether the type of fraud sought to be prevented (i.e., so-called "vote hauling" and "absentee ballot fraud") exists in Michigan, whether less restrictive alternatives were available to the state in vindicating its interests, and whether (and how often) these laws have been enforced to further the state's interests. Questions such as these are factual in nature and are not properly resolved at this stage.

Republican Intervenors argue that Plaintiffs' reliance on *Bonta* is misplaced because *Bonta* involved disclosures rather than prohibited speech or expression. *See* ECF No. 115, PageID.1942–1944. But the holding in *Bonta* was not so limited. 141 S. Ct. at 2383 (noting that the Court has "invoked [exacting scrutiny] in other election-related settings" besides disclosure requirements and concluding that "exacting scrutiny is not unique to electoral disclosure regimes") (citations omitted). Moreover, Intervenors' only support for this argument is a First Circuit case in which the court noted that "[r]egulations that burden political speech must typically withstand *strict* scrutiny" and that "disclosure and disclaimer regimes are cut from

16

different cloth" in part because such requirements "impose no ceiling on campaign-related activities" and do not "prevent anyone from speaking." *Gaspee Project v. Mederos*, 13 F.4th 79, 85 (1st Cir. 2021) (emphasis added) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366 (2010)). In other words, outside of challenges to disclosure requirements, challenges to burdens on political speech are *more closely scrutinized*, not less.[9]

Republican Intervenors also argue that discovery would be futile because "Plaintiffs cannot prove a negative—*i.e.*, that the law is not stopping fraud by general deterrence." ECF No. 115, PageID.1944. This could be most charitably described as a "tails I win, heads you lose" argument. Not only does the argument contradict *Bonta* and other cases in which courts *have* struck down statutes even where the state has asserted a fraud-related interest, it also defies common sense. Adopting such an argument would automatically validate every law no matter the burden on speech, so long as the state could simply assert—even without any factual basis that any fraud had occurred or was likely to occur—that it prevented fraud by "general deterrence." *Id.* There is no support for such a novel suggestion.

---

[9] This Court's ruling on Plaintiffs' preliminary injunction motion does not contradict this conclusion. That opinion (which, notably, pre-dates *Bonta*), was based on a limited factual record that was compiled and submitted for the limited purpose of determining Plaintiffs' entitlement to a preliminary injunction. *See Priorities USA*, 487 F. Supp. 3d at 614. Moreover, it did not consider Plaintiffs' First Amendment challenges to the Voter Transportation Ban at all, as it preliminarily enjoined that Ban as preempted by FECA. *Id.* at 609–14, 620–25.

Finally, both sets of Intervenors argue that even under exacting scrutiny, fraud prevention justifies the burden on speech and association imposed by the Bans. ECF No. 113, PageID.1894–1895; ECF No. 115, PageID.1936. These arguments lack merit for the reasons already canvassed. Specifically, they rely on the notion that a sufficient fit (i.e., a substantial relationship and narrow tailoring) exists between the Bans and the state's anti-fraud interests. However, the question of such fit is a factual one, as described above, *see Bonta*, 141 S. Ct. at 2386, and is not properly resolved at this stage. Judgment on the pleadings is therefore inappropriate.

### D.    Even if the Bans are evaluated under the *Anderson-Burdick* framework, further factual development is required.

Even if this Court were to reverse course and apply the *Anderson-Burdick* test to Plaintiffs' First Amendment claims, Intervenors' motions for judgment on the pleadings would be premature. *Anderson-Burdick* balancing, by definition, requires a factual inquiry. *See Anderson*, 460 U.S. at 789 (holding that the court "must first consider the character and magnitude of the asserted injury" and "then must identify and evaluate the *precise interests* put forward by the State as justifications for the burden") (emphasis added); *Soltysik v. Padilla*, 910 F.3d 438, 446–48 (9th Cir. 2018) (reversing motion to dismiss because issue of whether governmental interests justified burden under *Anderson-Burdick* could not be decided at pleadings stage and

required "fully developed evidentiary record").[10]

*Daunt* is not to the contrary. There, the court handled the plaintiffs' *Anderson-Burdick* claim at the motion-to-dismiss stage because the burden on those specific plaintiffs was "plain according to the Amendment's fixed terms" and they "offer[ed] only the vague contention that further factual development could demonstrate the severity of the burdens imposed." *Daunt*, 999 F.3d at 313. In doing so, moreover, the Sixth Circuit expressly noted that "*Anderson-Burdick* can, in many if not most cases, be a fact-intensive inquiry." *Id.* In contrast, Plaintiffs here have laid out specific factual information that would assist in this Court's resolution of their claims, both in this brief and in their 26(f) report. *See* ECF No. 109, PageID.1856–1858. Presumably, this is why this Court has granted "[l]imited discovery, consistent with the description set forth by [P]laintiffs in the Rule 26(f) report." ECF No. 110, PageID.1872 (citing ECF No. 109).[11]

---

[10] Quoting the Sixth Circuit's order on the preliminary injunction motion, Legislative Intervenors cite yet another case dealing with candidate ballot access, arguing that because Plaintiffs do not "allege that the Absentee Voter Law has 'excluded or virtually excluded' them from the ballot," their allegations fail as a matter of law. ECF No. 113, PageID.1904 (quoting *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016)). Again, Plaintiffs are not candidates for office and do not allege ballot access or other election mechanics claims. Plaintiffs' alleged harms stem from restrictions on their communications with and assistance to voters.

[11] Republican Intervenors argue that "states are not required to submit 'any record evidence in support of [their] stated interests'" ECF. No. 115, PageID.1944 (quoting *Common Cause of Ga. v. Billups*, 554 F. 3d 1340, 1353 (11th Cir. 2009)). In *Billups*,

## II.   Plaintiffs have sufficiently alleged that Section 208 of the VRA preempts the Absentee Ballot Organizing Ban.

This Court has already held that Plaintiffs stated a claim that Section 208 of the VRA preempts the Absentee Ballot Organizing Ban. *Priorities USA*, 462 F. Supp. 3d at 816. Although the Court did not grant Plaintiffs' preliminary injunction on this claim, it based that decision at least in part on Plaintiffs' "lack of evidence [at the preliminary injunction stage] that any voters have been affected by the limits on their choice of assistance." *Priorities USA*, 487 F. Supp. 3d. at 620; *id.* (noting that Congress would determine whether to preempt state election laws "dependent upon the facts" (quoting S. REP. NO. 97-417, at 63 (1982)). Consistent with its prior rulings, the Court should not engage in this fact-specific inquiry until a later stage in this litigation, after the parties have had the opportunity to develop the factual record.

Legislative Intervenors raise a series of arguments, all of which fumble at the outset. First, they argue that Plaintiffs lack prudential standing to advance a claim

---

however, the court had already found that the burden of the law was "limited" such that it did not need to be "narrowly tailored." *Common Cause of Ga.*, 554 F.3d at 1355 (11th Cir. 2009). This Court, on the other hand, has found that the burden of the challenged laws is "not slight" and applied exacting scrutiny. *Priorities USA*, 487 F. Supp. 3d at 612, 614. Whether analyzed under *Anderson-Burdick* or *Meyer-Buckley*, this Court's finding means factual development *is* required. Moreover, whatever may be the law in the Eleventh Circuit, courts in the <u>Sixth Circuit</u> have repeatedly affirmed "the inherently fact intensive nature of *Anderson-Burdick*." *Daunt*, 999 F.3d at 327 (Readler, J., concurring) (citing a long string of cases for this proposition). This accords with the "precise interests" analysis in *Anderson* itself. 460 U.S. at 789.

under the VRA. ECF No. 113, PageID.1910. This Court has already considered and rejected this argument, explaining that all but their right-to-vote claims "rely on [Plaintiffs'] own rights and injuries as organizations." *Priorities USA*, 462 F. Supp. 3d at 808.

In the event the Court wishes to consider Plaintiffs' standing again, however, "the Supreme Court has permitted organizations to bring suit in VRA claims." *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016) (citing *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268–71 (2015)). And in *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), the Fifth Circuit found that an organization with a mission that is meaningfully indistinguishable from that of Plaintiff DAPRI had standing to seek declaratory and injunctive relief based on allegations that a state voting law was preempted by the VRA. *Compare id.* at 610–14 (finding standing for organization with mission of turning out vote in a community with limited English proficiency), *with* ECF No. 72, PageID.1325–1326 (describing DAPRI as organization with mission of turning out vote in communities with limited English proficiency and assisting individuals with disabilities).

Indeed, the VRA was *intended* to confer standing to organizations like Plaintiffs. The Senate Report on the 1975 VRA amendments states that an aggrieved person "may be an individual *or an organization* representing the interests of injured persons." S. Rep. No. 295, 94th Cong., 1st Sess. 1, 40 (1975), reprinted in 1975

U.S.C.C.A.N. 774, 806–07 (emphasis added). *See also Newman v. Voinovich*, 789 F. Supp. 1410, 1416 (S.D. Ohio 1992), *aff'd*, 986 F.2d 159 (6th Cir. 1993).

Legislative Intervenors next cite this Court's preliminary injunction decision to argue that Plaintiffs' preemption claim fails on the merits based on the text and history of Section 208. But this Court's prior holding that "[P]laintiffs have stated a claim for preemption," *Priorities USA,* 462 F. Supp. 3d at 816, is dispositive at the pleadings stage. That said, the Court would be well within its rights to reconsider its preliminary injunction analysis of Plaintiffs' likelihood of success on the merits of this claim in light of Section 208's statutory text. Section 208 states that "[a]ny voter who requires assistance . . . may be given assistance by a person of the voter's choice." 52 U.S.C. § 10508. While the statute uses the indefinite article "a" before "person of the voter's choice," it then lists *specific persons* who cannot assist the voter, namely "the voter's employer or agent of that employer or officer or agent of the voter's union." *Id.* It is far from clear that Congress would provide two express limitations on who may assist voters if it intended to imply a host of other limitations as well. *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied.").

Accordingly, if voters who "require[] assistance to vote by reason of blindness, disability, or inability to read or write" are prevented from being "given

assistance by a person of the voter's choice" in the context of "registration . . . or other action required by law prerequisite to voting," there is a violation of Section 208. 52 U.S.C. § 10508

### III.   Plaintiffs have plausibly alleged that the Voter Transportation Ban is vague and overbroad.

This Court has already ruled that "[P]laintiffs have plausibly set forth facts demonstrating the Transportation Law may be unduly vague." *Priorities USA,* 462 F. Supp. 3d at 817. Neither this Court nor the Sixth Circuit addressed this claim in their preliminary injunction rulings, and Intervenors cite no intervening law that bears on this claim. That alone should end this inquiry.

Nevertheless, in an attempt to undo the Court's prior order, Legislative Intervenors argue that "[a] facial challenge like Plaintiffs' 'must fail where the statute has a 'plainly legitimate sweep' and imposes 'only a limited burden on voters' rights.'" ECF No. 113, PageID.1901 (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008)). Plaintiffs' vagueness and overbreadth challenge, however, is not a right-to-vote challenge like the one in *Crawford*, but rather a due process challenge to a criminal statute. Accordingly, the question is not the extent to which the Ban burdens the rights of voters, but whether it "fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *City of Chi. v. Morales*, 527 U.S. 41, 52

23

(1999) (noting that a statute may be vague "even if [the] enactment does not reach a substantial amount of constitutionally protected conduct").

Here, the Court applied this standard to conclude that Plaintiffs stated a vagueness claim as to the Voter Transportation Ban, noting that "[i]t is simply not clear whether [P]laintiffs can contract with Uber to transport a voter and claim that it is merely paying for 'expenses' associated with transportation or whether an employee can provide rides to the polls while earning a salary or being paid hourly." ECF No. 59, PageID.1005–1006. Legislative Intervenors appear to assail this reasoning (styling it as Plaintiffs' contention alone) as a "slew of hypotheticals." ECF No. 113, PageID.1901. But these cases are not hypothetical; they are concrete activities that Plaintiffs would engage in, but for the Ban. The Court's handling of the vagueness issue was therefore sound, and it should reject Intervenors' request that it revisit and overturn its earlier ruling.

Plaintiffs acknowledge that, in their Sixth Circuit briefing regarding FECA preemption, they stated that the Voter Transportation Ban is "'relatively straightforward and unambiguous.'" ECF No. 115, PageID.1929 (quoting *Priorities USA*, 487 F. Supp. 3d at 621). But that statement referenced the Ban's clear limitation on campaign spending—it had nothing to do with the clarity (or lack thereof) of the term "hire." In other words, it remains unclear precisely what conduct can result in criminal prosecution. Such imprecision in a criminal statute runs afoul

24

of the due process clause. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."). This Court should therefore conclude, consistent with its earlier ruling on the Attorney General's 12(b)(6) motion to dismiss, that Plaintiffs have stated a claim for vagueness as to the Voter Transportation Ban.

## CONCLUSION

For the reasons stated, Plaintiffs respectfully submit that the Court deny Intervenors' motions.


Date: October 15, 2021                   Respectfully submitted,

                                         /s/ *Kevin J. Hamilton*
                                         Marc E. Elias
                                         Jyoti Jasrasaria
                                         Spencer W. Klein
                                         ELIAS LAW GROUP
                                         10 G St NE, Suite 600
                                         Washington, DC 20002
                                         Telephone: (202) 968-4490
                                         Facsimile: (202) 968-4498
                                         melias@elias.law
                                         jjasrasaria@elias.law
                                         sklein@elias.law

                                         Kevin J. Hamilton
                                         Amanda J. Beane
                                         PERKINS COIE LLP

25

1201 3rd Ave.
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9741
khamilton@perkinscoie.com
abeane@perkinscoie.com

Sarah S. Prescott, Bar No. 70510
SALVATORE PRESCOTT &
PORTER, PLLC
105 E. Main Street
Northville, MI 48168
sprescott@spplawyers.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of October 2021, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in this case.

## <u>LOCAL RULE CERTIFICATION</u>

I HEREBY CERTIFY that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ *Kevin J. Hamilton*
Kevin J. Hamilton