UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA, RISE INC., and
THE DETROIT/DOWNRIVER
CHAPTER OF THE A. PHILIP
RANDOLPH INSTITUTE,

        Plaintiffs,                Case No. 19-cv-13341

v.                                Honorable Stephanie Dawkins Davis
                                Magistrate Judge Kimberly G. Altman

DANA NESSEL, in her
official capacity as Attorney General
of the State of Michigan,

        Defendants

and

THE MICHIGAN SENATE, THE
MICHIGAN HOUSE OF REPRESENTATIVES,
THE MICHIGAN REPUBLICAN PARTY and THE
REPUBLICAN NATIONAL COMMITTEE,

        Intervening Defendants.

_____/

## THE MICHIGAN SENATE AND THE MICHIGAN HOUSE OF REPRESENTATIVES' REPLY IN SUPPORT OF THEIR RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs' response grasps to save their case from dismissal. But no argument Plaintiffs offer can redeem their four remaining claims.[1] The Court should therefore grant the Legislature's motion for judgment on the pleadings.

## I.      The Voter Transportation Law's meaning is clear and unambiguous.

Plaintiffs argue that this Court already ruled in its May 2020 order that the Voter Transportation Law "may be unduly vague." Response, ECF No. 121, PageID.1990. But this Court subsequently held that "[w]hen the common meaning of a word provides adequate notice of the prohibited conduct, the statute's failure to define the term will not render the statute void for vagueness." *Priorities USA v. Nessel*, 487 F. Supp. 3d 599, 616 (E.D. Mich. 2020), *rev'd and remanded*, No. 20-1931, 2021 WL 3044270 (6th Cir. July 20, 2021).[2] While said in the context of the Absentee Ballot law, the *same principle* applies to the Voter Transportation Law.

Plaintiffs argue that *City of Chicago v. Morales*, 527 U.S. 41 (1999), supports their facial challenge here. But *Morales* could not be farther afield. It sustained a facial challenge to a remarkably vague ordinance that prohibited "criminal gang members from loitering in public places" if a police officer ordered them to disperse. *Id.* at 41. The Supreme Court found that ordinance unconstitutional because it specified "no standard of conduct" at all. *Id.* at 60. Compare that with *Hill v.*

---

[1] Plaintiffs do not oppose judgment as to Claims I and VIII.

[2] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

*Colorado*, 530 U.S. 703 (2000), cited by the Legislature, where the Court rejected a facial challenge to a statute criminalizing "knowingly approach[ing] . . . for the purpose of passing a leaflet . . . displaying a sign to, or engaging in oral protest, education, or counseling with such other person." *Id.* at 707. The Court eschewed the challengers' "hypertechnical theories" and hypotheticals, finding the statute neither failed to "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" nor "authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* at 732-33. The Voter Transportation Law is similarly clear, and *Hill* mandates the same result here.

Plaintiffs also do not dispute that in September 2020 this Court found the Voter Transportation Law "relatively straightforward and unambiguous" and construed it as a matter of law. *See Priorities USA*, 487 F. Supp. 3d at 621. While Plaintiffs insist that the September 2020 ruling was about preemption, they offer no explanation why the same statutory language can be unambiguous in one context and unintelligible in another. Plaintiffs cannot overcome the strong presumption of validity simply because of some cleverly drafted hypotheticals. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963); *United States v. Williams*, 553 U.S. 285, 305–06 (2008). The statute need only provide an "ascertainable standard." *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921). The Sixth Circuit recognized the Voter Transportation Law "*assuredly*" "prohibit[s] hiring carriages

to take ambulatory voters to the polls" while "[v]olunteers can drive voters for free" and handily interpreted the statute. *Priorities USA v. Nessel*, 978 F.3d 976, 983, 985 (6th Cir. 2020) (emphasis added). Plaintiffs cannot change the reality that "people of ordinary intelligence" know what the word "hire" means, as well—especially within the broader context of Mich. Comp. Laws § 168.931.

Plaintiffs then focus on their so-called "concrete activities" that they say the Voter Transportation Law ambiguously bans; meanwhile, they do not respond to the Legislature's reliance on *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008). They likewise ignore the Legislature's argument that Plaintiffs' overbreadth challenge "must fail where the statute has 'a plainly legitimate sweep.'" Response, ECF No. 121, PageID.1990. Plaintiffs' hypotheticals do not highlight potential "arbitrary deprivation of liberty interests." *Morales*, 527 U.S. at 52. Count V, like Count I, should be dismissed.

## II.   The Sixth Circuit requires application of *Anderson-Burdick*.

Plaintiffs' response overwhelmingly focuses on the applicable standard of review, which reinforces that applying the proper standard is dispositive at the pleadings stage. They say the Sixth Circuit's footnote in *Priorities USA v. Nessel*, No. 20-1931, __ F. App'x __, 2021 WL 3044270, at *2 n.3 (6th Cir. July 20, 2021) (concluding the *Anderson-Burdick* standard applies to Plaintiffs' constitutional challenges to the Voter Transportation Ban), was dicta, not law of the case, and/or

not supported with sufficient fact development.[3] None of this is accurate.

*First*, the Sixth Circuit's articulation that the *Anderson-Burdick* standard applies was not dicta. The Sixth Circuit reached that issue in response to, and rejection of, Plaintiffs' argument that this Court's injunction could be sustained *in the alternative* based on constitutional arguments. Resolving the standard was therefore "necessary to the determination of the issue[s] on appeal." *Freed v. Thomas*, 976 F.3d 729, 738 (6th Cir. 2020). That the Sixth Circuit did not find additional briefing on the issue necessary does nothing to undermine that the Court necessarily decided it. At bottom, the Court considered Plaintiffs' alternative argument and *held* that it failed in light of their "heavy burden of persuasion" under *Anderson-Burdick*. *Priorities*, 2021 WL 3044270, at *2 n.3.

*Second*, because the footnote was a holding—not dicta—it is plainly law of the case. That the holding arose in the context of "fast-moving preliminary injunction proceedings" does not provide an escape from this conclusion. Response, ECF No. 121, PageID.1977. The Sixth Circuit had the entire record before it, including the briefing on the Attorney General's motion to dismiss, and a

---

[3] This Court in its motion-to-dismiss ruling accepted Plaintiffs' argument that the same standard had to apply to both statutes. *Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 816 (E.D. Mich. 2020). Given that, while the Sixth Circuit's footnote formally addressed only the Voter Transportation Law, Plaintiffs have already prospectively conceded that the standard set forth in it must also apply to the Absentee Voter law.

considerable amount of time to review these legal issues. It then made a determination as a matter of law. That determination is, therefore, law of the case.[4]

*Third*, Plaintiffs contend that further factual development is required. Response, ECF No. 121, PageID. 1985. Not so. Plaintiffs admit that "the overwhelming majority of [their] claims turn on legal issues[.]" ECF No. 23-1, PageID.319. And the Sixth Circuit does not shy away "from disposing of *Anderson-Burduck* claims at the motion-to-dismiss stage where a plaintiff's allegations 'fail[] as a matter of law.'" *Daunt v. Benson*, 999 F.3d 299, 313 (6th Cir. 2021).

Plaintiffs specifically rely on *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), to say that exacting scrutiny requires factual development to determine whether a law is narrowly tailored. Response, ECF No. 121, PageID.1981. At the outset, while Plaintiffs take issue with the Legislature citing caselaw reported after the Court's May 2020 order (including subsequent legal rulings in this very case), they do not hesitate to rely on *Bonta*—a case decided *after* the May 2020 order—throughout their own brief. Beyond that, *Bonta* holds that narrow tailoring applies to exacting scrutiny in *compelled disclosure* cases. Plaintiffs provide no authority for expanding that narrow holding to *non-compelled* disclosures cases.

---

[4] Plaintiffs also argue that *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378 (6th Cir. 2020) held that *Anderson-Burdick* did not govern the plaintiffs' procedural due process claims. In fact, the Sixth Circuit didn't decide that issue because the plaintiffs lacked standing. *Id.* at 389.

And the statutes at issue do not fall within the enumerated categories of "government infringement" *Bonta* addresses. *Bonta*, 141 S. Ct. at 2382. *Bonta* is inapposite.

*Finally*, Plaintiffs argue throughout their response that the conduct prohibited here is specifically their speech and association rights as opposed to election mechanics.[5] They draw that distinction because, by their own admission, laws relating to election mechanics are reviewed under *Anderson-Burdick*. But transporting people—or their ballots—is a quintessential mechanical function. These statutes are about moving a person or a thing from one place to another, not about educating people on their options to vote or their need to participate in the process, etc. Accepting Plaintiffs' argument would invite challengers to characterize *any* statute as regulating association instead of mechanics. This is a question of election mechanics and *Anderson-Burdick* applies.

### III.   Plaintiffs' Absentee Ballot Law preemption claim lacks merit.

Plaintiffs rely on *Newman v. Voinovich*, 789 F. Supp. 1410 (S.D. Ohio 1992), *aff'd*, 986 F.2d 159 (6th Cir. 1993) for the notion that the Voting Rights Act ("VRA") "was *intended* to confer standing to organizations like Plaintiffs." Response, ECF No. 121, PageId.1988–89 (emphasis in original). But the *Newman* court did not find

---

[5] To comply with the Court's directive to refrain from relitigating the application of *Anderson-Burdick*, the Legislature limited its opening brief to authority subsequent to the Court's May 2020 order and this case's procedural history. However, the Legislature now responds to arguments raised by Plaintiffs in their response brief.

standing for the plaintiff to sue under the VRA. The citation Plaintiffs refer to is merely the *Newman* plaintiff's own argument for standing. In fact, the *Newman* court *rejected* the plaintiff's standing arguments and found "no theory set forth by the plaintiff upon which this white male plaintiff may be permitted to advance the rights and interests of the minority population." *Newman*, 789 F. Supp. at 1416.

Plaintiffs again conflate the argument: the VRA may be "intended to confer standing to organizations like Plaintiffs," Response, ECF No. 121, PageID1988, but *only* where the claim at issue relies on alleged injuries *to the Plaintiffs* as organizations. Here, the alleged injuries are to third parties and do not provide Plaintiffs with the requisite standing to bring their claims. *See Fair Elections v. Husted*, 770 F.3d 456, 461 (6th Cir. 2014). No argument raised in Plaintiffs' response corrects this fatal flaw.

## CONCLUSION

The Legislature asks that this Court award it judgment on the pleadings.

Respectfully submitted,

BUSH SEYFERTH PLLC
*Attorneys for the Michigan Senate and the Michigan House of Representatives*

By:*/s/ Roger P. Meyers*
Roger P. Meyers (P73255)
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
(248) 822-7800
Dated: October 29, 2021        meyers@bsplaw.com

7