UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PRIORITIES USA, RISE, INC., and DETROIT/DOWNRIVER CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE,<br><br>    Plaintiffs,<br><br>v.<br><br>DANA NESSEL,<br><br>    Defendant,<br><br>and<br><br>MICHIGAN HOUSE OF REPRESENTATIVES, MICHIGAN SENATE, MICHIGAN REPUBLICAN PARTY, and REPUBLICAN NATIONAL COMMITTEE,<br><br>    Intervenors–Defendants. | Civil No. 19-13341<br><br>HON. STEPHANIE DAWKINS DAVIS<br>MAG. KIMBERLY G. ALTMAN |

**REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS BY THE
REPUBLICAN NATIONAL COMMITTEE AND THE
MICHIGAN REPUBLICAN PARTY**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................... ii

REPLY .......................................................................................................................1

    I.     The paid driver ban is not void for vagueness or overbroad .................1

    II.    The harvesting ban is not preempted by the Voting Rights Act ...........1

    III.   Plaintiffs' First Amendment challenges fail as a matter of law ............3

# INDEX OF AUTHORITIES

**Cases**

*Americans for Prosperity Foundation* v. *Bonta*,
   594 U.S.—; 141 S. Ct. 2373 (2021) ................................................................. 6, 7

*AtriCure, Inc.* v. *Meng*,
   12 F.4th 516 (CA6 2021) ...................................................................................... 1

*Common Cause of Ga.* v. *Billups*,
   554 F.3d 1340 (CA11 2009) ................................................................................. 6

*Daunt* v. *Benson*,
   999 F.3d 299 (CA6 2021) ..................................................................................... 4

*DSCC* v. *Simon*,
   950 N.W.2d 280 (Minn. 2020) .............................................................................. 3

*General Elec. Co.* v. *Johnson*,
   362 F. Supp. 2d 327 (CADC 2005) ...................................................................... 6

*Howe* v. *Akron*,
   801 F.3d 718 (CA6 2015) ..................................................................................... 4

*Kavorkian* v. *CSX Transp., Inc.*,
   117 F.3d 953 (CA6 1997) ..................................................................................... 5

*Macomb Interceptor Drain Drainage Dist.* v. *Kilpatrick*,
   No. 11-13101, 2012 WL 1598154 (ED Mich. May 7, 2012) ............................... 1

*Priorities USA* v. *Nessel*,
   487 F. Supp. 3d 599 (ED Mich 2020) ......................................................... passim

*Priorities USA* v. *Nessel*,
   860 F. Appx. 419; 2021 WL 3044270 (CA6 Jul. 20, 2021) ..................... 3, 4, 5, 6

*Priorities USA* v. *Nessel*,
   978 F.3d 976 (CA6 2020) .................................................................................. 5, 6

*Speech First, Inc.* v. *Schlissel*,
   939 F.3d 756 (CA6 2019) ..................................................................................... 5

*Storer* v. *Brown*,
   415 U.S. 724 (1974) .............................................................................................. 7

*United States* v. *Stevens*,
   559 U.S. 460 (2010) ................................................................................................6

*ZMC Pharmacy, LLC* v. *State Farm Mut. Auto. Ins. Co.*,
   307 F. Supp. 3d 661 (ED Mich. 2018) ...................................................................3

**Statutes**

Mich. Comp. Laws § 168.759(4) ...................................................................................2

# REPLY[1]

## I. The paid driver ban is not void for vagueness or overbroad.

Plaintiffs have identified no factual questions that must be answered to resolve this claim, ECF 121, PageID.1991–1992, which is consistent with their previous concession that vagueness is a purely legal question, ECF 25, PageID.359. They therefore haven't shown why this claim isn't ripe for disposition under Rule 12(c). Hoping to resurrect this claim, Plaintiffs try to walk back their concession on appeal that "[t]here is no ambiguity in the … statutory language." CA6 Doc. 44 at 47. They now claim to have been referring only to the law's alleged limitation on campaign spending, not the meaning of "hire." ECF 121, PageID.1991. This distinction is artificial. Hiring someone means "to engage the services of [another] for wages or other payment,' or 'to engage the temporary use of at a set price." *Priorities USA* v. *Nessel*, 487 F. Supp. 3d 599, 621 (ED Mich 2020). Having so interpreted this term, the Court held that the paid driver ban prohibits "pay[ing] wages or mak[ing] any other payment to another to transport voters to the polls, unless the person so transported cannot walk." *Ibid*. A ban on paying someone is—in and of itself—a ban on hiring someone.

## II. The harvesting ban is not preempted by the Voting Rights Act.

Plaintiffs previously conceded that preemption is a pure question of law. ECF 25, PageID.359. Nowhere in their brief do they articulate a factual question that must

---

[1] Despite this being the Republican Committees' only motion to dismiss, Plaintiffs object to them asserting arguments to preserve on appeal. ECF 121, PageID. 1972. "[A]n intervenor, once permitted to intervene, is entitled to litigate fully on the merits and has equal standing with the original parties." *Macomb Interceptor Drain Drainage Dist.* v. *Kilpatrick*, No. 11-13101, 2012 WL 1598154, at *5 (ED Mich. May 7, 2012) (cleaned up). The Republican Committees therefore have a right to raise and preserve issues for appeal. See *AtriCure, Inc.* v. *Meng*, 12 F.4th 516, 531 (CA6 2021).

be answered to decide whether §208 of the Voting Rights Act ("VRA") preempts the harvesting ban. Plaintiffs have therefore failed to show why this claim isn't ripe for disposition under Rule 12(c), as well.

Plaintiffs plainly want to relitigate the Court's interpretation of §208, ECF 121, PageID.1989–1990, but the Court correctly ruled that "some state law limitations on the identity of persons who may assist voters [are] permissible" under the VRA. *Priorities USA*, 487 F. Supp. 3d, at 619. The only question then is whether the limits imposed under the harvesting ban are impermissible because they would stand as an obstacle to accomplishing congressional objectives. The *only* limit imposed under the harvesting ban is that the person assisting the voter must themselves be a registered Michigan voter. Mich. Comp. Laws § 168.759(4). Plaintiffs don't dispute judicial notice can be taken that more than 8 million people are registered to vote in Michigan. Through employees and volunteers who are registered to vote in Michigan, Plaintiffs can assist voters under §208 without running afoul of the harvesting ban. Thus, the only impediments Plaintiffs can point to are that voters cannot rely on Plaintiffs' employees or volunteers who: (1) are Michigan residents but who are not registered to vote; and (2) are not Michigan residents and therefore cannot be registered to vote in Michigan. The first scenario seems implausible—it is unlikely that those working or volunteering for GOTV organizations would not be registered to vote. But even assuming that scenario *arguendo*, the fact that *some* of Plaintiffs' employees and volunteers may be unavailable to a voter does not meaningfully restrict a voter's rights under §208 when the voter has over 8 million people to choose from. The second scenario is more plausible inasmuch as Plaintiffs may want to bus in nonresidents to assist with their GOTV efforts, but the

harvesting ban's restriction on Plaintiffs' ability to do so still doesn't change the fact that a voter has over 8 million other people to choose from.

The Supreme Court of Minnesota recently upheld a Minnesota law that, much like the harvesting ban, afforded voters a nearly limitless choice in who could return AV ballots. Minnesotans can entrust the returning of completed AV ballots to anyone, but that person cannot assist more than three voters in one election. *DSCC* v. *Simon*, 950 N.W.2d 280, 290 (Minn. 2020). Like Minnesota's three-voter limit, the harvesting ban is generally applicable, has many options for returning AV ballot applications, and does not address the delivery of completed ballots by voters covered under § 208. Plaintiffs make no effort to distinguish *Simon* in their brief. ECF 121, PageID.1987–1990. The Court should similarly reject the preemption challenge to the harvesting ban.

### III.   Plaintiffs' First Amendment challenges fail as a matter of law.

This Court ruled that the harvesting ban is constitutional "whether [it] applies exacting scrutiny or a rational basis standard of review …." *Priorities USA*, 487 F. Supp. 3d, at 612. The Sixth Circuit subsequently held that Plaintiffs' First Amendment challenge to the paid driver ban was likely to fail. *Priorities USA* v. *Nessel*, 860 F. Appx. 419; 2021 WL 3044270 (CA6 Jul. 20, 2021) (slip op., at 4, n.3). Plaintiffs' response ignores these legal developments. This Court can and should take judicial notice of its own docket, *ZMC Pharmacy, LLC* v. *State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 n.1 (ED Mich. 2018), and the law-of-the-case doctrine controls as to the Sixth Circuit's rulings.

The Sixth Circuit ruling on Plaintiffs' First Amendment challenge to the paid driver ban controls. On appeal, Plaintiffs argued that the ban is unconstitutional and

– 3 –

offered that as an alternative basis upon which to affirm the preliminary injunction. CA6 Doc. 44, at 65–66. In rejecting Plaintiffs' argument, the Sixth Circuit held that the *Anderson-Burdick* framework applied, and then concluded that the constitutional challenge was likely to fail. *Priorities USA*, 860 F. Appx. 419; 2021 WL 3044270, at *2, n. 3. Albeit in a footnote, the Sixth Circuit thoroughly analyzed the First Amendment claim, holding that the *Anderson-Burdick* framework applies to a challenge to the paid driver ban and explaining how Plaintiffs cannot "shoulder [their] heavy burden" for their facial challenge to the law. *Ibid*. The Sixth Circuit issued a "fully considered ruling on an issue of law." *Howe* v. *Akron*, 801 F.3d 718, 740 (CA6 2015).[2]

Plaintiffs contend that the law-of-the-case doctrine does not apply to decisions reviewing preliminary injunctions, citing *Daunt* v. *Benson*, 999 F.3d 299 (CA6 2021), but *Daunt* is inapposite. *Daunt* applied the doctrine to the Sixth Circuit reconsidering *its own decisions on appeal*, not to the district court's post-remand proceedings. Plaintiffs' related contention—that the Sixth Circuit lacked a full record to address their constitutional challenge to the paid driver ban—conflicts with their previous positions.[3] They argued the record was sufficiently developed on the First Amendment claim, such that the court "may affirm the [district] court's order on any ground that

---

[2]  The Sixth Circuit did not address the harvesting ban on appeal, but Plaintiffs' reliance on this procedural fact is a red herring. This Court has already ruled that the harvesting ban is constitutional, and that ruling has not been overturned. *Priorities USA*, 487 F. Supp. 3d, at 612.

[3]  The Republican Committees acknowledge that they argued on appeal that the Sixth Circuit "should decline to address Plaintiffs' First Amendment challenge in the first instance." CA6 Doc. 51, at 18. But that doesn't change the fact that the Sixth Circuit reached the merits of the constitutional challenge to the paid driver ban.

– 4 –

is supported by the record." CA6 Doc. 44, at 66. In this Court, Plaintiffs not only moved for a preliminary injunction to the paid driver ban on First Amendment grounds, but contemporaneously moved to consolidate the preliminary injunction with a trial on the merits and thus also requested a permanent injunction and declaratory judgment. ECF 22, PageID.140. Further, the Sixth Circuit was not under any time pressures when it reversed the preliminary injunction. The court had already stayed the preliminary injunction before the 2020 General Election, *Priorities USA* v. *Nessel*, 978 F.3d 976, 985 (CA6 2020), and then reversed the preliminary injunction nearly nine months later. *Priorities USA*, 860 F. Appx. 419 (slip op., at 5). The Sixth Circuit further had the benefit of the parties' lengthy briefing on the preliminary injunction motion to analyze the First Amendment claim on the paid driver ban.

Even if the Court considers the Sixth Circuit's ruling to be dicta, it should nevertheless adopt the analysis as persuasive. *Kavorkian* v. *CSX Transp., Inc.*, 117 F.3d 953, 957 (CA6 1997). The Sixth Circuit identified the legal framework for analyzing the claim, engaged in the analysis, and found that the law "does not appear to pose an unconstitutional burden" on First Amendment interests. *Priorities USA*, 860 F. Appx. 419 (slip op. at 4, n.3).

No matter the framework of scrutiny, Plaintiffs fail to address their heavy burden in bringing facial challenges to the harvesting ban and paid driver ban. Facial challenges are generally disfavored, see *Speech First, Inc.* v. *Schlissel*, 939 F.3d 756, 766, n.2 (CA6 2019), and a law implicating the right to expression may be invalidated on a facial challenge only if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States* v.

*Stevens*, 559 U.S. 460, 473 (2010). "[A] facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself." *General Elec. Co.* v. *Johnson*, 362 F. Supp. 2d 327, 337 (CADC 2005). It is settled that the challenged laws serve important state interests in protecting against voter fraud and undue influence in elections. *Priorities USA*, 978 F. 3d, at 983–84 (paid driver ban); *Priorities USA*, 860 F. Appx. 419 (slip op. at 4, n. 3) (paid driver ban); *Priorities USA*, 487 F. Supp. 3d, at 614 (harvesting ban). As to the harvesting ban, the Court ruled that no matter the level of scrutiny, "on the record before the court … [the harvesting ban] is constitutional" after highlighting instances of absentee voting fraud.[4] *Priorities USA*, 487 F. Supp. 3d, at 612. Plaintiffs therefore cannot carry their heavy burden to present factual evidence that "a substantial number of [the laws'] applications are unconstitutional" given the plainly legitimate sweep of the challenged laws. *Stevens*, 559 U. S., at 473. States are not required to submit "any record evidence in support of [their] stated interests." *Common Cause of Ga.* v. *Billups*, 554 F. 3d 1340, 1353 (CA11 2009).

Even if the Court were to apply exacting scrutiny, Plaintiffs misrely on *Americans for Prosperity Foundation* v. *Bonta*, 594 U.S.—; 141 S. Ct. 2373 (2021), for the proposition that this Motion is premature for want of necessary factual development. *Bonta* involved compelled disclosures; this case does not. The *Bonta* Court held that

---

[4] Of note, the Attorney General has since announced investigations into absentee voting fraud in the 2020 General Election, which resulted in charges against three individuals. Dept. of Atty. Gen., *AG Nessel, SOS Benson Provide Update on New Election Fraud Cases* (Oct. 11, 2021), https://perma.cc/4GF2-BQSJ. These instances of voter fraud underscore the state's interests served by the challenged laws.

narrow tailoring applies to the exacting scrutiny standard in the context of First Amendment challenges to compelled disclosure regimes. *Id.*, at 2383–85. Plaintiffs mischaracterize the Republican Committees' analysis of *Bonta*'s scope. ECF 121, PageID.1983. The Republican Committees do not contend that exacting scrutiny can never be invoked in election-related settings, only that *Bonta* did not establish a broad-based rule that exacting scrutiny *always* requires narrow tailoring between the challenged state action and the state's asserted interest. It makes sense that the challenged laws in *Bonta*, which compelled speech and chilled association, would require a closer "fit" than the disputed laws here, which only minimally burden Plaintiffs' GOTV efforts. State election laws must also be given greater latitude due to the required "substantial regulation of elections if they are to be fair and honest…." *Storer* v. *Brown*, 415 U.S. 724, 730 (1974). Therefore, *Bonta*'s more demanding version of exacting scrutiny does not apply here.

|  |  |
|---|---|
| Dated: October 29, 2021 | Respectfully submitted,<br>BUTZEL LONG, P.C.<br><br>/s/ Kurtis T. Wilder<br>KURTIS T. WILDER (P37017)<br>JOSEPH E. RICHOTTE (P70902)<br>STEVEN R. EATHERLY (P81180)<br>150 West Jefferson Avenue, Suite 150<br>Detroit, Michigan 48226<br>(313) 225-7000<br>wilder@butzel.com<br>richotte@butzel.com<br>eatherly@butzel.com<br>*Counsel for Republican Committees* |

DET2204755.1